**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 25-cv-00881-NYW-KAS

JEANETTE VIZGUERRA-RAMIREZ,

       Petitioner,

v.

DAWN CEJA,[1] Warden, Aurora ICE Processing Center,
ROBERT GUADIAN,[2] Field Office Director, U.S. Immigration and Customs Enforcement,
KRISTI NOEM, Secretary, U.S. Department of Homeland Security,
PAMELA BONDI, U.S. Attorney General,

        In their official capacities,

       Respondents.

---

**RESPONSE TO ORDER TO SHOW CAUSE**

---

       Respondents file this response to the Court's Amended Order to Show Cause. ECF 9.  The Court lacks jurisdiction over this habeas case because it is filed in the wrong court.  Courts of appeals have exclusive jurisdiction under 8 U.S.C. § 1252 over challenges like Petitioner's to the validity of a reinstatement-of-removal order.  The Court should deny and dismiss the petition.

---

[1] Ms. Ceja, who currently occupies this position, is automatically substituted pursuant to Fed. R. Civ. P. 25(d).
[2] Mr. Guadian, who currently occupies this position, is automatically substituted pursuant to Fed. R. Civ. P. 25(d).

**FACTUAL BACKGROUND**

While Respondents provide below a summary of the relevant facts, there are no significant factual disputes with the facts presented by Petitioner. Resolution of the Petition does not appear to require resolution of any disputes of fact.

**I.    Before the habeas petition was filed.**

Petitioner alleges that she is a native and citizen of Mexico, who entered the United States without inspection and has no current lawful status in the United States. ECF No. 1 at ¶¶ 8, 21. She was convicted in Arapahoe County Court in February 2009 of attempted possession of a forged instrument. Ex. A, Declaration of Damian Morales ("Morales Decl.") ¶ 3. She was then released to ICE custody pursuant to an immigration detainer on February 27, 2009. *Id*.

Removal proceedings started in March 2009. *Id*. ¶ 4. ICE released Petitioner from custody on March 11, 2009, after she posted a bond. *Id*. ¶ 5.

Petitioner was convicted on March 27, 2009, in Arapahoe County Court of failure to display proof of insurance and driving without a license. *Id*. ¶ 6. The court ordered her to pay court fees and fines. *Id*.

The immigration court conducted a hearing on Petitioner's application for cancellation of removal under Immigration and National Act 240A(b) [8 U.S.C. § 1229b(b)]. *Id*. ¶ 7. The hearing was held on November 18, 2011. *Id*. The immigration judge ("IJ") denied cancellation of removal and, in lieu of ordering her removal from the United States, granted Petitioner voluntary departure. *Id*. The IJ's order stated that she "must depart the United States on or before 60 days from the

2

issuance of this decision"—that is, by January 17, 2012. *Id.* The IJ's order stated that if Petitioner did not voluntarily depart within 60 days, "there will be an automatic order of removal to Mexico which will automatically be entered against her." *Id.*

Petitioner appealed the IJ's decision to the Board of Immigration Appeals in December 2011. *Id.* ¶ 8.

In September 2012, while her appeal was pending, Petitioner departed the United States and returned to Mexico. *Id.* ¶ 9. The Board of Immigration Appeals dismissed her appeal based on her departure. *Id.*

In April 2013, Border Patrol arrested Petitioner after she illegally reentered the United States. *See id.* ¶ 11.

In May 2013, Petitioner was convicted in federal court in Texas of illegal entry under 8 U.S.C. § 1325(a)(1) and was sentenced to one year of supervised probation. *Id.* Shortly after that conviction, ICE took custody of her. *Id.* ¶ 12.

In June 2013, ICE released Petitioner from custody in Texas on an order of supervision that required her to report to an ICE field office in Centennial, Colorado, in July. *Id.* ¶ 13.

On July 24, 2013, ICE took Petitioner into custody and issued a Notice of Intent/Decision to Reinstate Prior Order (Form I-871) ("2013 Reinstatement Order"). *Id.* ¶ 14. A copy of the 2013 Reinstatement Order was included with the Petition for Review ("PFR") that Petitioner filed in the U.S. Court of Appeals for the Tenth Circuit on March 18, 2025. *See Vizguerra v. Bondi*, Case No. 25-9532 (10th Cir.). The PFR,

with its exhibits, is Exhibit B to this brief.[3]  The 2013 Reinstatement Order stated that Petitioner is "subject to a prior order of deportation/exclusion/removal entered on November 18, 2011."  Ex. B at 9; *accord* ECF No. 1 ¶ 28.  ICE reinstated the 2011 removal order when it issued the 2013 Reinstatement Order.  The 2013 Reinstatement Order includes a statement, before the ICE officer's signature at the bottom, that the officer has determined that Petitioner "is subject to removal through reinstatement of the prior order, in accordance with section 241(a)(5) of the Act."[4]  Ex. B at 9; *accord* ECF No. 1 ¶ 28.  2013.

