**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action. No. 25-cv-00881-NYW-KAS

JEANETTE VIZGUERRA-RAMIREZ,

    Petitioner,

v.

DAWN CEJA, Warden, Aurora ICE Processing Center,
ROBERT GUADIAN, Field Office Director, U.S. Immigration and Customs Enforcement,
KRISTI NOEM, Secretary, U.S. Department of Homeland Security,
PAMELA BONDI, U.S. Attorney General,

     In their official capacities,

    Respondents.

---

**PETITIONER'S REPLY TO RESPONSE TO ORDER TO SHOW CAUSE**

---

Petitioner files this reply to the Respondents' Response to Order to Show Cause. ECF 16. This Court has jurisdiction to review the administrative record in search of an order of removal on which the Respondents can base their authority to detain Petitioner under 8 U.S.C. § 1231. ECF 16 at 6. Petitioner contends that no such document exists, because the putative order cited by the Respondents does not meet the regulatory definition of a reinstatement order.

### I. Narrow Scope of this Court's Jurisdiction

Where the Attorney General finds that a person has "reentered the United States illegally after having … departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date" and the person "shall be removed under the prior order at any time after the reentry." 8 U.S.C. § 1231(a)(5). While the government attempts to execute that reinstatement order, it "shall detain" the individual. 8 U.S.C. § 1231(a)(2)(A). The regulations, which are definitional in nature, make clear that the reinstatement order must be a written document. 8 C.F.R. § 1241.8(b) ("If an officer determines" that a person is subject to reinstatement, "she shall provide" the person "with written notice" of the order). Petitioner makes the narrow argument that Respondents' § 1231 detention authority is only triggered by a written order that meets, on its face, the procedural requirements of the proscribed form, and that the Court has jurisdiction to consider whether such written document exists.

For example, Petitioner contends that it would be plainly insufficient for the government to rely on a purported reinstatement order that failed to identify her by name, failed to allege the existence of a prior order, or failed to allege a subsequent unlawful entry. 8 C.F.R. § 1241.8(a)(1-3). A purported reinstatement order that lacked

the signature of an immigration officer would be similarly defective, as would be missing the necessary proof that the officer had considered any challenges to the intended order. 8 C.F.R. § 1241.8(b-c). Petitioner contends that this would be true even if other evidence, not found within the four corners of the order, suggested that an immigration officer had, in fact, reviewed any challenge and given her verbal authorization to issue the order. Strict compliance should be required.

The Respondents' Response to Order to Show Cause clarify that they are, in fact, relying on a similarly flawed putative order to authorize their use of § 1231's detention authority. ECF 16 at 6-7, 9-10. Their purported order dated July 24, 2013, does not meet the regulatory, definitional requirements for a reinstatement order. It does not indicate, on its face, that written notice and an opportunity to challenge was provided to Petitioner *prior* to the issuance of the final order. 8 C.F.R. § 1241.8 (b-c). Respondents acknowledge that they have no other order signed by an immigration officer *after* notice had been provided to Petitioner. ECF 16 at 7, 9-10.[1] They nevertheless contend that this Court lacks jurisdiction to consider whether the putative reinstatement order from July 24, 2013, is sufficient to trigger their detention powers under § 1231. Petitioner now offers this short reply.

## II.     Petitioner's Pending PFR is Likely Premature

Respondents correctly note that challenges to the legal validity of a reinstatement order must be brought exclusively in a petition for review at the court of appeals, pursuant to 8 U.S.C. § 1252(a)(5). ECF 16 at 10-14. To that end, Petitioner has filed a

---

[1] *See also* Declaration of Deportation Officer Morales, ECF 16 at Ex. A, ¶¶ 14-15 (not alleging any notification to Petitioner of her right to challenge prior to the issuance of the putative final order on July 24, 2013).

petition at the Tenth Circuit, preparing to argue that the purported 2013 reinstatement order was legally flawed because she did not depart the U.S. in 2012 while under an order of removal, but instead at a time when the Immigration Judge's 2011 voluntary departure order, with alternate removal order, were both tolled due to her pending administrative appeal.[2] ECF 16 at Ex. B. Subsequent events, however, now indicate that Petitioner's petition for review is likely premature.

If a person with a reinstated order expresses a fear of return to her home country, she is referred to an asylum officer to determine whether there is a reasonable fear of persecution or torture. 8 C.F.R. § 1241.8(e). Through this process, the person may eventually obtain relief from the reinstated removal order in the form of withholding of removal, 8 U.S.C. § 1231(b)(3), in which case the reinstated removal order is not

