**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 25-cv-00881-NYW-KAS

JEANETTE VIZGUERRA-RAMIREZ,

      Petitioner,

v.

DAWN CEJA, Warden, Aurora ICE Processing Center,
ROBERT GUADIAN, Field Office Director, U.S. Immigration and Customs Enforcement,
KRISTI NOEM, Secretary, U.S. Department of Homeland Security,
PAMELA BONDI, U.S. Attorney General,

      In their official capacities,

      Respondents.

---

**RESPONSE TO ORDER TO SHOW CAUSE REGARDING THE AMENDED PETITION**

---

      Respondents file this response to the Court's order to respond to the Amended Petition. ECF No. 23. Per the Court's order, this response is "limited to any new causes of action raised in the Amended Petition." *Id.* at 2.[1] As explained below, the Court should deny Petitioner's newly-added First Amendment retaliation challenge.

**INTRODUCTION**

      In the Amended Petition, Petitioner adds an additional challenge to Respondents' decision to arrest her, detain her, and execute a reinstated removal

---

[1] Petitioner's original habeas petition focused on the validity of the reinstatement order that is the basis for her detention. *See* ECF No. 1. Respondents have already responded to that argument, ECF No. 16, and do not address it any further here.

order against her.  She challenges her arrest, detention, and the execution of a

reinstated removal order on the ground that these actions were motivated by a desire

to retaliate against her for her activism involving immigration and labor issues.  As

evidence of a retaliatory motive, she points to social media posts made after her arrest

by U.S. Immigration and Customs Enforcement ("ICE"), the Assistant Secretary for

Public Affairs within the Department of Homeland Security, and a former ICE official.

She also alleges that difficulties during her ongoing immigration proceedings,

particularly for her reasonable-fear interview, further evidence Respondents' retaliatory

motive.  She argues that because Respondents' actions were based on her exercise of

her First Amendment rights, her detention is unlawful.

Petitioner's First Amendment retaliation challenge fails for several reasons.

First, Petitioner has not established that this Court has jurisdiction to consider

this challenge to her detention and removal.  The Immigration and Nationality Act

("INA"), as amended by the REAL ID Act, limits and channels the jurisdiction of federal

courts to review issues related to the removal of noncitizens.  *See generally* 8 U.S.C.

§ 1252.  Specifically, 8 U.S.C. § 1252 provides that constitutional questions pertaining

to the removal of noncitizens should be presented to the courts of appeals through a

petition for review.  *See* 8 U.S.C. §§ 1252(a)(5), (b)(9).  Section 1252 otherwise strips

the jurisdiction of federal courts "to hear any cause or claim by or on behalf of any alien

arising from the decision or action by the Attorney General to commence proceedings,

adjudicate cases, or execute removal orders against any alien under this chapter."  *Id.*

§ 1252(g).  Those provisions make clear that this Court lacks jurisdiction and should

dismiss the Amended Petition.  To the extent that Petitioner seeks Article III review of her First Amendment retaliation challenge to her arrest, detention, and removal she must seek review in the Tenth Circuit.

Second, if the Court were to determine that it has jurisdiction to consider Petitioner's First Amendment retaliation challenge, it should deny her First Amendment challenge on the merits.  The Supreme Court has explained that "[a]s a general matter . . . an alien unlawfully in this country has no constitutional right to assert selective enforcement as a defense against his deportation."  *Reno v. Am.-Arab Anti-Discrimination Comm.* ("*AADC*"), 525 U.S. 471, 488 (1999).  That is the challenge Petitioner is attempting to raise here.  In addition, Respondents had an objectively reasonable justification to arrest Petitioner and detain her—namely, she is not lawfully present in the United States and is subject to a reinstated removal order.  The presence of such valid reasons for the arrest and subsequent detention means that her First Amendment retaliation challenge fails.  Finally, Petitioner's challenge also fails because she has not established that Respondents acted with a retaliatory motive.

