**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**


Civil Action No. 25-cv-00881-NYW-KAS

Jeanette Vizguerra-Ramirez,

      Petitioner-Plaintiff,

v.

Dawn Ceja,
      Warden, Aurora ICE Processing Center,
Robert Guadian,
      Field Office Director, U.S. Immigration and Customs Enforcement, U.S.
      Department of Homeland Security,
Kristi Noem,
      Secretary, U.S. Department of Homeland Security,
Pamela Bondi,
      U.S. Attorney General, U.S. Department of Justice,

          in their official capacities,

      Respondents-Defendants

---

**REPLY TO RESPONSE TO ORDER TO SHOW CAUSE**
**REGARDING THE AMENDED PETITION**

---

Petitioner-Plaintiff ("Petitioner"), Jeanette Vizguerra-Ramirez ("Ms. Vizguerra"), files this reply to the Respondents-Defendants' ("Respondents") response to the Court's order to show cause to the Amended Petition, ECF No. 23, urging the Court to grant the Petitioner's First Amendment challenge.

## I.    Discussion

### A.    This court has the power to consider a First Amendment challenge to retaliatory immigration enforcement.

The Respondents argue that Ms. Vizguerra has no right to bring a First Amendment retaliation claim, ECF No. 30 at 16, just like the government has in other cases involving immigration activists. *See*, e.g., *Ragbir v. Homan*, 923 F.3d 53 (2d Cir. 2019), cert. granted, judgment vacated sub nom. *Pham v. Ragbir*, 141 S. Ct. 227 (2020). Their argument is based on the Supreme Court's 1999 decision in *Reno v. AADC*, interpreting a jurisdiction-stripping provision, 8 U.S.C. § 1252(g), and analyzing whether the plaintiffs, members of the Popular Front for the Liberation of Palestine, could bring a selective enforcement claim to stop the commencement of removal proceedings. *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 473 (1999). However, neither § 1252(g) nor the ruling on selective enforcement in *AADC* precludes the review of Ms. Vizguerra's First Amendment retaliation claims.

The Respondents read § 1252(g) more expansively than its text or history allow. Congress enacted § 1252(g) to limit review of decisions or actions by federal immigration officials to "commence proceedings, adjudicate cases, or execute removal orders" in response to lawsuits challenging federal immigration officials' failure to exercise prosecutorial discretion during these three stages of proceedings.

*Am.-Arab Anti-Discrimination Comm.*, 525 U.S at 483-485. Congress wanted federal immigration officials to maintain their discretion to decide whether to halt proceedings at these stages in the process "for humanitarian reasons or simply for its own convenience." *Id.* at 484.

*AADC* examined § 1252(g) within a particular context. The plaintiffs in *AADC* were placed into removal proceedings and charged with routine immigration law violations and with charges related to advocacy for "world communism." *Id.* at 473.They brought a selective prosecution challenge to the commencement of their removal proceedings for alleged targeting based on their political beliefs. *Id.* After determining that § 1252(g) prohibited judicial review of decisions to commence removal proceedings, the Supreme Court then considered the plaintiffs' claim that its reading of the statute raised constitutional concerns. *Id.* at 488. It concluded that the plaintiffs had not raised a colorable First Amendment claim, holding that "[w]hen [a noncitizen's] continuing presence in this country is in violation of the immigration laws, the Government does not offend the Constitution by deporting him for the additional reason that it believes him to be a member of an organization that supports terrorist activity." *Id.* at 488, 491-92.

The Court then announced a presumptive rule against selective enforcement claims in the immigration context, reasoning that recognizing such claims would allow unlawfully present noncitizens "to prolong a continuing violation of United States law" and probe the mindset of prosecutors, thereby risking "the disclosure of foreign-policy objectives and . . . foreign-intelligence products and techniques" related to national security interests. *Id.* at 488-91. The Court did not, however,

foreclose all selective enforcement claims, recognizing that there may be cases "in which the alleged basis of discrimination is so outrageous that the foregoing considerations can be overcome." *Id.* at 491.

