IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-00881-NYW

JEANETTE VIZGUERRA-RAMIREZ,

    Petitioner,

v.

DAWN CEJA, Warden, Aurora ICE Processing Center,
ROBERT GUADIAN, Field Office Director, U.S. Immigration and Customs Enforcement,
KRISTI NOEM, Secretary, U.S. Department of Homeland Security,
PAMELA BONDI, U.S. Attorney General,

    Respondents.

---

**RESPONSE TO PETITIONER'S MOTION FOR EXPEDITED DISCOVERY,
ECF No. 37**

---

Respondents file this response to Petitioner's Motion for Expedited Discovery, ECF No. 37 ("Motion for Discovery"). The Court should deny the Motion for Discovery. As explained below, discovery is premature at this stage given that the Court has yet to determine whether it has jurisdiction over the Amended Petition. Also, Petitioner has not provided good cause for the discovery she seeks.

## BACKGROUND

Petitioner is a native and citizen of Mexico. ECF No. 26 ¶ 6. She entered the United States without inspection on two occasions. *Id.* ¶¶ 11, 16. She is subject to a reinstatement of removal order that was issued in 2013 (the "2013 Reinstatement Order"). ECF No. 16-1 at 4. U.S. Immigration and Customs Enforcement ("ICE") arrested Petitioner on March 17, 2025. ECF No. 26 ¶ 22. She is presently detained at

the Denver Contract Detention Facility in Aurora, Colorado.  ECF No. 16-1 at 5.  She is detained under 8 U.S.C. § 1231 based on the 2013 Reinstatement Order.  *Id.*

On March 18, 2025, Petitioner filed an application for writ of habeas corpus (the "Petition") with this Court under 28 U.S.C. § 2241.  *See* ECF No. 1.  In the Petition, she challenged the validity of the 2013 Reinstatement Order.  *Id.*  On March 24, 2025, Respondents responded to the Order to Show Cause, contending that this Court lacks jurisdiction to consider Petitioner's challenge to the validity of the 2013 Reinstatement Order, as any such challenge would need to be brought in the court of appeals.  ECF No. 16.  Petitioner replied on March 26, 2025.  ECF No. 18.

Petitioner filed the Amended Petition on April 8, 2025.  ECF No. 26.  In the Amended Petition, she added a challenge to her detention based on First Amendment retaliation.  *Id.*  She alleged that she has previously engaged in activism related to immigration and labor policy.  *Id.* ¶ 23.  She contended that Respondents arrested her, detained her, and executed the 2013 Reinstatement Order against her as retaliation for that activism.  *Id.* ¶ 24.

As evidence of retaliatory motive, she pointed to social media posts by various individuals about her arrest.  *Id.*  She also pointed to purported deficiencies and irregularities in the "reasonable fear" process undertaken by the U.S. Citizenship and Immigration Service ("USCIS") after she was arrested and detained on March 17, 2025.  *Id.* ¶¶ 25-40.  If an alien subject to reinstatement of removal expresses a fear of returning to the country of removal, a USCIS asylum officer will screen the individual to determine if they have a reasonable fear of persecution or torture.  *See* 8 U.S.C.

§ 1231(b)(3) (prohibiting the Attorney General from removing "an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion"); 8 C.F.R. § 208.31 (providing the steps for an asylum officer to make a reasonable-fear determination and to make any subsequent referral to an immigration judge for "withholding of removal only" proceedings). The reasonable-fear determination is part of the process undertaken to determine whether a noncitizen qualifies for withholding of removal or protection under the Convention Against Torture. *See* 8 U.S.C § 1231(b)(3); 8 C.F.R. § 208.31; 8 C.F.R. § 208.16.