Petitioner alleges that she was notified of the 2013 Reinstatement Order on July 25, 2013, but that the document had been signed by ICE officials the day before, July 24, 2013.  *See* ECF No. 1 ¶ 28.

On July 26, 2013, ICE sent Petitioner's then-counsel a letter regarding the 2013 Reinstatement Order.  Morales Decl. ¶ 16.  A copy of that letter was included in the PFR filed in the U.S. Court of Appeals for the Tenth Circuit on March 18, 2025, and is attached at Exhibit B to this brief.  *Id*.  It reads: "Attached is the Form I-871 Notice of Intent/Decision to Reinstate Prior Order that was served on Ms. Vizguerra on July 25,

---

[3] Respondents' counsel conferred with Petitioner's counsel as to whether Petitioner would have any objection to Respondents filing with the Court as a publicly available exhibit attached to this response the Petition for Review and exhibits.  Petitioner's counsel responded that she had no objection.  The Court may take judicial notice of Petitioner's filings in the Tenth Circuit.  *See, e.g.*, *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979).

[4] That section of the Immigration and Naturalization Act is codified at 8 U.S.C. § 1231(a)(5) and provides in relevant part that "[i]f the Attorney General finds that an alien has reentered the United States illegally after handing been removed *or having departed voluntarily, under an order of removal*, the prior order of removal is reinstated from its original date . . . ." (emphasis added).

2013, pursuant to 8 C.F.R. § 241.8.  If you intend to provide a statement contesting the determination, please do so no later than 3 p.m. MDT, July 31, 2013."  Ex. B at 10. Petitioner's counsel responded on July 31, 2013, that she did not intend to respond to the 2013 Reinstatement Order.  Morales Decl. ¶ 16 & Attachment A-1.

Between 2013 and 2016, Petitioner repeatedly sought, and received, stays of removal relating to the 2013 Reinstatement Order.  *See id.* ¶¶ 17-21, 31.  On August 8, 2013, upon Petitioner's application, she was granted a stay of removal.  *See id.* ¶ 17. She was released from ICE custody on an Order of Supervision that same day.  *Id.*  In January 2014, again upon Petitioner's application, ICE granted Petitioner a further stay of removal, for six months.  *Id.* ¶ 18.  In July 2014, February 2015, and August 2016, ICE granted Petitioner further stays of removal after she filed applications.  *Id.* ¶¶ 18-21.

Subsequently, Petitioner sought further stays of removal, also related to the 2013 Reinstatement Order, but those requests were denied.  *See id.* ¶¶ 23-25, 31.  In February 2017, ICE denied Petitioner's application for a stay of removal and issued a Notice of Revocation of Release.  *Id.* ¶ 23.  Petitioner's counsel then informed ICE that Petitioner would be taking sanctuary in a church in Denver and would not be reporting to ICE as required.  *Id.* ¶ 24.  In March 2019, Petitioner again applied for a stay of removal, which was denied on March 7, 2019.  *Id.* ¶ 25.

One week later, on March 14, 2019, Petitioner filed a complaint in the District of Colorado that asserted that the 2013 Reinstatement Order was not valid because she had voluntarily departed in 2013 and, thus, there was no prior removal to reinstate.

*See Vizguerra v. U.S. Immig. & Customs Enforcement*, Civil Action No. 19-cv-00768-MSK ("*Vizguerra I*"), ECF 1 ¶¶ 37-39.  She brought claims under the Administrative Procedure Act and the Due Process Clause of the Fifth Amendment.  *Id.* ¶¶ 67-74.  For relief, she asked that the Court "[d]eclare the non-existent prior removal order on which Defendant ICE relies invalid and unlawful" and vacate and set aside the 2013 Reinstatement Order.  *Id.* p. 16.  ICE filed a motion to dismiss, arguing that the court lacked jurisdiction because the Court of Appeals had exclusive jurisdiction under 8 U.S.C. § 1252 to consider challenges to removal orders.  *See Vizguerra I*, ECF No. 7. Petitioner did not respond to the motion but instead voluntarily dismissed the case. *See Vizguerra I*, ECF No. 12.