---

[2] In future briefing on the merits, Petitioner is prepared to argue that the government's position, that her voluntary departure order, which had been tolled during the pendency of her agency appeal, in September 2012 retroactively converted to a removal order, effective when the clock struck midnight on the morning of January 17, 2011, is wrong as a matter of law for three reasons. First, it would violate the letter and spirit of the withdrawal regulation, 8 C.F.R. § 1003.4, which was designed to put a person back in the position they would have occupied at the time of the IJ decision had they not appealed. Second, under the plain terms of the reinstatement statute, it does not apply to someone who, at the time of their voluntary departure, was not "under an order of removal." In other words, no matter the *subsequent* impact of Petitioner's departure on her voluntary departure grant, at the time she first crossed the border into Mexico, she was not "under an order of removal." At the time of her departure, instead, she was the recipient of a 60-day voluntary departure grant that was tolled during the pendency of her agency appeal. 8 C.F.R. § 1003.6(a). Third, the withdrawal regulation is contrary to the statute on finality, 8 U.S.C. § 1101(a)(47)(B), to the extent that it creates a third means of an IJ order achieving finality when Congress only created two. She will also point to the fact that she was charged criminally with illegal entry, under 8 U.S.C. § 1325(a)(1), with a sentence of one year of unsupervised probation (the Respondents incorrectly claimed it was supervised, ECF 16 at 3), rather than for illegal re-entry, under 8 U.S.C. § 1326, despite prosecutors being aware of the IJ's 2011 voluntary departure order, Petitioner's Board appeal, and her departure from the U.S. while the appeal was pending (*see* Complaint and Judgment in Case No. PE:13-M-00304(1)).

vacated or withdrawn, only its execution is withheld. *Matter of I-S- & C-S-*, 24 I&N Dec. 432, 433-34 (BIA 2008). Of relevance to a petition for review challenging the underlying reinstatement order, that order is not final for purposes of judicial review until the reasonable fear and withholding-only proceedings are finished. *Luna-Garcia v. Holder*, 777 F.3d 1182, 11185 (10th Cir. 2015); *see also Arostegui-Maldonado v. Garland*, 75 F.4th 1132, 1139 (10th Cir. 2023) (affirming *Luna-Garcia*).

In Petitioner's case, she was only informed on Friday, March 21st, that the government would honor her request for a reasonable-fear screening,[3] rendering her previously filed petition for review likely premature.[4] Accordingly, to the extent that a successful challenge by Petitioner to the substantive legality of the Respondents' putative reinstatement order, issued by the Tenth Circuit, would also undercut the statutory basis for her current detention, such review is likely not currently available, and may not become available for weeks or months.

---

[3] Her claim is based, in significant part, on her role as a high-profile advocate for women's rights, especially as it relates to domestic violence, and recent extortion attempts by a notario with connections to organized crime in Mexico.

[4] The only reason Petitioner has not already sought voluntary dismissal or abatement of her petition for review is the government's wavering adherence to the procedural rules of the reasonable fear process, calling into some doubt its legitimacy. For example, despite being on notice that Petitioner has an attorney, USCIS has repeatedly tried to conduct the reasonable fear interview on an expedited basis, without notice to, or participation of, counsel of record, and without acknowledgement of the recent technical obstacles at the detention facility (such as phones being unavailable for legal calls for several days). *See* Declaration of Jeanette Vizguerra-Ramirez, attached as Exhibit A. Her docketing statement is due April 1st. If, at that time, Petitioner is amid a genuine reasonable fear process, then she anticipates filing a motion for either abatement or voluntary dismissal of her petition for review.

### III.     Petitioner Challenges the Existence of a Reinstatement Order

Petitioner challenges the statutory authority of the Respondents to detain her based on a draft or preliminary order that does not meet the regulatory definition of a reinstatement order. In other words, she challenges the very existence of a reinstatement order, above and beyond any issues with the substantive legality or validity of such an order that can only be raised in a petition for review. The case law identified by the Respondents do not address this type of claim, in which a habeas petitioner challenges the very existence of a compliant order necessary to authorize her detention under § 1231.

In *Gonzalez-Alarcon*, the individual challenged reinstatement based on a claim to U.S. citizenship. 884 F.3d 1266, 1268 (10th Cir 2018). *Thoung v. United States* concerned a challenge to the jurisdiction of a district court to issue an order of removal and did not deal with reinstatement at all. 913 F.3d 999, 1000 (10th Cir. 2019). In *Berrum-Garcia v. Comfort*, the petitioner tried to challenge a reinstatement order in habeas proceedings by claiming the government "had misapplied the immigration statutes and had denied him due process and equal protection by reinstating his prior removal order in spite of his application for adjustment of status." 390 F.3d 1158, 1161 (10th Cir. 2004). The petitioner in *Duran-Hernandez v. Ashcroft* attempted, in habeas proceedings, to challenge the constitutionality of the reinstatement provisions as a violation of due process, and to contest the government's failure to first adjudicate his application for adjustment before issuing the reinstatement order. 348 F.3d 1158, 1161

(10th Cir. 2003).⁵ The district court in *Martinez v. Napolitano* dismissed a suit in which a man attempted to challenge his removal order based on alleged violations of the Administrative Procedures Act. 704 F.3d 620, 621 (9th Cir. 2012). All these cases concerned challenges to the substantive or procedural validity of a removal order, issues appropriately channeled to a petition for review under § 1252(a)(5), but not the threshold question of whether a removal order, satisfying the definitional requirements of 8 C.F.R. § 1241.8, exists in the administrative record.