## FACTUAL BACKGROUND

**Illegal entry and reinstatement of removal order.**  Petitioner is a native and citizen of Mexico.  ECF No. 26 ¶ 6.  She has no current lawful status in the United States.  *Id.*  She originally entered the United States without inspection in 1997.  *Id.* ¶ 11.  She was placed in removal proceedings in 2009.  *Id.* ¶ 12.  In 2011, an immigration judge denied her application for cancellation of removal.  *Id.* ¶ 13.  The immigration judge's order required Petitioner to "depart the United States on or before

60 days from the issuance of this decision" and advised that if she did not depart within 60 days, "there will be an automatic order of removal to Mexico which will automatically be entered against her." ECF No. 16-1 at 2-3. She departed the United States in September 2012 while an appeal of the immigration judge's order was pending. ECF No. 26 ¶ 15.

Petitioner reentered the United States without inspection in April 2013. *Id.* ¶ 16. Border Patrol arrested her upon her reentry. *See* ECF No. 16-1 at 3. In May 2013, she was convicted in federal court in Texas of illegal entry under 8 U.S.C. § 1325(a)(1) and was sentenced to one year of unsupervised probation. *Id.* On July 24, 2013, ICE took her into custody in Centennial, Colorado, and issued a Notice of Intent/Decision to Reinstate Prior Order (Form I-871) (the "2013 Reinstatement Order"). *Id.* at 4.

Between 2013 and 2016, Petitioner repeatedly sought, and received, stays of removal relating to the 2013 Reinstatement Order. *Id.* at 4-5. In February 2017, ICE denied Petitioner's application for a stay of removal and issued a Notice of Revocation of Release. *Id.* at 5. Petitioner's then-counsel informed ICE that Petitioner would take sanctuary in a church in Denver and would not report to ICE as required. *Id.* In March 2019, Petitioner again applied for a stay of removal, which was denied. *Id.* In December 2021, ICE granted Petitioner's application for a stay of removal for one year. *Id.* In February 2023, ICE granted another application by Petitioner for a stay of removal for one year. *Id.* That stay expired over a year ago, in February 2024. *Id.*

**Petitioner's First Amendment activity, arrest, and detention.**  On March 17, 2025, ICE arrested Petitioner and placed her into custody.  *Id.*  She is presently detained pursuant to 8 U.S.C. § 1231 based on the 2013 Reinstatement Order.  *Id.*

Petitioner alleges that she has a history as an outspoken activist regarding immigration and labor policy.  ECF No. 26 ¶ 23.  According to Petitioner, there are "strong indications that ICE's enforcement actions against [her] were driven, to a large degree, by a desire for retaliation due to her prominence as a critic of Trump immigration policies, and to send a message to other potential critics."  *Id.* ¶ 24.

To support her challenge, she cites posts by individuals and organizations on the website X.  *Id.*  Specifically, she cites to a post by the Denver ICE account showing a picture of Petitioner in handcuffs and chained at the waist following her arrest.  *Id.*  She cites to a subsequent post by the main ICE account commenting that Petitioner "hid in in Denver churches for nearly three months to avoid arrest" and that she was arrested despite "being featured in national media for years."  *Id.*  Petitioner argues that among posts about arrests and removal in the last three months, "the post about [her] uniquely focuses on her activism and national prominence."  *Id.*

She also cites a post on X from the Assistant Secretary for Public Affairs within the Department of Homeland Security, which stated, "We will find, arrest, and deport illegal aliens regardless of if they were a featured 'Time Person of the Year.'"  *Id.*  She cites several posts on X by John Fabbricatore, a former ICE official who had served as the Field Office Director of the Denver ICE Office.  *Id.*  Finally, Petitioner states that at the time of her arrest, one of the agents told her, in Spanish, "We finally got you."  *Id.*

Petitioner also argues events since her arrest evidence Respondents' retaliatory motive. *Id.* ¶¶ 25-40.  Following her detention, her current counsel contacted ICE and "informed them" of her "fear of return to Mexico." *Id.* ¶ 26.  Her counsel stated that Petitioner "was entitled to and formally requested referral to the USCIS Asylum Office" for a reasonable fear interview if ICE had a valid reinstatement order. *Id.*  Petitioner argues that since this request, U.S. Citizenship and Immigration Services ("USCIS"), in concert with ICE, "initiated and has repeatedly pursued [her] reasonable fear interview (RFI) without notice to counsel, in violation of its own protocols and due process protections." *Id.* ¶ 25.  She states asylum officers have attempted to perform her reasonable-fear interview without her counsel present and under false pretenses, for example by telling Petitioner that her counsel had agreed she should proceed with the interview without counsel present. *See id.* ¶¶ 29-40.  She believes USCIS "has repurposed the [reasonable fear interview] into a procedural formality . . . to eliminate a perceived barrier to enforcement of a legally defective removal order and to further retaliate against [her] for her widely known public criticisms of ICE's enforcement policies and practices." *Id* ¶ 25.