*AADC* thus stands for the propositions that: (1) § 1252(g) precludes judicial review of a challenge to federal immigration officials' discretionary decision to execute a removal order in the absence of a colorable constitutional claim, and (2) that a selective enforcement claim is not colorable in the absence of outrageous discrimination.[1]

As applied to Ms. Vizguerra, the limited set of actions that lie within the purview of *AADC* do not apply. *AADC* recognizes that 8 U.S.C. § 1252(g) is tethered solely to the "three discrete actions" referenced in 8 U.S.C. § 1252(g). It therefore does not alter a court's jurisdiction to review "many other decisions or actions that may be part of the deportation process." *Id.* at 483. One action not described in § 1252(g) is the decision to detain. Accordingly, courts have found habeas jurisdiction over challenges to retaliatory detention. *See, e.g., Bello-Reyes v. Gaynor*, 985 F.3d 696, 698 (9th Cir. 2021) (addressing merits of First Amendment challenge to ICE detention); *Gutierrez-Soto v. Sessions*, 317 F. Supp. 3d 917, 921 (W.D. Tex. 2018) (same).

Also applicable to Ms. Vizguerra, *AADC* leaves open the review of selective enforcement claims based on "outrageous" discrimination. In *Ragbir*, the Second Circuit held that First Amendment retaliation against an immigrant rights activist for

---

[1] Also, *AADC* reached its result by emphasizing national security concerns, which are not present in Ms. Vizguerra's case.

his speech critical of immigration policy was a form of outrageous discrimination that fit within this exception. *Ragbir*, 923 F.3d at 78. The plaintiff in *Ragbir* received a final order of removal in 2007 but was given permission to continue to live and work in the U.S. for several years prior to his abrupt detention and imminent deportation in 2018. *Id.* at 58-59. The ICE official who authorized the detention of Mr. Ragbir expressed resentment towards his public remarks and advocacy. *Id.* at 60.Mr. Ragbir argued that ICE's efforts to detain and deport him amounted to First Amendment retaliation for his protected political speech and to outrageous discrimination under *AADC*.

The Second Circuit agreed that Mr. Ragbir presented a viable First Amendment claim. In laying out the test for outrageous discrimination, the Court said it must examine "the gravity of the constitutional right affected; the extent to which the plaintiff's conduct or status that forms the basis for the alleged discrimination is actually protected; the egregiousness of the Government's alleged conduct; and the plaintiff's interest in avoiding selective treatment, as balanced against the Government's discretionary prerogative." *Id.*at 69. Applying this test, the court explained that "advocacy for reform of immigration policies and practices is at the heart of current political debate among American citizens and other residents" and therefore "implicates the apex of protection under the First Amendment." *Id.* at 69. The court distinguished *AADC,* observing that "national-security and foreign-policy concerns about terrorism were primary in *AADC*" and that the government made no assertion in *Ragbir* that an inquiry into the motivations of the government officials "would compromise intelligence sources and foreign

relations." *Id.* at 72. Nor would such an assertion make sense, as "the plaintiff's plausible allegation is that the Government undertook the deportation to silence criticism of the responsible agency." *Id.* The Second Circuit concluded that he raised strong, plausible claims of retaliation for his viewpoint on immigrant rights and the public attention it received. *Id.* at 70. As the Second Circuit held, "[t]o allow this retaliatory conduct to proceed would broadly chill protected speech, among not only activists subject to final orders of deportation but also those citizens and other residents who would fear retaliation against others." *Id.* at 71.

The *Ragbir* Court then reasoned that enactment of § 1252(g) violated the Suspension Clause of the U.S. Constitution, which ensures some degree of habeas jurisdiction. *Id.* at 76-78. The facts in *Ragbir* bear striking similarities with the facts here. The Court should follow the well-reasoned decision of the Second Circuit and find that it is not jurisdictionally barred from reviewing Ms. Vizguerra's retaliation claim.

The Respondents also contend that other provisions in § 1252 defeat Ms. Vizguerra's constitutional claims, pointing to §§ (a)(5) and (b)(9), which channel judicial review over questions tied to the validity of a final order of removal to the court of appeals in a petition for review. ECF No. 30 at 13. But as previously argued, Ms. Vizguerra "challenges the statutory authority of the Respondents to detain her based on a draft or preliminary order that does not meet the regulatory definition of a reinstatement order. In other words, she challenges the very existence of a reinstatement order, above and beyond any issues with the substantive legality or validity of such an order that can only be raised in a petition for review." ECF No. 18 at

8; *see also* ECF No. 18 at 7 (noting that Ms. Vizguerra is asking the Court to answer "the threshold question of whether a removal order, satisfying the definitional requirements of 8 C.F.R. § 1241.8, exists in the administrative record."). Accordingly, these provisions are not applicable to Ms. Vizguerra's retaliation claims.