Respondents filed a response to the Amended Petition on April 29, 2025 (the "Response"). ECF No. 30. In the Response, Respondents explained that there were several independent grounds for rejecting Petitioner's First Amendment challenge to her detention. First, Respondents explained that under 8 U.S.C. § 1252, the Court lacks jurisdiction to consider Petitioner's challenge. *Id.* at 11-14. Second, Respondents explained that even if the Court did have jurisdiction, the First Amendment challenge would fail because the Supreme Court has held that noncitizens who are not lawfully in the country cannot bring selective enforcement challenges. *Id*. at 15-16. Third, Respondents explained that even if such a challenge could be brought, Petitioner had not met her burden to show that Respondents lacked an objectively reasonable legal justification for their enforcement actions. *Id.* at 17-20. Finally, Respondents explained Petitioner had also not met her burden to present evidence showing that Respondents' conduct was motivated by her activism. *Id.* at 20-22. Petitioner filed a Reply to the

Response to the Order to Show Cause Regarding the Amended Petition (the "Reply"), ECF No. 39.  The briefing on the Amended Petition is complete.

On May 5, 2025, Petitioner filed the Motion for Discovery.  ECF No. 37.  In the Motion for Discovery, Petitioner seeks an order directing Respondents to provide (1) "all communication or documentation . . . that contain[s] any reference to her in any capacity . . . from January 1st, 2025, until present day"; (2) "all such communication or documentation regarding her detention, classification, or other specific references to Ms. Vizguerra-Ramirez with [Respondents] DHS, ICE and GEO Group, Inc. employees at the Aurora ICE Processing Center"; and (3) "all such communication or documentation regarding her referral to and processing of her reasonable fear interview or any other specific references to Ms. Vizguerra-Ramirez with [USCIS]."  *Id.* at 2.  Petitioner argues that to fully assess the merits of the First Amendment challenge, she "must review internal DHS and/or ICE communications, including those they work in concert with such as officials at the detention center and USCIS, to see if there is internal evidence that DHS and/or ICE intentionally targeted Ms. Vizguerra-Ramirez for the purpose of silencing her."  *Id.* at 5.[1]

## ARGUMENT

Petitioner's request for discovery should be denied because she has not shown that she may be entitled to relief, even if she obtained such discovery.

---

[1] Petitioner also requested that "the Court stay any deadlines of her filing of a Reply to the Response while the Court considers this Motion."  ECF No. 37 at 5-6.  Because Petitioner has since filed the Reply, ECF No. 39, this request appears to be moot.

4

I.   **Petitioner cannot obtain discovery unless she shows that the evidence, if obtained, could entitle her to relief.**

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). "[T]he 'broad discovery provisions' of the Federal Rules of Civil Procedure d[o] not apply in habeas proceedings." *Id.* (citing *Harris v. Nelson,* 394 U.S. 286, 295 (1969)). But to "secur[e] facts necessary to accomplish the objectives of the proceedings," a court in a habeas proceeding "may fashion appropriate modes of procedure" to secure those facts, under the authority "confirmed in the All Writs Act, 28 U.S.C. § 1651." *Harris*, 394 U.S. at 299. But "all orders issued under the All Writs Act must be" ones that are "necessary or appropriate in aid of a federal habeas court's jurisdiction." *Shoop v. Twyford*, 596 U.S. 811, 821 (2022) (cleaned up) (explaining a district court's authority to grant writs to permit evidence-gathering in habeas proceedings under the All Writs Act).

A petitioner seeking discovery in a habeas proceeding thus must make specific allegations that give the court "reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy*, 520 U.S. at 908-09 (citation omitted); *see also Harris*, 394 U.S. at 300 (explaining that a court could allow discovery in a habeas proceeding if "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, . . . be entitled to relief"). The Tenth Circuit has explained that there is good cause to permit discovery in a habeas proceeding only if this standard is met—that discovery may entitle the petitioner to relief. *See Curtis v. Chester*, 626 F.3d 540, 549 (10th Cir. 2010) ("If a petitioner has shown good cause for discovery—*that is, has set forth good reason*

5

*to believe he may be able to demonstrate he is entitled to relief*—the court may ensure adequate inquiry takes place.") (emphasis added).