Petitioner later sought and received two additional stays of removal, still relating to the 2013 Reinstatement Order.  *See* Morales Decl. ¶¶ 27-28, 31.  In December 2021, ICE granted Petitioner's application for a stay of removal for one year.  *Id.* ¶ 27. In February 2023, ICE granted another application by Petitioner for a stay of removal for one year.  *Id.* ¶ 28.  That stay expired over a year ago, in February 2024.  *Id.*

On March 17, 2025, ICE arrested Petitioner and placed her into custody.  *Id.* ¶ 29.  She is being detained pursuant to 8 U.S.C. § 1231 based on the 2013 Reinstatement Order.  *Id.* ¶¶  29, 31.

Each of the stays of deportation Petitioner requested from 2013 onward related to the 2013 Reinstatement Order.  *Id.* ¶ 31.  There has been no separate, subsequent removal order issued after the 2013 Reinstatement Order.  *Id.*

At no point prior to March 18, 2025, did Ms. Vizguerra seek to challenge the 2013 Reinstatement Order in the Court of Appeals.  *Id*. ¶ 31.

## II.  The habeas petition

Petitioner's habeas petition focuses on two facts: her departure from the United States in September 2012 and the 2013 Reinstatement Order.

As for her departure from the United States, Petitioner states that in 2011, an IJ denied her application for cancellation of removal but granted her an alternate request for voluntary departure for a period of 60 days.  *See* ECF No. 1 ¶ 23.  She appealed that order to the Board of Immigration Appeals but, while the appeal was pending, she departed to Mexico to see her dying mother.  *See id.* ¶¶ 24-25.  Petitioner alleges that her voluntary departure was timely because her departure "reawakened" the 60-day period for voluntary departure in the IJ's 2011 order that had been tolled pending her appeal.  *Id.* ¶¶ 16, 24-25.

The second fact Petitioner focuses on is the 2013 Reinstatement Order. Petitioner alleges that on July 25, 2013, ICE officials presented her with the 2013 Reinstatement Order, but that the top of the form, regarding the intent to reinstate, and the bottom of the form, regarding the decision to reinstate, were both already filled in and dated July 24, 2013.[5]  *See id.* ¶¶ 28-29.  Petitioner alleges that Department of Homeland Security ("DHS") regulations at 8 C.F.R. § 241.8 require that the Form I-871 may be signed by an ICE officer to reinstate the removal order only after the ICE officer

---

[5] Respondents do not have any contrary evidence on this point at this time and thus do not dispute this point for purposes of this brief.

tells the individual that she may make a written or oral statement contesting the determination and the ICE officer considers that information.  *See id.* ¶ 19.

Petitioner asserts that her custody is unlawful on two legal grounds.  Both grounds rest on the premise that ICE entered the reinstated removal order improperly.

Her first ground ("Count One") is that her detention violates her due-process rights because no properly-entered removal order provides the basis for her detention. Id. ¶¶ 35-36.  She asserts that if the basis of her detention is 8 U.S.C. § 1231 (which it is, *see* Morales Decl. ¶ 29), the 2013 Reinstatement Order was "fatally flawed" because the reinstatement was issued "*prior to* meeting [the] regulatory duty of informing Ms. Vizguerra-Ramirez of her right to challenge the determination," ECF No. 1 ¶ 36 (emphasis in original).

Petitioner's second ground for challenging her custody ("Count Two") is that her detention is based on a violation of 8 U.S.C. § 1231(a)(5) and its implementing regulations.  Specifically, Petitioner alleges that ICE's issuance of the 2013 Reinstatement Order was improper because of ICE's "failure to abide by its due process protections, to wit, the requirement that Ms. Vizguerra-Ramirez be informed of the intended reinstatement, and of her right to challenge that determination, *prior to* the issuance of a final order."  *Id*. at ¶ 39 (emphasis in original).  Thus, Petitioner alleges, ICE violated 8 U.S.C. § 1231(a)(5) and 8 C.F.R. § 241.8(b).