*Lorenzo v. Mukasey* most closely approximates Petitioner's situation. 508 F.3d 1278 (10th Cir. 2007). In that case, the non-citizen alleged that a defect on the face of the I-871 (the occasional use of a male pronoun instead of female) was an indication that the government failed to follow the correct procedure in issuing the reinstatement order. *Id*. at 1282. That type of claim was appropriately raised in the court of appeals. There was no assertion, as there is here, that the form issued by the agency failed to meet the definitional requirements of § 1241.8(b-c). Petitioner's claim is that the piece of paper on which Respondents base their detention authority is, at best, a preliminary draft. It will not meet the definitional requirements of § 1241.8 unless and until the final order, at the bottom of the form, is signed and dated *after* the expiration of any challenge period.

Respondents cite to *Ruiz v. Holder*, 547 F. App'x 656, 658-59 (6th Cir. 2013), *Avalos-Martinez v. Johnson*, 560 F. App'x 385, 387 (5th Cir. 2014), and *Avila v. U.S.*

---

⁵ *Duran-Hernandez* supports rather than hurts Petitioner, to the extent that it affirms her claim that the bottom of the Notice of Intent / Decision to Reinstate Prior Order is only signed by an immigration officer *after* the non-citizen has been informed of the intent to reinstate and provided the opportunity to mount a challenge. *Duran-Hernandez*, 348 F.3d at 1161.

*Att. Gen.*, 560 F.3d 1281, 1285-86 (11th Cir. 2009), for the proposition that a circuit court can take jurisdiction over a claim that a reinstatement order's factual predicates are infirm. ECF 16 at 15-16. In *Ruiz*, the non-citizen challenged the validity of his reinstatement order because he was not given sufficient time to raise an objection, and he was denied the assistance of his attorney. 547 F. App'x at 657. In *Avalos-Martinez*, the non-citizen challenged the determination that he had entered illegally after having been removed. 560 F. App'x at 387. And in *Avila*, the non-citizen challenged the existence of a prior order that could be reinstated. 560 F.3d at 1285-86.

Petitioner agrees that such challenges to the legal and factual soundness of a reinstatement order are properly brought in petition for review. As noted, she has her own substantive challenge to her reinstatement order related to the impact of her agency appeal on the IJ's voluntary departure order, and she will raise that substantive argument in her current or future petition for review. But none of those cases address the threshold question in her habeas petition of whether the administrative record contains an actual written order that meets the minimal definitional requirements of § 1241.8.

**IV.    Prejudice**

Respondents contend that even if their putative reinstatement order is flawed, any error is immaterial because Petitioner was, in fact, provided an opportunity to contest the legal validity of reinstatement and she allegedly declined. ECF 16 at 18-19. They argue that prejudice is needed to establish a due process violation. ECF 16 at 19-20.

Petitioner notes that to make this claim, Respondents necessarily had to rely on evidence outside the four corners of the putative reinstatement order, specifically an email from Petitioner's prior counsel, dated July 31, 2013, that she did not intend to make a challenge to the reinstatement order. ECF 16 at Ex. A. However, other evidence also not contained within the July 2013 putative reinstatement order suggests that Petitioner *did* want to mount a challenge. For example, there is an earlier, draft reinstatement order, dated June 7, 2013, which contains an assertion that Petitioner did, in fact, wish to make a statement contesting the reinstatement determination. *See* draft Notice of Intent / Decision to Reinstate Prior Order, dated June 6, 2013, attached as Exhibit B.

Rather than sifting through various pieces of contradictory evidence, Petitioner asserts that a black-line rule is simpler and cleaner. A reinstatement order, by definition, is a written document in which the final determination is dated *after* the expiration of the challenge period. 8 C.F.R. § 1241.8(b-c). The Respondents' putative order from July 2013 doesn't meet that definition. Agencies are bound by their own procedural rules and regulations. *See*, *e.g.*, *Morton v. Ruiz*, 415 U.S. 199, 235 (1974); *Cherokee Nation of Okla. v. Norton*, 389 F.3d 1074, 1087 (10th Cir. 2004). That didn't happen in Petitioner's case, even though the fix would have been simple for the agency, with the issuance of a new I-871. It's inexplicable why the agency chose not to correct its mistake, but that was their choice. Unless and until they do, there is no compliant reinstatement order in the record sufficient to trigger the detention authority under 8 U.S.C. § 1231.

**V.     Conclusion**

The Court should find that it has jurisdiction to consider whether the administrative record contains a reinstatement order that meets the definitional requirements of 8 C.F.R. § 1241.8(b-c). Finding none, it should then hold that Respondents lack the statutory authority to detain Petitioner under 8 U.S.C. § 1231.

Dated: March 26, 2025

Respectfully submitted,

s/ Mark R. Barr
Mark R. Barr
LICHTER IMMIGRATION
1601 Vine Street
Denver, CO 80206
(303) 554-8400
(303) 554-8099 (fax)
MBarr@LichterImmigration.com

Counsel for Petitioner