USCIS's process for performing reasonable-fear interviews and its attempts to perform a reasonable-fear interview with Petitioner here are set forth in a declaration from Simone Grant, an Associate District Director for the USCIS Asylum Division, District 3. *See* Ex. A, Decl. of S. Grant.  Absent exceptional circumstances, an Asylum Pre-Screening Officer ("Asylum Officer") is supposed to make a reasonable-fear determination within 10 days of the referral. *Id.* ¶ 4.  Ms. Grant explains that under the

Reasonable Fear Procedures Manual, an internal guide for the reasonable fear
interview process in reinstatement of removal cases, a noncitizen or her representative
may request to reschedule an interview but that any "deferral may not be for an
unreasonable length of time." *Id.* ¶ 6.  Requests for rescheduling of an interview are
handled on a case-by-case basis and may be granted or denied at the discretion of the
relevant supervisor. *Id.*  While the relevant Asylum Office "should make every effort to
ensure that a representative is present at an interview," requests to reschedule an
interview may be denied "if, for example, the asylum office has documented chronic
problems with a particular legal representative who consistently submits rescheduling
requests[.]" *Id.*  Per the Reasonable Fear Procedures Manual, if a noncitizen appears
to understand the Asylum Officer's questions during a reasonable fear interview but
refuses to answer questions that would permit the officer to make a positive
determination, the officer should make a negative reasonable-fear determination based
on the noncitizen's failure to provide evidence supporting a positive finding. *Id.* ¶ 7.

Here, USCIS Asylum Division, District 3, received a referral on March 18, 2025,
to perform a reasonable-fear interview with Petitioner. *Id.* ¶ 9.  Following that referral,
USCIS scheduled a reasonable-fear interview with Petitioner on at least five occasions.
*Id*. ¶¶ 13, 15, 16, 21, 24.  During four of those attempted interviews, an Asylum Officer
attempted to contact Petitioner's counsel. *Id.* ¶¶ 13, 16, 21, 24.  During the other
attempted interview, Petitioner asked for additional time to meet with her counsel and
the interview was rescheduled. *Id.* ¶ 15.

Before the last interview attempt, a scheduling assistant called Petitioner's counsel on April 4, 2025 (a Friday), to inform her of the April 11, 2025, interview, but Petitioner's counsel was not available.  *Id.* ¶ 22.  The scheduling assistant sent an email to her counsel the following Monday, April 7, 2025, informing her of the interview.  *Id.*  During the April 11, 2025, interview, Petitioner's counsel instructed Petitioner to hang up, so Petitioner did not answer the Asylum Officer's questions.  *Id.* ¶ 24.  Ms. Grant participated in the April 11, 2025, interview as a telephonic observer and has reviewed the notes of the attempted interviews.  *Id.* ¶¶ 21, 24.  She is not aware of an Asylum Officer telling Petitioner that her counsel had agreed that she should proceed with the interview without counsel present.  *Id.* ¶ 21.

On April 14, 2025, the USCIS Asylum Division issued a negative reasonable fear determination for Petitioner.  *Id.* ¶ 25.  When the determination was served on Petitioner, she refused to affirmatively request or decline review of the determination by an immigration judge.  *Id.* ¶ 26.  In accordance with standard procedures in the Reasonable Fear Procedures Manual, the USCIS Asylum Division referred Petitioner to an immigration judge for review of her negative reasonable fear determination.  *Id.*

**Relief requested.**  Petitioner argues that Respondents have unlawfully retaliated against her based on her exercise of her First Amendment rights.  ECF No. 26 ¶¶ 64-68.  She requests "a Writ of Habeas Corpus ordering Respondents to release Petitioner immediately."  *Id.* at 27.  She also seeks other forms of relief from the Court, including: (1) a declaration "that Respondents' retaliatory actions in detaining Petitioner and compromising her rights to access to counsel violated her free speech rights under

the First Amendment"; and (2) "an injunction restraining Respondents from taking any

action to deport Petitioner unless Respondents demonstrate that such action is

untainted by unlawful First Amendment retaliation and discrimination." *Id.* at 26-27.