> **B.    The existence of an arguably valid basis to arrest, detain, and deport Petitioner does not preclude her from bringing a First Amendment challenge to those actions.**

Respondents contend that they had an objectively reasonable legal basis to take its enforcement actions against Ms. Vizguerra. ECF No. 30 at 19. The existence and validity of the putative reinstatement order on which they base their authority is in dispute. ECF No. 26 at 23-24. However, even if found to be a legally valid removal order, that would not eviscerate Ms. Vizguerra's First Amendment claims.

The fact that an agency has the authority to take an action does not mean that it can take that action for an impermissible reason. *Perry v. Sindermann*, 408 U.S. 593, 597 (1972) (government "may not deny a benefit to a person on a basis that infringes his constitutionally protected interest."). Courts often deal with the interplay between retaliatory animus and permissible grounds for an action by applying the burden-shifting test from *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 275, 287 (1977): if a plaintiff first shows that protected speech was a "motivating factor" in the action, the government will be liable unless it demonstrates it would have taken the action "even in the absence of the protected conduct." *Id*.

For a retaliatory arrest, the existence of probable cause can, in many cases, displace the *Mt. Healthy* test and defeat a claim for damages based on First Amendment retaliation. *Nieves v. Bartlett*, 587 U.S. 391, 404-05 (2019) (holding

that probable cause defeated a damages claim based on a retaliatory arrest, and only where a plaintiff demonstrates a lack of probable cause would the case be assessed under *Mt. Healthy*). The Respondents urge application of *Nieves* to Ms. Vizguerra's claims, ECF No. 30 at 17-20, just like the government has done in similar cases. For example, in *Bello-Reyes v. Gaynor*, the government cited *Nieves* to argue that a noncitizen could not challenge ICE's decision to revoke his release on bond in retaliation for his speech because he had violated the conditions of his release. 985 F.3d 696, 698 (9th Cir. 2021) (addressing and rejecting the government's arguments based on *Nieves*). Similarly, in *Ragbir*, the government argued that a noncitizen could not challenge ICE's decision to deport him in retaliation for his speech because he had received a valid order of deportation. 923 F.3d at 67 & n.17 (addressing and rejecting the government's proposed probable cause test).

The Respondents' reliance on *Nieves* should be rejected for three reasons. First, *Nieves* is a § 1983 damages case that addresses individual officer liability for past conduct. It does not alter long-standing First Amendment jurisprudence prohibiting government officials from engaging in retaliation.[2] Ms. Vizguerra is not raising a

---

[2] Justice Gorsuch explained this distinction in his partial concurrence and dissent:
Both sides accept that an officer violates the First Amendment when he arrests an individual in retaliation for his protected speech. They seem to agree, too, that the presence of probable cause does not undo that violation or erase its significance. . . . If the state could use these laws not for their intended purposes but to silence those who voice unpopular ideas, little would be left of our First Amendment liberties, and little would separate us from the tyrannies of the past or the malignant fiefdoms of our own age. . . . So if probable cause can't erase a First Amendment violation, the question becomes whether its presence at least forecloses a civil claim for damages as a statutory matter under § 1983.

*Nieves*, 587 U.S at 412-13 (Gorsuch, J., concurring).

question about individual officer liability. As the Ninth Circuit concluded when declining to apply *Nieves*, a "petitioner need not identify a particular violator, only that his confinement is unconstitutional." *Bello-Reyes*, 985 F.3d at 701. Likewise, this Court should consider the First Amendment claims here by applying normal constitutional principles, rather than importing exceptions from the context of statutory damages.

Second, *Nieves* has little applicability to retaliatory immigration enforcement. Federal immigration officers engage in civil law enforcement, typically through pre-planned decision-making regarding the targets of an operation. Unlike police officers, immigration agents are generally not relying on protected speech to decide whether to take action against someone requiring "split-second judgments" at the scene of a crime. *Nieves*, 587 U.S. at 401. Moreover, many aspects of civil immigration enforcement are not governed by standards like probable cause. Given the struggle to apply Fourth Amendment concerns regarding officer intent to the civil immigration context, the courts in *Bello-Reyes* and *Ragbir* refused to adopt a similar rule in the context of retaliatory detention or deportation. *Bello-Reyes*, 985 F.3d at 701 (refusing to apply *Nieves* in part because "no equivalent benchmark [to probable cause] exists where ICE is revoking bond" and thus "extending [*Nieves*] to this situation would effectively eliminate almost any prospect of obtaining release on habeas for actually retaliatory, unconstitutional immigration bond revocation"); *Ragbir,* 923 F.3d at 67 & n. 17.