Conversely, a habeas petitioner is *not* entitled to discovery absent a showing that the evidence may entitle the petitioner to relief. *See Shoop,* 596 U.S. at 823-24 (holding that a district court erred in a habeas proceeding in issuing a "transportation order that allowed a prisoner to search for new evidence" because the petitioner had not shown that the evidence to be gathered could be used in the proceeding, given other legal bars on presenting such evidence); *Curtis*, 626 F.3d at 549 (determining that the habeas petitioner's request for discovery was properly denied where the "allegations, even if true, do not entitle [him] to relief").

## II.     Petitioner should not be granted discovery because she has not first shown that the Court has jurisdiction over this proceeding.

Petitioner seeks discovery for one purpose: to support her challenge that her detention violates the First Amendment. *See* ECF No. 37 at 3 ("The purpose of this expedited discovery motion is to obtain the evidence needed to fully and efficiently assess Ms. Vizguerra-Ramirez's Habeas claim as to whether her detention is in violation of her rights under the First Amendment."). But Petitioner still has not established that the Court has jurisdiction to consider her First Amendment retaliation challenge. And unless this Court has jurisdiction, this Court cannot grant discovery in aid of its jurisdiction consistent with the All Writs Act.

In their Response to the Show Cause Order for the Amended Petition, Respondents explained that the Immigration and Nationality Act ("INA") strips this Court of jurisdiction over a challenge like Petitioner's. *See* ECF No. 30 at 11-14. Specifically,

6

Petitioner seeks "judicial review of questions of law and fact . . . arising from an[ ] action taken . . . to remove an alien from the United States", through her First Amendment challenge to her arrest, detention, and the execution of her removal order.  8 U.S.C. § 1252(b)(9); *see Tazu v. Att'y Gen. United* States, 975 F.3d 292, 299 (3d Cir. 2020) ("[T]he legal questions [the petitioner] raises about the scope of the Attorney General's discretion to re-detain him are bound up with (and thus 'aris[e] from') an 'action taken' to remove him[.]").  The INA requires that judicial review of such actions be channeled to the appropriate court of appeals through a petition for review of a final order of removal. 8 U.S.C. § 1252(a)(5), (b)(9).  Section 1252(g) further provides that, except as otherwise provided in Section 1252, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings . . . or execute removal orders against any alien."  Section 1252(g) thus deprives this Court of jurisdiction to review the decision to execute the 2013 Reinstatement Order by arresting and detaining Petitioner.

In her Reply, Petitioner does not respond to Respondents' position that 8 U.S.C. § 1252(a)(5) and (b)(9) require her First Amendment challenge—which arises from an action taken to remove a noncitizen—to be brought as a petition for review with the appropriate court of appeals.  *See* ECF No. 39 at 6-7 (addressing why her argument about the validity of the 2013 Reinstatement Order should not be brought via a petition for review).  As for 8 U.S.C. § 1252(g), Petitioner argues that it does not preclude this Court from reviewing Respondents' decision to detain Petitioner.  ECF No. 39 at 4.  She argues that precluding review of the decision to detain her would read Section 1252(g)

7

and *Reno v. Am.-Arab Anti-Discrimination Comm*. ("*AADC*"), 525 U.S. 471, 473 (1999), too broadly. *Id.* at 3-4. Not so. The decision to detain Petitioner is part and parcel of the decision regarding how to enforce the 2013 Reinstatement Order. *See Tazu*, 975 F.3d at 298-99 ("Re-detaining Tazu was simply the enforcement mechanism the Attorney General picked to execute his removal. So § 1252(g) funnels review away from this District Court and Court" when brought via a habeas petition.).

Petitioner also points to *Ragbir v. Homan*, 923 F.3d 53 (2d Cir. 2019)*, cert. granted, judgment vacated sub nom. Pham v. Ragbir*, 141 S. Ct. 227 (2020), as support for her argument that the Court has jurisdiction. ECF No. 39 at 6-7. In *Ragbir*, a noncitizen challenged the execution of a removal order as retaliatory. 923 F.3d at 61. The Second Circuit concluded "that the Government's challenged conduct falls squarely within the ostensible jurisdictional limitation of § 1252(g)." *Id.* at 64. The Second Circuit, nonetheless, determined it had jurisdiction to consider Ragbir's habeas petition because it believed there was no adequate substitute for his habeas petition and thus Section 1252(g) violated the Suspension Clause as applied to Ragbir. *Id.* at 78.