### III.  The Petition for Review simultaneously filed in the Tenth Circuit

Petitioner filed a PFR in the Tenth Circuit the same day she filed her habeas petition in this Court.  *See* Ex. B.  The PFR focuses on the same two central facts as

the habeas petition.  As for her departure from the United States, Petitioner's description of her departure and its alleged effect on the voluntary-departure period from the 2011 IJ order is almost identical to her description of that circumstance in the habeas petition.  *Compare* ECF No. 1 ¶ 25 *with* Ex. B at 2.[6]  As for the reinstatement of the order of removal, the PFR likewise repeats the allegations in the habeas petition.  The PFR and the habeas petition use the same paragraphs to describe the process ICE is supposed to follow to reinstate an order of removal.  *Compare* ECF No. 1 ¶¶ 18-19 *with* Ex. B at 3-4.  As for the 2013 Reinstatement Order issued to Petitioner, she repeats the allegation that when ICE give her the reinstatement on July 25, 2013, ICE has already signed the 2013 Reinstatement Order.  *Compare* ECF No. 1 ¶ 28 *with* Ex. B at 4.

In the PFR, Petitioner asserts that the Tenth Circuit has jurisdiction over her petition under 8 U.S.C. § 1252(a)(1).  *See* Ex. B at 5.  That subsection concerns "[j]udicial review of a final order of removal."  8 U.S.C. § 1252(a)(1).  Petitioner starts the PFR by saying that she is seeking review of "a decision of an unknown date, issued by an unknown deportation officer, to reinstate an alleged prior order of removal, which was, instead, an order of voluntary departure."  Ex. B at 1.  She then discusses the 2013 Reinstatement Order at length and includes a copy of it as Exhibit B of her PFR.  Ex. B at 9.  And, in fact, there is no separate, subsequent removal order

---

[6] Any differences are minor.  The habeas application uses "Ms. Vizguerra-Ramirez" while the PFR uses "Ms. Vizguerra," the PFR adds a parenthetical to its cite of 8 C.F.R. § 1003.4, and the PFR adds in the final sentence "voluntary departure" to describe "grant" and adds a final clause: "to wit, the absence of a removal order" and a cite for that to 8 U.S.C. § 1229c(b)(1).

issued after the 2013 Reinstatement Order.  Morales Decl. ¶ 31 (declaring that

Petitioner is detained pursuant to that 2013 Reinstatement Order and no other).

## ARGUMENT

Petitioner's habeas petition cannot be brought in this Court.  Her petition

challenges her detention on the ground that it is based on a reinstated removal order

that is flawed because it was issued to her in violation of due process and statutory

and regulatory authority.  But her challenge to the 2013 Reinstatement Order cannot

be presented in this habeas proceeding because Congress has granted courts of

appeals exclusive jurisdiction over all claims that relate to a reinstatement order or

arise from any action or proceeding to remove an alien.  And Petitioner currently has a

case pending before the Tenth Circuit, raising similar factual allegations and legal

arguments as she asserts in this case.  This petition therefore should be denied and

dismissed for lack of jurisdiction.

**I. Section 1252(a)(5) precludes habeas review in the district court based on a challenge to a reinstated order of removal.**

Petitioner's challenge here is to the reinstated order of removal that serves as

the basis for her detention under 28 U.S.C. § 1231.[7]  But Congress has prescribed that

only certain courts may review challenges to reinstated removal orders.  Section

1252(a)(5) provides that the "sole and exclusive" means of "judicial review of an order

of removal" is in the "appropriate court of appeals":

---

[7] "§ 1231 . . . governs the detention of aliens subject to reinstated orders of removal." *See Johnson v. Guzman-Chavez*, 594 U.S. 523, 526 (2021); *id*. at 546 (explaining that § 1231 authorizes detention of such aliens while authorizing release in certain circumstances).

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter, except as provided in subsection (e).[8]

8 U.S.C. § 1252(a)(5).

Habeas challenges to orders of removal are thus barred by § 1252(a)(5).  *See Gonzales-Alarcon v. Macias*, 884 F.3d 1266, 1275 (10th Cir. 2018) (considering the appeal of a habeas petition filed in district court challenging a reinstated order of removal under § 1231(a)(5) and ruling that § 1252(a)(5) barred relief); *Thoung v. United States*, 913 F.3d 999, 1001-02 (10th Cir. 2019) (ruling that a habeas petition under § 2241 seeking to invalidate a removal order was barred by § 1252(a)(5)). Section 1252(a)(5) thus specifically excludes from jurisdiction habeas proceedings under 28 U.S.C. § 2241, like the one Petitioner brings here.[9]

In particular, the Tenth Circuit has held that when a person challenging a reinstated removal order raises a habeas claim in district court "based on the alleged

---

[8] Subsection (e) does not apply in this case.  It addresses specific types of challenges in habeas proceedings, asylum determinations, and other proceedings that are not at issue here. *See* 8 U.S.C. § 1252(e).