## STATUTORY BACKGROUND

In the INA, Congress enacted a multi-layered statutory scheme for civil

detention of a noncitizen pending a decision on removal, during the administrative and

judicial review of removal orders, and in preparation for removal. *See generally* 8

U.S.C. §§ 1225, 1226, 1231.  Relevant here, Section 1231(a)(5) provides for the

reinstatement of removal orders against noncitizens who illegally reenter the United

States.  It provides:

> If the Attorney General finds that an alien has reentered the United States
> illegally after having been removed or having departed voluntarily, under
> an order of removal, the prior order of removal is reinstated from its
> original date and is not subject to being reopened or reviewed, the alien is
> not eligible and may not apply for any relief under this chapter, and the
> alien shall be removed under the prior order at any time after the reentry.

*Id.* § 1231(a)(5).  Section 1231(a) authorizes detention of noncitizens who are subject

to a reinstated removal order.  *See generally Johnson v. Guzman Chavez*, 594 U.S.

523, 535 (2021).

A noncitizen subject to a reinstated removal order still may seek certain relief.

Under Section 1231, the Attorney General may not remove a noncitizen "to a country if

the Attorney General decides that [her] life or freedom would be threatened in that

country because of [her] race, religion, nationality, membership in a particular social

group, or political opinion."  *Id.* § 1231(b)(3)(A).  Accordingly, a noncitizen who is

subject to reinstatement of a removal order under Section 1231(a)(5) may seek

9

"withholding of removal" based on a reasonable fear of persecution or torture if she is returned to the country of removal. *See* 8 C.F.R. § 208.31(a). Once a final removal order is issued or notice is made that a noncitizen is subject to removal, the noncitizen is referred to an asylum officer for a reasonable-fear determination. *Id.* § 208.31(b). Reasonable-fear determinations will typically be made within 10 days of the referral. *Id.*; *see Guzman Chavez*, 594 U.S. at 531 (describing withholding-only process).

An asylum officer conducts an interview with the noncitizen to make the reasonable-fear determination. 8 C.F.R. § 208.31(c). The asylum officer then determines whether the noncitizen has established a reasonable possibility that she would be persecuted on account of her race, religion, nationality, membership in a particular social group or political opinion; or would be tortured in the country of removal. *Id.* A noncitizen who receives a negative determination by the asylum officer can seek review by an immigration judge. *Id.* § 208.31(f), (g). A positive determination by the asylum officer results in a referral to an immigration judge for consideration of the request for withholding of removal only. *Id.* § 208.31(e).

The INA, as amended by the REAL ID Act, provides for judicial review of issues related to removal orders but limits which courts have jurisdiction to consider such issues. *See generally* 8 U.S.C. § 1252. Under the INA, claims related to removal orders must be presented to the appropriate court of appeals through a petition for review. 8 U.S.C. § 1252(a)(5) ("a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this

chapter, except as provided in subsection (e).").[2]  Any judicial review provided for under Section 1252 must be based on a "final order" of removal.  *Id.* § 1252(b)(9).  Review of a final order includes review of "all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States."  8 U.S.C. § 1252(b)(9); *see Cadenas-Campuzano v. Garland*, No. 21-9524, 2021 WL 5561434, at *5-6 (10th Cir. Nov. 29, 2021) (reviewing negative reasonable-fear determination for a noncitizen subject to reinstatement of removal through a petition for review).  Courts otherwise lack jurisdiction to consider cases "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."  8 U.S.C. § 1252(g).

## ARGUMENT

### I.    The Court lacks jurisdiction over Petitioner's First Amendment retaliation challenge.

The Court cannot consider Petitioner's First Amendment retaliation challenge.  As explained below, because Petitioner's challenge arises from an action taken to remove her from the United States, any judicial review of such action must be pursued through a petition for review before the appropriate court of appeals.

As explained above, 8 U.S.C. § 1252(a)(5) provides that a petition for review to the courts of appeals is the sole avenue for judicial review of a removal order.[3]

---

[2] None of the exceptions in Section 1252(e) apply here.

[3] A reinstatement order, like Petitioner's, is the same as a removal order for purposes of Section 1252.  *Lorenzo v. Mukasey*, 508 F.3d 1278, 1282 (10th Cir. 2007).