Third, even if *Nieves* could apply to some forms of retaliatory immigration enforcement, Ms. Vizguerra's claim falls into an exception for cases where retaliation

stems from a policy or plan, rather than "an ad hoc, on-the-spot decision by an individual officer," where there is "a compelling need for adequate avenues of redress," and the normal test under *Mt. Healthy* should apply. *Lozman v. Riviera Beach*, 585 U.S. 87, 99-100 (2018).

### C.    Petitioner has provided substantial evidence that Respondents' actions have been driven by a retaliatory motive.

Petitioner provided significant evidence of a retaliatory motive in her amended petition. ECF No. 26 at 9-12. Respondents correctly note that neither the DHS Assistant Secretary of Public Affairs nor the person in charge of ICE's X account, were involved in the decision to detain Ms. Vizguerra. ECF No. 30 at 20-21. However, it is also reasonable to assume that their superiors approved of their celebratory social media posts,[3] indicating a likely agency coordination to send warning messages to other future activists. This strong suggestion of a retaliatory motive, as seen in the agency's public messages, underscores the need for discovery to reveal other likely communications among agency officials regarding the reasons for Ms. Vizguerra's arrest and detention. *See* ECF No. 37, Petitioner's pending discovery motion.

Likewise, Respondents correctly note that John Fabbricatore could not have been the person in charge of Ms. Vizguerra's detention, given that he is retired. ECF No. 30 at 21. However, he served as the Assistant Field Office Director in Denver during the first Trump administration. Given the considerable overlap in leadership in the two administrations, it is reasonable to assume that his current retaliatory statements on

---

[3] The suggestion of a coordinated messaging strategy is also seen in the retweeting of Ms. McLaughlin's post by Alex Pfeiffer, Deputy Assistant to the President and Principal Deputy Communications Director.

social media are reflective of the agency's past and current attitudes towards Ms. Vizguerra. Once again, discovery is appropriate given these strong signals of a retaliatory motive among other officials. ECF No. 37.

Finally, Petitioner contended that her mistreatment while in detention, during the reasonable fear process, provided further evidence of a retaliatory motive. ECF No. 26 at 12-17. Respondents contest that characterization, ECF No. 30 at 21-22, but do so based on alleged facts that are not consistent with the actual record. Respondents would have this Court believe that USCIS[4] was required to complete the reasonable fear screening process within 10 days (absent exceptional circumstances) but that despite the agency providing adequate notice and making multiple attempts to reschedule the interview, Ms. Vizguerra (and counsel) were uncooperative, forcing a negative fear finding. This misstates the record. Notably, the response and accompanying declaration wholly ignore Ms. Vizguerra's right to request deferral and omits any reference to the agency's refusal to consider her request.

Deferral at counsel's request is specifically contemplated in the agency's own internal guidance; there are no special requirements, restrictions or time limits; and a request does not require exceptional circumstances. *See* RFPM Section III.B.3.[5]

---

[4] As noted in the Petitioner's Verified Motion to Clarify Scope of Temporary Restraining Order, ECF No. 31 at 4, USCIS is an operational component of Respondent DHS and acts as agent of, or in active concert or participation with the named Respondents. See F.R.C.P. 65(d)(2)(C), (D).

[5] It is also commonplace to defer the reasonable fear screening process when ICE is not expected to imminently execute the order (comparable to the instant case where there is a TRO in place). *See, e.g.,* USCIS Q&A on Reasonable Fear screenings ("Q. When do reasonable fear interviews take place? A. Within 10 days after ICE refers your case to the asylum office. <u>If you are serving a lengthy prison sentence, the asylum officer will not interview you for reasonable fear until you have nearly completed your sentence or will soon be released to ICE custody.</u> *See*

Requesting deferral is not to be confused with a request to reschedule or delay the reasonable fear process.[6] Respondents characterize Ms. Vizguerra's actions as an attempt to improperly delay a process which USCIS claims it undertook in line with regulatory and agency guidance. Again, this is not what the record reflects.