*Ragbir* does not support Petitioner's argument that this Court has jurisdiction. First, in *Ragbir*, the government had conceded that Ragbir had "no adequate substitute" to his habeas petition because he had already taken advantage of all the review provided to him, including a petition for review. *Id.* at 74 n.27. Respondents have not conceded the lack of an adequate substitute for Petitioner's challenges here; rather, Respondents have pointed to such a substitute in the form of a petition for review with the appropriate court of appeals. *See* ECF No. 30 at 11-14. Second, the Supreme

8

Court vacated the Second Circuit's judgment in *Ragbir* for reconsideration in light of its decision in *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020). *See Pham v. Ragbir*, 141 S. Ct. 227. Third, in *Thuraissigiam*, the Supreme Court clarified the types of challenges available to noncitizens via habeas and protected under the Suspension Clause and, as relevant here, clarified that habeas does not provide an avenue for a noncitizen who lacks lawful status in the country to seek release in order to seek to stay in the country. 591 U.S. at 119 (explaining that "simply releasing him would not provide the right to stay in the country that his petition ultimately seeks," as "[w]ithout a change in status, he would remain subject to arrest, detention, and removal"). In sum, *Ragbir* does not support Petitioner's argument that the Court has jurisdiction over her First Amendment challenge.

Allowing discovery to proceed before the Court establishes whether it has jurisdiction would be inappropriate and inefficient here. The Court should resolve the issue of its jurisdiction before allowing discovery to proceed on the merits of Petitioner's First Amendment retaliation challenge. *Cf. Salvagno v. Director, Bureau of* Prisons, No. 3:17-cv-318 (MPS), 2017 WL 11567863, at *2 (D. Conn. June 29, 2017) (concluding that the petitioner's motion for discovery was "premature" because "the Court must first resolve the question of whether it has jurisdiction to decide the petitioner's case"); Charles Alan Wright, et al., *Federal Practice and Procedure* § 2040 (3d ed. 2025) (A "court may decide that in a particular case it would be wise to stay discovery on the merits until challenges to jurisdiction have been resolved.").

To the extent Petitioner is concerned about having an avenue to develop facts related to her First Amendment challenge, the proper forum to develop those facts would be the Tenth Circuit, where that court has the authority to decide on a petition for review whether discovery, if any, is necessary. *See* ECF No. 30 at 13 n.4 (citing 28 U.S.C. § 2347(b)(3)). Allowing for discovery on the merits of Petitioner's First Amendment challenge now could result in unnecessary discovery if the Court ultimately determines that it lacks jurisdiction over her First Amendment challenge. *See Burkitt v. Pomeroy*, No. 15-cv-02386-MSK-KLM, 2016 WL 696107, at *1 (D. Colo. Feb. 22, 2016) ("Questions of jurisdiction and immunity should be resolved at the earliest stages of litigation, so as to conserve the time and resources of the Court and the parties.").

### III. Petitioner has not identified good cause for the requested discovery.

#### A. Petitioner has not set forth good reasons to believe she is entitled to relief on her First Amendment challenge.

To establish good cause entitling her to discovery in a habeas proceeding, Petitioner must "set forth good reason to believe [she] may be able to demonstrate [she] is entitled to relief" based on her First Amendment challenge. *Curtis*, 626 F.3d at 549. The requested discovery goes to one aspect of Petitioner's First Amendment challenge: Respondents' motivation for arresting, detaining, and executing the 2013 Reinstatement of Removal Order against her. But Petitioner has not shown that if she obtained the discovery, she may be entitled to relief. Several legal hurdles would bar that relief.