[9] The displacement of jurisdiction by § 1252(a)(5) also applies to Petitioner's invocation of 28 U.S.C. § 1331 and the Suspension Clause because they are "provisions of law" or a "habeas corpus provision."  Furthermore, the Suspension Clause is a limitation, not a grant of jurisdiction.  *See Felker v. Turpin*, 518 U.S. 651, 664 (1996) ("[T]he power to award the writ by any of the courts of the United States, must be given by written law, and . . . judgments about the proper scope of the write are normally for Congress to make.") (citing *Ex parte Bollman*, 4 Cranch 75, 94 (1807) and *Lonchar v. Thomas*, 517 U.S. 314, 323 (1996))).

invalidity of his order of removal," that claim "is seeking 'judicial review of an order of removal' which is barred by § 1252(a)(5)." *Gonzales-Alarcon*, 884 F.3d at 1275.

That principle applies here. Petitioner is challenging a reinstated removal order, arguing that it is not valid. Her two challenges both rest on the same premise, which is that the reinstatement of the removal order was flawed—as a matter of due process or as a matter of statute and regulation—because it did not inform Petitioner of her right to contest the determination before that determination was issued. *See* ECF No. 1 ¶¶ 36, 39. These are challenges to a reinstated removal order, over which this Court lacks jurisdiction pursuant to § 1252(a)(5).

That Petitioner presents due-process arguments does not change this result. Section 1252(a)(5) deprives district courts of jurisdiction over habeas petitions that seek to challenge removal orders, no matter how those challenges are characterized. *See, e.g.*, *Berrum-Garcia v. Comfort*, 390 F.3d 1158, 1162 (10th Cir. 2004) (district court properly determined that it lacked jurisdiction over a habeas petition raising "statutory and due process claims" related to a reinstatement order and a "challenge [to] the validity of [the underlying] removal order"); *Duran-Hernandez v. Ashcroft*, 348 F.3d 1158, 1162 (10th Cir. 2003) (finding that a person who filed a habeas petition based on alleged due process and statutory violations relating to the reinstatement of removal erred by "bypass[ing] direct review and filed a habeas petition (his first error) in the district court (his second error)"); *accord Martinez v. Napolitano*, 704 F.3d 620, 623 (9th Cir. 2012) ("When a claim by an alien, however it is framed, challenges the

procedure and substance of an agency determination that is inextricably linked to the order of removal, it is prohibited by section 1252(a)(5)." (citation omitted)).

The bar on district-court habeas jurisdiction applies even if the habeas petition brings a constitutional challenge because Congress has granted courts of appeals jurisdiction to review constitutional questions through petitions for review. "Congress clearly provided for our review of 'constitutional claims or questions of law' related to reinstatement orders." *Lorenzo v. Mukasey*, 508 F.3d 1278, 1282 (10th Cir. 2007) (quoting § 1252(a)(2)(d)). Section 1252(b)(9) gives the courts of appeals exclusive jurisdiction to consider *all* questions of law and fact, including constitutional and statutory issues like Petitioner brings here:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

28 U.S.C. § 1252(b)(9). *See also Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) (noting that the statute "broadened the scope of exclusive review in the circuit courts of appeal to include all questions of law and fact arising from any action or proceeding brought to remove an alien") To reinforce this exclusive jurisdiction, Congress stripped all other courts of jurisdiction to hear "any cause or claim . . . arising from the decision or action by the Attorney General to commence proceedings,

adjudicate cases, or execute removal orders against any alien" except as expressly provided in § 1252.  8 U.S.C. § 1252(g).

Finally, § 1252(a)(5)'s command that the courts of appeals are the exclusive courts with jurisdiction to consider such challenges does not depend on whether the challenge in the court of appeals would be procedurally proper or ultimately successful. There are limits on when petitions for review can be filed in the court of appeals.  *See, e.g., Gonzalez-Alarcon*, 884 F.3d at 1271, 1275 (observing that a "petition for review must be filed within thirty days of a final order of removal" and discussing that these time limitations apply even if the petition presents constitutional challenges).  But those limits do not affect § 1252(a)(5)'s elimination of district-court jurisdiction over such challenges.  For example, in *Thoung*, the petitioner was time-barred from filing a petition for review under § 1252(b)(1), but the Tenth Circuit rejected a challenge to § 1252 based on the Suspension Clause.  913 F.3d at 1002-04.

In sum, § 1252(a)(5) bars district-court jurisdiction over Petitioner's habeas petition.  The appropriate court of appeals—here, the Tenth Circuit—would have exclusive jurisdiction over any challenge by Petitioner to the flaws she claims affected her reinstated order of removal. *See Gonzalez-Alarcon*, 884 F.3d at 1275.