Section 1252(b)(9) further explains that "judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions," that arise from "any action taken or proceeding brought to remove an alien from the United States" shall be available "only in judicial review of a final order under this section." These provisions channel judicial review of orders of removal and related questions of law and fact, including constitutional issues, to the courts of appeals. *See Martinez v. Napolitano*, 704 F.3d 620, 623 (9th Cir. 2012) ("When a claim by an alien, however it is framed, challenges the procedure and substance of an agency determination that is 'inextricably linked' to the order of removal, it is prohibited by section 1252(a)(5)."); *cf. Mukantagara v. U.S. Dep't of Homeland Sec.*, 67 F.4th 1113, 1116 (10th Cir. 2023) (explaining that Congress did not intend to deprive district courts of jurisdiction over claims that have only "a tangential relationship with pending removal proceedings" (citation omitted)).

Here, Petitioner is raising a constitutional challenge—that Respondents' detention of her is in violation of her First Amendment rights—that arises from the execution of the 2013 Reinstatement Order. She contends that the decision to execute the 2013 Reinstatement Order and her resulting arrest and current detention are retaliation for her activism. *See, e.g.*, ECF No. 26 at 2 ("[T]he decision . . . to target [Petitioner] for detention, substantially on account of her protected speech, strikes at the heart of the First Amendment."). As relief, she seeks release from detention and an injunction "restraining Respondents from taking any action to deport Petitioner

unless Respondents demonstrate that such action is untainted by unlawful First Amendment retaliation and discrimination." *Id.* at 27.

Given that Petitioner is seeking to challenge "action[s] taken . . . to remove an alien from the United States" and seeks "judicial review of . . . questions of law and fact, including interpretation and application of constitutional . . . provisions," *see* 8 U.S.C. § 1252(b)(9), her challenge falls within the scope of matters identified under Sections 1252(a)(5) and 1252(b)(9) where any judicial review would need to be pursued in the appropriate court of appeals via a petition for review. *See Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011) ("Whether the district court has jurisdiction [under Section 1252] will turn on the substance of the relief that a plaintiff is seeking."); *cf. Tazu v. Att'y Gen. United States*, 975 F.3d 292, 299 (3d Cir. 2020) (explaining that Section 1252(b)(9) required a noncitizen to file a petition for review rather than a writ of habeas corpus where his challenged detention was "part of sending him back to Bangladesh" and "the legal questions he raises about the scope of the Attorney General's discretion to re-detain him are bound up with (and thus 'arise from') an 'action taken' to remove him there").[4]

---

[4] There are potential avenues for a party like Petitioner to develop an administrative record for a petition for review. She could seek to develop a factual record related to her First Amendment challenge before the immigration judge who considers the Asylum Officer's reasonable-fear determination. 8 C.F.R. § 208.31(f), (g). Even if the immigration judge were to determine he or she cannot consider this issue in withholding-only proceedings, the Tenth Circuit would have authority to determine whether to develop a record regarding a First Amendment challenge. 28 U.S.C. § 2347(b)(3) provides that where an agency has not held a hearing before taking an action and no hearing is required under law, the court of appeals can "transfer the proceedings to a district court for the resolution of material facts." *See AADC*, 525 U.S. 471, 496 n.2 (Ginsburg, J., concurring).

Section 1252(g) further limits this Court's jurisdiction.  8 U.S.C. § 1252(g) states that, except as otherwise provided in Section 1252, courts cannot consider "any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."  Here, Petition's habeas petition challenges actions by the Attorney General to execute the 2013 Reinstatement Order—namely, arresting and detaining her.  Accordingly, Section 1252(g) strips the Court of jurisdiction to consider Petitioner's challenge.  *See Tazu*, 975 F.3d at 298-99 ("Re-detaining Tazu was simply the enforcement mechanism the Attorney General picked to execute his removal.  So § 1252(g) funnels review away from the District Court[.]").