Deferral tolls the regulatory timeframe during which a case must be reviewed. RFPM Section III.B.3. ("The APSS processing clock may only be tolled due to:  a request by the alien or the alien's representative to defer the reasonable fear interview; refusal to participate in the reasonable fear interview or accept service of a reasonable fear determination; **or** exceptional circumstances.") (emphases added). While Ms. Vizguerra *initially* requested that her interview be rescheduled,[7] she requested deferral when it became clear that USCIS was relying on the defective draft I-871 order from 2013.

Ms. Vizguerra's request to defer was entirely appropriate given that the underlying order was under judicial review. In addition, USCIS's own guidance states that the initiation of a claim must be supported by a fully executed I-871 that is properly served on the noncitizen; both of those elements are clearly in doubt. *See* RFPM III.B.1

---

https://www.uscis.gov/humanitarian/refugees-and-asylum/asylum/questions-and-answers-reasonable-fear-screenings#:~:text=When%20do%20reasonable%20fear%20interviews,a%20likelihood%20of%20future%20persecution, last accessed May 13, 2025.

[6] *Compare* "defer:" an intentional delay until a future date [or event], *with* "delay:" to retard; obstruct; put off; hinder; interpose obstacles. Black's Law Dictionary 2nd Ed.

[7] Ms. Grant repeatedly mischaracterizes Ms. Vizguerra's request to defer as a request to reschedule, *see* declaration, ECF No. 30-1 3, ¶¶ 5, 6. The only requests to reschedule were made on March 20, March 24, March 25, and March 27 (in person by Ms. Vizguerra, as well as by counsel's March 24 email seeking to reschedule on or after March 28, 2025, her initial estimate as to the earliest Ms. Vizguerra would be prepared to participate).

(if I-871 not properly executed it is "not a proper referral;" I-871 must be "fully executed" and served on the noncitizen before the Asylum Office has jurisdiction). To date, despite multiple written and oral requests, USCIS has not responded to Ms. Vizguerra's request to defer nor identified whether there has been final agency action on the request.

The first attempted interview on March 20 took place less than 48 hours after Ms. Vizguerra's orientation; she had not requested expedited review nor waived the 48-hour rule. *See* RFPM § III.C.2.a (interview to take place at least 48 hours after the orientation "unless the alien expresses readiness to proceed sooner.").

No advance notice was provided to Ms. Vizguerra or counsel for the attempted interviews on March 20, March 24, March 25, and March 27. The attempted interview on March 31 was made with less than 48 hours' notice, and the interview attempted April 11 was about the same. *See* RFPM § III.C.2.a. ("If the alien is represented, Asylum Office staff should try to arrange the interview at a date and time when the representative may be present"); *see also* RFPM § III.C.2.b ("An Asylum Office shall provide a written notice of interview to an alien, unless it is impractical to do so" using written notice handed or faxed to the alien, with a copy provided to counsel) (emphasis added).

The conduct in the attempted interviews for which counsel was present—March 31 and April 11—is particularly troubling. On the March 31 attempt, counsel had spent 30 minutes on the phone with the asylum officer before Ms. Vizguerra disconnected. Counsel remained on the line for an additional 15 minutes without any meaningful response by the asylum officer and eventually disconnected. The asylum officer immediately caused Ms. Vizguerra to be returned to the line under false pretenses,

made no attempt to reconnect counsel, and falsely claimed that her attorney had agreed that Ms. Vizguerra "must" proceed on her own. *See* ECF No. 31-1 at 6-7; ECF No. 31-2 at 9-12; *see also* RFPM Section III.E.5.b, c (interview without counsel requires written waiver and verbal consent). USCIS has failed to respond to the allegations of misconduct.

Respondents claim that counsel received adequate notice of the April 11, 2025 interview by phone and email (ECF No. 30-1 at ¶¶ 22–23), but misrepresent the communications: Respondents omit that no specific date or time was communicated during calls to her office on April 4 or April 7 (ECF No. 31-1 at 8-9); that counsel had advised USCIS in her March 30 email correspondence that she would be out of town April 3–6 (ECF No. 31-2 at 7, FN1) and had repeatedly requested sufficient advance notice (7-10 days) if the request to defer was denied (*see, e.g.*, ECF No. 31-2 at 3). Respondents omit that USCIS's April 7 email only stated a "<u>proposed</u>" date and time for an interview, asking counsel to "please let [USCIS] know if this works for you" (ECF No. 31-2 at 15), mischaracterizing the email as notice of the April 11 interview (ECF No. 31-2 at 17). Respondents also omit that counsel responded to their scheduling staff on April 8, 2025, explicitly requesting that agency address the (still pending) request to defer, as well as noting that there was insufficient notice for an interview "on or after April 11" because that date had been contemplated <u>eight days earlier</u>. (ECF No. 31-2 at 22). Respondents also omit that their April 9 email unilaterally set the interview with approximately 48 hours' notice. ECF No. 31-2 at 14. Similarly, Respondents state that