First, as explained above, the Court lacks jurisdiction to consider Petitioner's First Amendment challenge to her arrest, detention, and the execution of the 2013 Reinstatement Order. *See supra* at pp. 6-9. Where a court lacks jurisdiction, a

10

petitioner has not shown entitlement to relief, and it would be improper to allow discovery into the merits of the petition. *Accord Diakhate v.* Casey, 6:23-CV-06736 EAW, 2024 WL 4882264, at *3 (W.D.N.Y. Nov. 25, 2024) ("[T]his Court has no jurisdiction over any claims attacking the legitimacy of Petitioner's removal order" so "the Court declines to order discovery."); *Nnodi H. v. Sec. of Dep't of Homeland Sec.*, No. 18-cv-1986 (ECT/TNL), 2019 WL 1097495, at *2 (D. Minn. Mar. 8, 2019) (concluding that the petitioner failed to "explain[ ] why the information he seeks is necessary for him to seek habeas relief" given that the "Court has no jurisdiction to review decision that are left to the discretion of the Attorney General").

Second, even if the Court did have jurisdiction over the First Amendment retaliation challenge, the Supreme Court has made clear that "[a]s a general matter . . . an alien unlawfully in this country has no constitutional right to asset selective enforcement as a defense against his deportation." *AADC*, 525 U.S. at 488. And Petitioner has not shown that she was lawfully in this country. To be sure, in *AADC* the Supreme Court did not "rule out the possibility of a rare case in which the alleged basis of discrimination is so outrageous that the foregoing considerations can be overcome." *Id.* at 491. But in that case the Court determined that a selective enforcement defense was not available to the noncitizens even after the government admitted "that the alleged First Amendment activity was the basis for selecting the individuals for adverse action." *Id.* at 488 n.10. Petitioner has not explained how the discovery she seeks would qualify her as such a rare case of discrimination. Here, Petitioner has pointed to several social media posts from different individuals that reference her arrest and her

prior activism.  But she has not otherwise provided any indication that her case involves such outrageous conduct that would cause it to fall outside the Court's holding in *AADC*.

Third, even if Petitioner could bring such a First Amendment challenge here, she has not shown that she could meet the elements of such a challenge.  When assessing whether a habeas petitioner is entitled to discovery, courts must first identify the "essential elements" of the challenge.  *See Bracy*, 520 U.S. at 904.  Respondents identified the elements of a First Amendment retaliatory arrest challenge in the Response.  *See* ECF No. 30 at 17-18.  As explained there, the party claiming retaliation must prove (1) "that [she] was engaged in constitutionally protected activity"; (2) "that the defendant[s'] actions caused [her] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity"; and (3) "that the defendant[s'] adverse action[s] [were] substantially motivated as a response to [her] exercise of constitutionally protected conduct."  *Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs.*, 962 F.3d 1204, 1226 (10th Cir. 2020) (quoting *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000)).

In addition, when a party claims a retaliatory arrest, she "must plead and prove the absence of probable cause for the arrest."  *Nieves v. Bartlett*, 587 U.S. 391, 402-3 (2019).  The Supreme Court has carved out a "narrow qualification" to this threshold probable-cause requirement: "where officers have probable cause to make arrests, but typically exercise their discretion not to do so."  *Id.* at 406.  To fall within this carve-out, the party claiming a retaliatory arrest must "present[ ] objective evidence that [she] was

arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id.* at 407.

Petitioner's discovery requests go solely to the third element of the First Amendment retaliation test: whether Respondents' actions toward her were substantially motivated by her activism. But Petitioner has not provided any evidence regarding the threshold issue of whether there was an objectively reasonable justification for her arrest and detention. Absent such evidence, Petitioner has not established good reason to believe she may be entitled to relief if she obtained evidence relating to the third element.

In her Reply, Petitioner argues that the probable cause test from *Nieves* should not be applied in the immigration context. ECF No. 39 at 7-8. She insists that it is limited to cases for money damages brought under 42 U.S.C. § 1983 in the criminal law context. *Id.* at 7. She also argues it should not apply in the immigration context because immigration agents, unlike police officers, generally do not make split-second judgments that may rely on protected speech when deciding whether to take an enforcement action. *Id.* at 8. But the Supreme Court has explained that the concerns that arise in the selective-enforcement context in the criminal law setting carry equal, if not greater, weight in the immigration setting. *See AADC*, 525 U.S. at 489-91. For example, as in the criminal law context, subjecting all enforcement actions carried out by ICE to a subjective analysis of each agent's mindset would "threaten to set off broad-ranging discovery in which there often is no clear end to the relevant evidence." *Nieves*, 587 U.S. at 403 (internal quotation marks omitted). While enforcement decisions and

13

actions in the immigration context and the criminal-law context do not perfectly mirror each other, both contexts are served by requiring a showing of no objectively reasonable justification for the enforcement action before proceeding to the remainder of the First Amendment retaliation analysis.