## II.  Courts of appeals have considered, in petitions for review, similar challenges to reinstated removal orders.

Decisions from various courts of appeals further support the conclusion that those courts are the proper court where a party like Petitioner can present the type of challenge she advances here.

For example, courts of appeals have adjudicated petitions for review like Petitioner's that rely on regulatory challenges to reinstatement orders. In particular, Petitioner claims that DHS violated 8 C.F.R. § 241.8 in how it issued the reinstatement order.  ECF No. 1 ¶¶ 28-30, 39.  In *Lorenzo v. Mukasey*, the Tenth Circuit considered a similar claim.  *See* 508 F.3d 1278, 1282 (10th Cir. 2007).  There, the petitioner also asserted that the reinstatement of removal was "legally defective and thus not subject to reinstatement," *id.* at 1280, and because it failed to comply with 8 C.F.R. § 241.8.  *Id.* at 1282-83.  The Tenth Circuit adjudicated the challenge to the reinstated removal order and the due-process claim.  *See id.* at 1283.  The Tenth Circuit can do the same with Petitioner's claims.

Likewise, other courts of appeals have considered claims like Petitioner's on a petition for review.  *See, e.g., Ruiz v. Holder*, 547 F. App'x 656, 658-59 (6th Cir. 2013) (unpublished) (exercising jurisdiction under § 1252 over challenges to "both the factual predicate for the reinstatement order and the procedures accompanying reinstatement"); *Avalos-Martinez v. Johnson*, 560 F. App'x 385, 387 (5th Cir. 2014) (unpublished) (exercising jurisdiction under § 1252 over the "contention that [the petitioner] did not reenter the United States illegally"); *Avila v. U.S. Atty. Gen.*, 560 F.3d 1281, 1285-86 (11th Cir. 2009) (exercising jurisdiction under § 1252 over a due-process claim "contend[ing] that there was no underlying removal order" supporting the reinstatement order).

The petitioner in *Ruiz* made an argument particularly similar to Petitioner's. In that case, an IJ issued a voluntary-departure order requiring Ruiz to leave the United

States on or before a certain date.  *See* 547 F. App'x at 657.  "The order also provided

that if Ruiz failed to depart on or before that date, the order would automatically

convert into an order of removal."  *Id.*  Years later, after Ruiz illegally reentered the

country, DHS reinstated the IJ's order.  *See id.* at 658.  In DHS's view, the IJ's order

had automatically converted into an order of removal when, according to DHS's

records, Ruiz left the country after the voluntary-departure date.  *See id.* at 657-58.

Ruiz's petition for review in the Sixth Circuit "attack[ed] . . . the factual predicate for the

reinstatement order," claiming that Ruiz had evidence "demonstrating that he complied

with the command in the [IJ's order] that he leave the United States" before a certain

date.  *Id.* at 659.

       Like in *Ruiz*, Petitioner challenges "the factual predicate for the reinstatement

order" based on a claim that she left the country within the voluntary-departure period.

*Compare id.* at 659 *with* ECF No. 1 ¶ 25.  Also like in *Ruiz*, the IJ's underlying order in

this case explained that if Petitioner failed to leave the country within the voluntary-

departure period, "there w[ould] be an automatic order of removal to Mexico which

w[ould] automatically be entered against her."  *See* Morales Decl. ¶ 7 (including an

excerpt of the IJ's order).  Although Petitioner maintains that she left the country within

the voluntary departure period, such a challenge to the "factual predicate for [her]

reinstatement order" falls under § 1252.  *See Ruiz*, 547 F. App'x at 659.

**III. The Petition for Review in the Tenth Circuit underlines the conclusion that Petitioner's challenge should be presented to the Tenth Circuit.**

       The conclusion that this Court lacks jurisdiction to consider the habeas petition

does not rest solely on the fact that Petitioner filed a PFR in the Tenth Circuit at the

same time she filed her habeas petition.  For example, in *Gonzalez-Alarcon*, the Tenth Circuit concluded that a habeas petition based on § 2241 challenging "the alleged invalidity of his order of removal" was "seeking judicial review of an order of removal" and thus the district court lacked jurisdiction because of § 1252(a)(5).  884 F.3d at 1275.  That holding was not based on a pending petition for review in the court of appeals.  So this Court lacks jurisdiction, regardless of whether Petitioner had filed the PFR or not.