The Supreme Court has also made clear that Section 1252(g) "was directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion."  *AADC*, 525 U.S. at 485 n.9.  Courts have, thus, concluded that Section 1252(g) strips them of jurisdiction over selective-enforcement claims.  *See id.* at 487 (concluding that a First Amendment challenge to the Attorney General's decision to commence proceedings against noncitizens "falls squarely within § 1252(g)"); *Humphries v. Various Fed. USINS Emps.*, 164 F.3d 936, 945 (5th Cir. 1999) ("Pursuant to § 1252(g), we therefore have no jurisdiction to entertain Humphries' allegations that the INS excluded him in violation of the First Amendment"). In sum, Section 1252(g), like Sections 1252(a)(5) and (b)(9), confirms that this Court lacks jurisdiction to consider Petitioner's First Amendment retaliation challenge.

II.   **The Court should deny Petitioner's First Amendment retaliation challenge on the merits.**

   A.   **Petitioner cannot bring a First Amendment retaliation challenge to her arrest, detention, and removal.**

Even if the Court were to determine that it had jurisdiction to consider Petitioner's First Amendment challenge, it fails on the merits.  As explained below, the Supreme Court has determined that noncitizens cannot challenge the enforcement of a removal order based on a selective-enforcement theory.  Thus, Petitioner does not have a viable First Amendment retaliation challenge here.

In *AADC*, the Supreme Court concluded that, as a general matter, noncitizens cannot bring challenges to their removal based on claims of selective enforcement.  In that case, the Court considered a challenge by noncitizens to their deportation proceedings. The Immigration and Naturalization Services ("INS")—the precursor to ICE—had commenced deportation proceedings against eight noncitizens who belonged to the Popular Front for the Liberation of Palestine.  *AADC*, 525 U.S. at 473. The noncitizens sought to enjoin the deportation proceedings, arguing that "INS was selectively enforcing immigration laws against them in violation of their First and Fifth Amendment rights."  *Id.* at 474.  The Supreme Court determined it did not have jurisdiction to consider such a challenge to removal due to 8 U.S.C. § 1252(g).  The Court also concluded there was no constitutional concern in determining it lacked jurisdiction because "[a]s a general matter . . . an alien unlawfully in this country has no constitutional right to assert selective enforcement as a defense against his

deportation." *Id.* at 488.; *see also id.* at 488 n.10 ("Our holding generally deprives deportable aliens of the defense of selective prosecution.").

The Court reached this conclusion for several reasons. As an initial matter, selective enforcement claims in the immigration context, like those in the criminal law context, "invade a special province of the Executive—its prosecutorial discretion." *Id.* at 489. Also, "[w]hereas in criminal proceedings the consequences of delay [to review a selective enforcement claim] is merely to postpone the criminal's receipt of his just deserts, in deportation proceedings the consequence is to permit and prolong a continuing violation of United States law." *Id.* at 490. Accordingly, "deportation is necessary in order to bring to an end an ongoing violation of United States law." *Id.* at 491 (emphasis omitted). The Court concluded that the "contention that a violation [of immigration laws] must be allowed to continue because [the noncitizen] has been improperly selected is not powerfully appealing." *Id.* at 491. The Court reached this decision even after the government admitted "that the alleged First Amendment activity was the basis for selecting the individuals for adverse action." *Id.* at 488 n.10.

Here, Petitioner brings a similar challenge to that brought by the noncitizens in *AADC*. She argues that ICE's actions in arresting, detaining, and executing a reinstatement of a removal order against her were improperly based on retaliation for her activism. But she acknowledges that she has no lawful status in the United States. ECF No. 26 ¶ 6. And she is subject to the 2013 Reinstatement Order. ECF No. 16-1 at 3-4. In short, Petitioner has "no constitutional right to assert selective enforcement as a defense against [her] deportation." *AADC*, 525 U.S. at 488.

**B. Petitioner's First Amendment retaliation challenge fails on the merits.**

Even if the Court were to determine that Petitioner could bring a First Amendment retaliation challenge via her habeas petition, she would not prevail. Petitioner has not established that Respondents lacked an objectively reasonable legal justification for arresting her and executing the reinstated removal order against her. Such an objectively reasonable legal justification existed here: Petitioner is in the country unlawfully and subject to the 2013 Reinstatement Order.  Nor has Petitioner established that Respondents' conduct was caused by retaliatory motives. Accordingly, her challenge to the execution of the 2013 Reinstatement Order fails.