there are "notes"[8] on which their negative determination was based, ECF No. 30-1 at ¶ 21, but have failed to provide those notes and/or any related recordings to Ms. Vizguerra. Finally, Respondents fail to acknowledge that their using a civilian employee of the GEO Group to present, review and scan and retransmit their negative fear finding violated Ms. Vizguerra's privacy rights under 8 C.F.R. § 208.6. *See* ECF No. 31-1 at 12; ECF No. 31-2 at 18-19.

Far from following established norms, Respondents' handling of the reasonable fear process was replete with omissions, evasions, and affirmative misconduct. Even the handling of the review by USCIS Headquarters violated the agency's own internal guidance.[9] Such conduct cannot be reconciled with the government's claimed adherence to "standard procedures" and must be seen for what it is: a failure of due process that deprived Ms. Vizguerra of safeguards to which she was entitled and further evidence of retaliation by Respondents and their agents.

## IV.    Conclusion

The First Amendment prohibits the government from retaliating against immigrant activists in the U.S., like Ms. Vizguerra, based on their immigrant rights advocacy. This

---

[8] An applicant facing an adverse decision "must be permitted to inspect the record of proceedings, must be advised of derogatory evidence of which he is unaware, and must be offered an opportunity to rebut such evidence." *Matter of Estime*, 19 I&N Dec. 450 (BIA 1987); 8 C.F.R. 103.2(b)(16)(i).  This right to review derogatory evidence cannot be satisfied with mere conclusory statements or references. *Estime, supra,* at 452.

[9] The case should have been processed by the Houston Asylum Office, however counsel confirmed that the March 31 and April 11 attempts originated from USCIS Headquarters in Washington, D.C.  *See, e.g.,* 8 CFR 100.4; RFPM I.B.5 ("Normally, the alien's place of detention, not the place of apprehension, determines which asylum office processes the reasonable fear claim."); *see also* https://www.uscis.gov/about-us/organization/directorates-and-program-offices/refugee-asylum-and-international-operations-directorate-raio, last accessed on May 13, 2025.

includes a prohibition against retaliatory immigration enforcement in the form of detention. When such retaliation occurs, an immigrant may raise, and the district court must review, First Amendment claims challenging that detention action. This Court should reject the Respondents' attempt to limit the Court's authority to review and redress such a claim.

Dated: May 13, 2025

Respectfully submitted,

s/ Laura L. Lichter
**Laura L. Lichter**
Lichter Immigration
1601 Vine Street
Denver, CO 80206
(303) 554-8400 | LLichter@LichterImmigration.com

**Elizabeth B. Jordan**
Lilli Warren*
University of Denver Student Law Office
2255 East Evans Avenue, Suite 4335
Denver, CO 80210
(303) 8716368 | elizabeth.jordan@du.edu

**Laura Patricia Lunn**
Rocky Mountain Immigrant
Advocacy Network (RMIAN)
7301 Federal Boulevard, Suite 300
Westminster, CO 80030
(303) 433-2823 | llunn@rmian.org

**Mark Robert Barr**
Lichter Immigration
1601 Vine Street
Denver, CO 80206
(303) 554-8400 | mbarr@lichterimmigration.com

**Shira N. Hereld**
RMIAN
7301 Federal Boulevard, Suite 300
Westminster, CO 80030
(203) 980-2670 | shereld@rmian.org

**Brian Scott Green**
Law Office of Brian Green
9609 South University Boulevard, Suite 630084
Littleton, CO 80130
(443) 779-4225 | BrianGreen@greenUSimmigration.com

COUNSEL FOR PETITIONER-PLAINTIFF

**CERTIFICATE OF SERVICE**

I certify that on May 13, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following recipients by e-mail:

Benjamin.Gibson@usdoj.gov
Kevin.Traskos@usdoj.gov
Timothy.Jafek@usdoj.gov

s/ Mark R. Barr
Lichter Immigration
1601 Vine Street
Denver, CO 80206
(303) 554-8400
MBarr@LichterImmigration.com