### B. Granting Petitioner's requested discovery would permit impermissible fishing for relevant evidence.

As explained above, the Court here, under the applicable standards, may not grant discovery unless Petitioner clears all the hurdles explained above. But even if she could clear those hurdles, she has not shown good cause for the discovery she seeks.

Petitioner is "not allowed to use discovery as a fishing expedition." *Thomas v. Ortiz*, No. 07–cv–00114–LTB–MEH, 2007 WL 3023277, at *1 (D. Colo. Oct. 12, 2007). Instead, she "must demonstrate good cause as to what facts [she] intends to develop from this discovery, and must specify why those facts and [her] requests would be relevant to [her] claim[.]" *Id.*; *accord Shoop*, 596 U.S. at 821 (explaining that the All Writs Act does not authorize allowing a habeas petitioner to "fish" for evidence that "might undermine his conviction").

Petitioner's requests amount to such impermissible fishing here. She seeks *all* communication or documentation that reference her from a time period that extends over two months before her arrest and over two months after her arrest. In support, she argues generally that the requested discovery "will aid in assessing the extent of DHS and/or ICE's decision to target Ms. Vizguerra-Ramirez" for retaliatory reasons, and that it "is relevant to the parties and this Court's consideration of questions relating to the violation of Ms. Vizguerra-Ramirez's First Amendment rights[.]" ECF No. 37 at 11.

14

But Petitioner has not explained why all the communications she seeks would be relevant to her First Amendment challenge. She does not seek to limit her discovery requests to the relevant time period—her arrest did not occur until March 17, 2025. She does not seek to limit her discovery requests to communications about her activism. Nor are her discovery requests tailored to the evidence she has presented.

Petitioner also seeks all communications and documents "regarding her referral to and processing of her reasonable fear interview or *any other* specific references to Ms. Vizguerra-Ramirez" with USCIS. ECF No. 37 at 1 (emphasis added). But she has not shown that any decisions by USCIS (a separate agency from ICE that does not make decisions about detention or the execution of removal orders) about the reasonable-fear-interview process (which was required to occur after her detention) would be relevant to whether Respondents engaged in a retaliatory arrest.

In short, even if the Court were to determine that Petitioner had cleared all the legal hurdles that would permit her to seek some discovery, the Court should find that her current discovery requests represent the kind of fishing that is not permitted in this context. If the Court were to determine that it is appropriate for discovery to proceed here, it should require Petitioner to reissue discovery requests that are narrowly tailored and reasonably related to the challenge at issue.

## CONCLUSION

Because discovery would be premature at this stage, the Court should deny Petitioner's Motion for Discovery. Regardless, Petitioner has not established good cause for the discovery she seeks.

15

Dated May 27, 2025

        J. BISHOP GREWELL
Acting United States Attorney

<u>s/ Benjamin Gibson</u>
***Benjamin Gibson***
***Timothy Bart Jafek***
***Kevin Traskos***
Assistant United States Attorney
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: (303) 454-0181
benjamin.gibson@usdoj.gov
timothy.jafek@usdoj.gov
kevin.traskos@usdoj.gov

Counsel for Respondents

## CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2025, I electronically filed the foregoing with the Clerk of Court using the ECF system, which will send notification of such filing to the following recipients by e-mail:

llichter@lichterimmigration.com
mbarr@lichterimmigration.com
briangreen@greenimmigration.com
Elizabeth.jordan@du.edu
llunn@rmian.org
shereld@rmian.org

*s/ Benjamin Gibson*
U.S. Attorney's Office