But the fact that Petitioner *did* file the PFR with the Tenth Circuit—and the arguments she presents in that court—reinforce the conclusion that the Tenth Circuit, and not this Court, should consider Petitioner's challenge.  In particular, the PFR shows that Petitioner recognizes the Tenth Circuit's authority for reviewing removal orders.  *See* Ex. B at 5 ("This Court has jurisdiction to review Ms. Vizguerra's petition under 8 U.S.C. § 1252(a)(1).").  And the PFR asks the Tenth Circuit to review Respondent's decision to reinstate her removal order.  *See id.* at 1, 6.  The PFR makes similar allegations about purported procedural defects in the reinstatement-of-removal order that Petitioner raises in this Court.  *Compare id.* at 3-5 *with* ECF No. 1 ¶¶ 28-30.

Principles of efficiency and orderly administration of justice caution against a situation where two federal courts are simultaneously adjudicating claims involving the same parties, facts, and legal arguments.  *Cf. Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) (per curiam) ("[A] federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously." (citations omitted)); *Cont'l Grain Co. v. FBL-585*, 364 U.S. 19, 26 (1960) (observing, in

the context of a transfer of venue, that permitting "two cases involving precisely the same issues" to proceed in two different courts simultaneously leads to "wastefulness of time, energy and money").

There is a significant risk that, if this Court were to exercise jurisdiction over Petitioner's habeas petition and address her arguments on the merits, its ruling could conflict with a decision from the Court of Appeals on the same issues and undermine the established statutory scheme. The overlap between the allegations, arguments, and relief sought in this case and the PFR thus further support determining that the Tenth Circuit is the proper court to consider these issues.

## IV. If the Court considers the merits of Petitioner's challenge to the 2013 Reinstatement Order, it should reject it.

If this Court decides to consider the merits of Petitioner's arguments that her detention is invalid on the ground that the reinstatement was flawed because, as she claims, there was no prior removal order to reinstate and she did not have the opportunity to make a statement to ICE before the removal order was reinstated, *see* ECF No. 1 ¶¶ 28-30, the Court should reject it.

The 2013 Reinstatement Order was premised on the 2011 order, which had stated that if Petitioner did not voluntarily depart within 60 days, "there will be an automatic order of removal to Mexico which will automatically be entered against her." Ex. A ¶ 7; ECF No. 1 ¶ 28 (habeas petition including the 2013 Reinstatement Order, which stated Petitioner was "subject to a prior order of deportation/exclusion/removal entered on November 18, 2011"); *accord* Morales Decl. ¶ 15. ICE reinstated the 2011 removal order when it issued the 2013 Reinstatement Order. The ICE officer found

that Petitioner was "subject to removal through reinstatement of a prior order, in accordance with section 241(a)(5)."  Ex. B at 9.

On July 26, 2013, two days after the ICE officer found that Petitioner was subject to removal by reinstatement of a prior order, ICE emailed the 2013 Reinstatement Order to Petitioner's then-counsel.  *See* Morales Decl. ¶ 16; Ex. B at 10.  In a letter accompanying the 2013 Reinstatement Order, ICE said that if she wanted to provide a statement in response, contesting that order, she could do so before July 31, 2013.  *See* Ex. B at 10.  Petitioner's then-counsel responded that she did not intend to respond to the 2013 Reinstatement Order.  Morales Decl. ¶ 16 & Attachment A-1.

Given this exchange with her then-counsel, Petitioner has not shown, as she must, any prejudice to her from the alleged procedural defect in the order presented to her.  *See, e.g.*, *Garcia-Marrufo v. Ashcroft*, 376 F.3d 1061, 1064 (10th Cir. 2004) (no due process violation because "had Petitioner been afforded additional process, the result would have been no different—the prior order of removal would have been reinstated."); *Familia v. Holder*, 600 F. App'x 23, 24-25 (2d Cir. 2015) (unpublished) ("When provided an opportunity to contest the officer's reinstatement determination, Familia signed a form indicating that he did not wish to do so.  His failure to contest DHS's factual findings at the agency level was equivalent to a concession of their accuracy.").  Because Petitioner, through her then-counsel, was given the opportunity to respond to the 2013 Reinstatement Order, but declined to do so, she has not established that she was prejudiced by any alleged procedural defects in the notice

she received on July 25, 2013.  Put another way, ICE provided Petitioner with adequate opportunity to challenge the 2013 Reinstatement Order, and she has thus not shown a procedural due-process violation.