**i.    Respondents had an objectively reasonable justification for the arrest, detention, and execution of the removal order.**

Typically, to prevail on a First Amendment retaliation challenge, the party claiming retaliation must prove (1) "that [she] was engaged in constitutionally protected activity"; (2) "that the defendant[s'] actions caused [her] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity"; and (3) "that the defendant[s'] adverse action [were] substantially motivated as a response to [her] exercise of constitutionally protected conduct."  *Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs.*, 962 F.3d 1204, 1226 (10th Cir. 2020) (quoting *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000)).

A party "pressing a retaliatory arrest claim" must make an additional "threshold showing"—she "must plead and prove the absence of probable cause for the arrest." *Nieves v. Bartlett*, 587 U.S. 391, 402-3 (2019).  The Supreme Court explained that in retaliatory arrest cases "it is particularly difficult to determine whether the adverse

government action was caused by the officer's malice or the plaintiff's potentially criminal conduct." *Id.* at 402. To address this difficulty, the Court imposed the probable-cause requirement for the plaintiff. *Id.* ("[B]ecause probable cause speaks to the objective reasonableness of an arrest, its absence will . . . generally provide weighty evidence that the officer's animus caused the arrest, whereas the presence of probable cause will suggest the opposite." (citation omitted)).

The Supreme Court also carved out a "narrow qualification" to this probable-cause requirement: "where officers have probable cause to make arrests, but typically exercise their discretion not to do so." *Id.* at 406. To fall within this carve-out, the party claiming a retaliatory arrest must "present[ ] objective evidence that [she] was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id.* at 407.

The principles from *Nieves*, which the Court decided in the context of a suit under 42 U.S.C. § 1983 related to a criminal arrest, apply with equal force in the immigration context. *See AADC*, 525 U.S. at 490 ("The[ ] concerns [from selective enforcement cases in the criminal context] are greatly magnified in the deportation context."). In particular, "the interest of the target in avoiding 'selective' treatment [in immigration matters] . . . is less compelling than in criminal prosecutions." *Id.* at 491. This interest is less compelling in the immigration context because "[w]hile the consequences of deportation may assuredly be grave, they are not imposed as a punishment" and because "deportation is necessary in order to bring to an end an ongoing violation of the United States law." *Id.* (emphasis omitted). In short, the logic

for requiring the party challenging an arrest to show an absence of an objectively reasonable legal justification for that arrest should apply in the immigration setting.

Petitioner has not proved Respondents lacked an objectively reasonable legal justification for the enforcement actions here.  8 U.S.C. § 1231(a)(5) provides that if a noncitizen "has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated" and the noncitizen "shall be removed under the prior order at any time after reentry."  Section 1231 authorizes ICE to detain a noncitizen who is subject to a reinstated removal order.  *Guzman Chavez*, 594 U.S. at 535 (Section "1231's detention provisions are a natural fit for aliens subject to reinstated orders of removal.").  Petitioner—by her own admission—"has no current, lawful status in the U.S."  ECF No. 26 ¶ 6.  She has twice entered the United States without inspection. *Id.* ¶¶ 11, 16.  ICE issued, and she received, the 2013 Reinstatement Order.  *Id.* ¶ 18. ICE previously granted her stays of removal, the last of which expired in February 2024.  ECF No. 16-1 at 5.

Based on the 2013 Reinstatement Order and the expiration of Petitioner's stay of removal, ICE had facially valid reasons to detain Petitioner to effectuate the removal required under 8 U.S.C. § 1231(a)(5).  ICE's decision to detain Petitioner pending removal falls within its power.  *Accord Ortega v. U.S. Dep't of Homeland Sec.*, No: 1:18-CV-00508, 2018 WL 4211864, at *2 (W.D. La. Sept. 4, 2018) ("Duran Ortega was ordered removed in 2006; therefore, ICE had probable cause to arrest and detain him at any appropriate time. That probable cause is independent of his claims of

retaliation."). And Petitioner has not demonstrated she falls within the carve-out identified in *Nieves*.  *See* 587 U.S. at 407.  She has not suggested that other individuals who are similarly situated to her—noncitizens who were subject to removal orders—have not been arrested for purposes of removal.  Her First Amendment retaliation challenge fails.

> ### ii.  Petitioner has not established Respondents' actions to execute the 2013 Reinstatement Order were driven by a retaliatory motive.