As to Petitioner's claim that there was no removal order which could be reinstated, the provision under which ICE issued the 2013 Reinstatement Order—8 U.S.C. § 1231(a)(5)—does not exempt from its coverage aliens who depart voluntarily. It provides that "[i]f the Attorney General finds that an alien has reentered the United States illegally after handing been removed or *having departed voluntarily, under an order of removal*, the prior order of removal is reinstated from its original date . . . ." (emphasis added).  "By its plain language, § 1231(a)(5) applies to aliens who are granted voluntary departure if they re-enter the United States illegally." *Gallo-Alvarez v. Ashcroft*, 266 F.3d 1123, 1128-29 (9th Cir 2001) (rejecting claim "that [petitioner] was not subject to a reinstatement of deportation because he left pursuant to a grant of voluntary departure rather than a final order of deportation").  While Petitioner disputes the effect of the departure on her removal order, she by her own admission illegally reentered the United States after a voluntary departure.  ECF No. 1 ¶¶ 25, 26.  So § 1231(a)(5) applies, and the 2011 order of removal was reinstated from its original date.

The fact that the 2011 order of removal granted Petitioner the opportunity to voluntarily depart within 60 days in lieu of being removed did not negate its status as a removal order subject to reinstatement.  "The granting of voluntary departure relief does not result in the alien's not being subject to an outstanding final order of

deportation." *Foti v. INS*, 375 U.S, 217, 220 n.1 (1963) (quoted in *Batubara v. Holder*, 733 F.3d 1040, 1042) (10th Cir. 2013)).  *Cf. Dada v Mukasey*, 553 U.S. 1, 11 (2008) (listing benefits of voluntary departure, but not suggesting that the removal order cannot be reinstated).

Nor does the fact that Petitioner had an appeal pending with the Board of Immigration Appeals when she left the United States in September 2012 negate the existence of the removal order. The 2011 removal order said that, if Petitioner failed to comply with the condition that she voluntarily depart the United States within 60 days, "there will be an automatic order of removal to Mexico which will automatically be entered against her."  Morales Decl. ¶ 7.  It is undisputed that Petitioner did not leave the United States within 60 days of that order.  *See* ECF No. 1 ¶¶ 23-25.  Instead, she filed an appeal to the Board of Immigration Appeals, which stayed execution of the 2011 removal order.  *See* 8 C.F.R. § 1003.6(a).  But when Petitioner left the United States in September 2012—nearly eight months after the deadline set by the 2011 removal order—that constituted a withdrawal of her appeal.  *See* 8 C.F.R. § 1003.4. Pursuant to regulation, the 2011 removal order became "final to *the same extent as if no appeal had been taken*."  *Id.* (emphasis added).  That is, Petitioner's departure from the United States reset her circumstances to the state prior to her appeal to the Board of Immigration Appeals.  Under those circumstances, she failed to voluntarily depart within the specified timeframe, and the 2011 removal order automatically entered against her.  The 2011 removal order was therefore in existence such that it could be reinstated in July 2013.

Finally, in practice, in the many years since the 2013 Reinstatement Order was entered, both Petitioner and ICE have acted on the understanding that an order of removal exists.  Petitioner repeatedly sought—and often received—stays of removal pursuant to the 2013 Reinstatement Order.  *See* Morales Decl. ¶¶ 14-23, 25, 27-28, 30.  At no time during all those years did she object to or challenge the reinstatement order.  Petitioner repeatedly sought—and often received—stays of removal pursuant to the 2013 Reinstatement Order.  *See* Morales Decl. ¶¶ 15.

## CONCLUSION

The Court should deny the habeas petition and dismiss it for lack of jurisdiction pursuant to 8 U.S.C. § 1252(a)(5).


Dated: March 24, 2025.                    Respectfully submitted,


                                          J. BISHOP GREWELL
                                          Acting United States Attorney

                                          s/ Timothy Bart Jafek
                                          ***Timothy Bart Jafek***
                                          Assistant United States Attorney
                                          1801 California Street, Suite 1600
                                          Denver, Colorado 80202
                                          Telephone: (303) 454-0100
                                          Fax: (303) 454-0407
                                          timothy.jafek@usdoj.gov
                                          Counsel for Respondents

## CERTIFICATE OF SERVICE

I certify that on March 24, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following recipients by e-mail:

mbarr@lichterimmigration.com
briangreen@greenimmigration.com

and I certify that on the same date I am causing the foregoing to be delivered to the following non-CM/ECF participants in the manner (mail, email, hand delivery, etc.) indicated by the nonparticipant's name:

None.

_s/ Timothy Bart Jafek_
Timothy Bart Jafek