In addition, Petitioner has not satisfied the third element of the First Amendment retaliation test.  She bears the burden of proving the challenged actions were "substantially motivated as a response to [her] exercise of constitutionally protected conduct." *Hinkle*, 962 F.3d at 1226.  In other words, she must prove that "but for the retaliatory motive, the incidents to which [she] refers . . . would not have taken place." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir.1998) (internal quotation marks omitted).  She has not done so here.

The evidence Petitioner provides fails to establish that her activism substantially motivated Respondents' decision to detain her pending her removal pursuant to the 2013 Reinstatement Order.  She points to a comment by ICE's main X account, in which it said that although Petitioner was "featured in national media for years, we arrested her in public March 17.  A high-profile status does not exempt a person from immigration law."  ECF No. 26 ¶ 24.  She also points to a post by the Assistant Secretary for Public Affairs for the Department of Homeland Security that "[w]e will find, arrest, and deport illegal aliens regardless of if they were a featured 'Time Person of the Year.'" *Id.*  But she has not presented evidence that either the individuals

controlling ICE's X account or the Assistant Secretary for Public Affairs were involved in the decision to detain Petitioner.  Accordingly, these posts do not show retaliatory motive.  *Accord Leek v. Miller*, 698 F. App'x 922, 926 (10th Cir. 2017) (affirming dismissal of a retaliation claim where alleged remarks showing retaliatory intent came "after the decision" to take an adverse action and were made by an individual who "was not the decisionmaker").

Petitioner also cites to several posts on X by John Fabbricatore, a former official who previously served as the Assistant Field Office Director for Denver ICE in at least 2013 and 2017.  ECF No. 26 ¶ 24.  But she does not present any evidence that this former government official had any role in the recent decision to arrest and detain her. Posts by him about Petitioner's arrest are irrelevant to her First Amendment retaliation claim.  *See Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001) (explaining that an individual's "statements cannot be taken as evidence of a retaliatory motive" where "it is uncontroverted that she was not the decisionmaker in this case").

Petitioner also argues that ICE's retaliatory motives are shown by recent difficulties related to her reasonable-fear interview. But the evidence shows otherwise. First, her characterization about what has happened since her detention began in March relates primarily to a different agency, USCIS, and the actions of Asylum Officers in attempting to carry out a reasonable-fear interview with Petitioner.  *See* ECF No. 26 ¶¶ 29-40.  But neither USCIS, nor any of its Asylum Officers, are parties to this case, and there is no evidence suggesting USCIS was involved in the decision to

arrest and detain Petitioner pending her removal.  *See* 6 U.S.C. § 251(3) (establishing responsibilities for ICE, including the "detention and removal program").

Second, Petitioner does not establish how USCIS's conduct reflects a retaliatory motive.  Asylum Officers made multiple attempts to perform the reasonable fear interview with Petitioner.  Ex. A ¶¶ 13, 15, 16, 22, 24.  They rescheduled Petitioner's interview multiple times at her and her counsel's request.  *Id.*  Then, when Petitioner still refused to answer an Asylum Officer's questions during the last attempted interview, USCIS ultimately made a negative reasonable fear determination.  *Id.* ¶ 25.  USCIS's attempts to implement governing regulations and internal guidance do not suggest a retaliatory motive by USCIS, let alone Respondents.

## CONCLUSION

The Court should deny the Amended Petition and dismiss it for lack of jurisdiction pursuant to 8 U.S.C. § 1252.  If the Court were to determine it has jurisdiction, it should deny the Amended Petition on the merits.

Dated: April 29, 2025.                           Respectfully submitted,


                                                 J. BISHOP GREWELL
                                                 Acting United States Attorney

                                                 s/ Benjamin Gibson
                                                 **Benjamin Gibson**
                                                 **Timothy Bart Jafek**
                                                 **Kevin Traskos**
                                                 Assistant United States Attorneys
                                                 1801 California Street, Suite 1600
                                                 Denver, Colorado 80202
                                                 Telephone: (303) 454-0100

benjamin.gibson@usdoj.gov
timothy.jafek@usdoj.gov
kevin.traskos@usdoj.gov

Counsel for Respondents

## CERTIFICATE OF SERVICE

 I certify that on April 29, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following recipients by e-mail:

  llichter@lichterimmigration.com
  mbarr@lichterimmigration.com
  briangreen@greenimmigration.com


       *s/ Benjamin Gibson*
       Benjamin Gibson