# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF COLORADO

Civil Action No. 25-cv-00881-NYW-KAS

Jeanette Vizguerra-Ramirez

      Petitioner-Plaintiff,

v.

Dawn Ceja,
      Warden, Aurora ICE Processing Center,
Robert Guadian
      Field Office Director, U.S. Immigration and Customs Enforcement, U.S.
      Department of Homeland Security,
Kristi Noem,
      Secretary, U.S. Department of Homeland Security,
Pamela Bondi,
      U.S. Attorney General, U.S. Department of Justice,

        in their official capacities,

      Respondents-Defendants.

---

# PETITIONER'S MOTION FOR RELEASE ON BOND OR, IN THE ALTERNATIVE, A PRELIMINARY INJUNCTION ORDERING RELEASE PENDING A FINAL JUDGMENT

---

1

**Table of Contents**

INTRODUCTION.................................................................................................3

SUMMARY OF THE ARGUMENT ...................................................................4

FACTS ...............................................................................................................6

    I.   Ms. Vizguerra-Ramirez is a nationally renowned immigration advocate and key leader of her community. .........................................................................6

    II.  ICE detained Ms. Vizguerra-Ramirez in retaliation for her critique of the government's immigration policies.......................................................8

    III.   Ms. Vizguerra-Ramirez's detention has silenced her and others' speech.........9

    IV.  Ms. Vizguerra-Ramirez's arrest and detention are part of a Trump administration policy intended to silence and chill the speech of immigration advocates. .........10

ARGUMENT.....................................................................................................14

    I. THIS COURT SHOULD ORDER MS. VIZGUERRA-RAMIREZ'S IMMEDIATE RELEASE PENDING THE ADJUDICATION OF HER HABEAS PETITION ...........14

        a. This Court has authority to grant Ms. Vizguerra-Ramirez immediate release pending the adjudication of this habeas petition. .................................14

        b. Ms. Vizguerra-Ramirez satisfies the requirements for release while her habeas is pending...............................................................................17

    II.IN THE ALTERNATIVE, THIS COURT SHOULD GRANT A PRELIMINARY INJUNCTION ORDERING MS. VIZGUERRA-RAMIREZ'S RELEASE FROM DETENTION. .......................................................................................27

        a.   Ms. Vizguerra-Ramirez will suffer irreparable harm if not released.................28

        b.   Ms. Vizguerra-Ramirez has a substantial likelihood of success on the merits of her underlying petition.............................................................29

        c.   The public interest and the balance of equities weigh heavily in favor of a preliminary injunction. ...........................................................30

CONCLUSION ................................................................................................32

## <u>INTRODUCTION</u>

Petitioner-Plaintiff Jeanette Vizguerra-Ramirez ("Ms. Vizguerra-Ramirez") is a nationally renowned immigration reform and human rights activist, a beloved mother and grandmother, and a cherished member of her long-time Colorado community. She has been an outspoken advocate since 2009 and gained national recognition in 2017 when she became the new face of the sanctuary movement—a direct challenge to federal immigration policies—and was named one of Time Magazine's "100 most influential people." ECF No. 37 at 6. On June 5, 2025, Robert F. Kennedy Human Rights will formally recognize Ms. Vizguerra-Ramirez with an award because she "exemplifies how the brutality of our immigration system unjustly separates families and denies many the ability to live with dignity."[1]

Yet, on March 17, 2025—after over a decade of making affirmative decisions not to pursue her removal—Immigration and Customs Enforcement (ICE) arrested Ms. Vizguerra-Ramirez on her work break. Undercover officers surrounded her in a targeted operation, placed her in shackles, photographed her, and told her in Spanish, "We finally got you!" ECF No. 37. As the ICE officers forced her into a truck, they were

---

[1] Robert F. Kennedy Human Rights, *Person: Jeanette Vizguerra, Immigration Reform & Human Rights Activist*, https://rfkhumanrights.org/person/jeanette-vizguerra/ (last visited May 20, 2025). She will also receive the 49th Annual Letelier-Moffit Human Rights Domestic Award celebrating champions of human rights. Institute for Policy Studies, *Letelier-Moffitt Human Rights Awards*, https://ips-dc.org/events/letelier-moffitt-human-rights-awards/ (last visited May 28, 2025).

laughing.[2] ICE has held Ms. Vizguerra-Ramirez for over two months without statutory authority, while publicly smearing her name and attempting to fast-track her deportation.

This Court should release Ms. Vizguerra-Ramirez pending the adjudication of her habeas petition under its authority provided by the All Writs Act, 28 U.S.C. § 1651, the habeas corpus statute, 28 U.S.C. § 2241, and its inherent equitable authority to issue a preliminary injunction. *See Pfaff v. Wells*, 648 F.2d 689, 693 (10th Cir. 1981) (recognizing federal courts' inherent authority to grant bail); *Mapp v. Reno*, 241 F.3d 221, 224–29 (2d Cir. 2001) (discussing district courts' authority to grant bail in the context of an immigration habeas petition). The authority to release a habeas petitioner *pendente lite* ensures that the writ remains an effective remedy under exceptional circumstances. *Pfaff*, 648 F.2d at 693. Such release is required here.

## SUMMARY OF THE ARGUMENT

Ms. Vizguerra-Ramirez's unlawful arrest—on the heels of the arrests of multiple other high-profile activists and set against the backdrop of the federal government's targeting of Colorado as a "sanctuary state"—comes in direct retaliation for Ms. Vizguerra-Ramirez's leadership in the national sanctuary movement and her very public criticism of the Trump administration's immigration policies. Ms. Vizguerra-Ramirez satisfies the legal standards for a grant of bond and should not sustain further harm in

---

[2] Gloria Pazmino, Andi Babineau, Holly Yan, and Caroll Alvarado, *Jeanette Vizguerra, an undocumented mom once named to Time's 100 Most Influential list, has been detained by ICE in Colorado*, CNN US (Mar. 19, 2025), https://edition.cnn.com/2025/03/18/us/jeanette-vizguerra-detained-ice-colorado/index.html.

detention during the pendency of her habeas proceedings. As a result, this Court should grant her immediate release.

Tenth Circuit precedent provides for release during pending habeas proceedings after "a showing of exceptional circumstances…for such relief, or a demonstration of a clear case on the merits of the habeas petition." *Pfaff*, 648 F.2d at 693. Ms. Vizguerra-Ramirez demonstrates both and this Court should grant bond.

First, Ms. Vizguerra-Ramirez makes a clear showing on the merits. The First Amendment protects Ms. Vizguerra-Ramirez's speech and advocacy. Yet her case exemplifies a pattern of government actions meant to punish political dissidents through viewpoint-discriminatory policy. Thus, each day that she remains confined further effectuates the government's unjustified retaliation against her and reinforces the broad chill already cast on other activists. Moreover, Ms. Vizguerra-Ramirez's arrest and detention violate due process and her statutory rights. Her claims for relief are substantial and the circumstances under which they arise are not merely exceptional but shocking to those who prize free speech.

In the alternative, this Court can grant temporary injunctive relief, including release on bond. Ms. Vizguerra-Ramirez will suffer irreparable harm if release is not granted, she presents a substantial likelihood of success on the merits, and the balance of equities and public interest weigh heavily in Ms. Vizguerra-Ramirez's favor. *Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016).

This Court should therefore grant Ms. Vizguerra-Ramirez's immediate release pending adjudication of her petition.

**FACTS**

**I.    Ms. Vizguerra-Ramirez is a nationally renowned immigration advocate and key leader of her community.**

Despite her own precarious legal status, Ms. Vizguerra-Ramirez has advocated for labor and immigrant rights for nearly two decades. Since first moving to the United States in 1997, Ms. Vizguerra-Ramirez worked as a janitor, SEIU union organizer, and advocate for immigration reform.[3] Among her myriad years and methods of advocacy, Ms. Vizguerra-Ramirez has run campaigns to repair the relationship between police and immigrants, led encampments outside the GEO detention facility, spoken at protests, organized demonstrations, created social media channels to educate the community, and testified before the state legislature. She founded three immigrant rights organizations: Metro Denver Sanctuary Coalition (MDSC), Abolish ICE, and Mujeres Juntas Ejercen Resistencia y Recursos ("Women Together Exercising Resistance and Resources"). *Id*. Through MDSC, she built a coalition of 31 sanctuary churches. *Id*.

Ms. Vizguerra-Ramirez rose to national prominence in 2017, during the first Trump administration, when she took sanctuary in a Denver church for nearly three months.[4] Throughout her time in sanctuary, Ms. Vizguerra-Ramirez became "a symbol

---

[3] Sammy Walker, *Jeanette Vizguerra: Learn Her Name and Story of Resistance*, Denver University College of Arts, Humanities, and Social Sciences (Oct. 9, 2019), https://liberalarts.du.edu/news-events/all-articles/jeanette-vizguerra-learn-her-name-and-story-resistance.
[4] Denverite Staff, *Who is Jeanette Vizguerra, the Denver immigrant activist detained by ICE?*, Denverite (Mar. 18, 2025), https://denverite.com/2025/03/18/who-is-jeanette-vizguerra-ice-detained/.

for the immigrant rights movement" and "one of the faces for the sanctuary movement."[5] Locally, hundreds of community members marched in her support.[6] Colorado leaders, such as then-Denver Mayor Michael Hancock, released statements in support of Ms. Vizguerra-Ramirez, and Jared Polis (then a U.S. Representative) suggested that a "rogue ICE official" wanted to punish her for speaking out about her case.[7] That year, *Time* magazine named Ms. Vizguerra-Ramirez one of the 100 most influential people in the world, with her biography written by A-list actress, America Ferrera.[8]

Despite the difficulty of her time in sanctuary, Ms. Vizguerra-Ramirez continued her public advocacy, saying on the day of her first stay of removal, "I want to be clear that my fight has not ended here and it has not ended today."[9] She also continued to speak openly about her disapproval of President Trump and his immigration actions, both as a "regular face at protests" and as a "vocal advocate in Facebook groups meant to spread the word about ICE's actions in the metro area." ECF No. 37. Despite her lack

---

[5] Sara Wilson, *Colorado sanctuary leaders receive 1-year deportation stays from Biden administration*, COLORADO NEWSLINE (Dec. 30, 2021), https://coloradonewsline.com/2021/12/30/colorado-sanctuary-leaders-deportation-stays-biden-administration/.

[6] *Hundreds march from Civic Center Park to First Unitarian Church to support Jeanette Vizguerra*, DENVERITE (Feb. 18, 2017), https://denverite.com/2017/02/18/hundreds-march-civic-center-park-first-unitarianchurch-support-jeanette-vizguerra/.

[7] Erica Meltzer, *Advocates say ICE agent pursued a personal vendetta against undocumented immigrant Jeanette Vizguerra*, DENVERITE (Mar. 3, 2017), https://denverite.com/2017/03/03/advocates-say-ice-agent-pursued-personal-vendetta-undocumented-immigrant-jeanette-vizguerra/.

[8] America Ferrera, *Jeanette Vizguerra*, TIME MAGAZINE (2017), https://time.com/collection/2017-time-100/4736271/jeanette-vizguerra/.

[9] COLORADO NEWSLINE, *supra* at 5.

of status, "Jeanette has been the loudest at the protest, the one with the megaphone pushing back against Trump's immigration policies."[10]

Both her activism and her personal resilience have inextricably tied Ms. Vizguerra-Ramirez to the fabric of her community. Since her arrest, the community has held vigils at the Aurora ICE processing Center, a rally at the Auraria campus, and a concert featuring local bands.[11] Denver City Council Member, Stacie Gilmore, described Ms. Vizguerra-Ramirez as a "key leader in our community."

## II.    ICE detained Ms. Vizguerra-Ramirez in retaliation for her critique of the government's immigration policies.

On Feb. 25, 2025, Ms. Vizguerra-Ramirez testified before the Colorado General Assembly on an immigration-related bill, offering directly contrary testimony to former Denver ICE Field Office Director (FOD), John Fabbricatore.[12] The day before her arrest she spoke out against President Trump's administration at a protest held in front of the Colorado State Capital Building. ECF No. 45-1 ¶ 23. Less than 24 hours later, ICE agents arrested her. ECF No. 26, 37. The officers handcuffed, shackled, and photographed her. One of the officers said in Spanish, "We finally got you!" She was booked into the Aurora ICE Processing Center later that day.

---

[10] LATINO USA, "'I'm a political prisoner': Exclusive with Jeanette Vizguerra from an ICE detention facility" (May 23, 2025), https://www.youtube.com/watch?v=siYQzK9z2lU.
[11] Giles Clasen, *Sanctuary for All: Denver Bands Rally for Jeanette Vizguerra's Freedom and Immigrant Rights*, DENVER VOICE (Mar. 26, 2025), https://www.denvervoice.org/archive/2025/3/26/sanctuary-for-all-denver-bands-rally-for-jeanette-vizguerras-freedom.
[12] Colo. Gen. Assemb, Comm. Summary, S. State, Veterans & Military Affairs Comm. (Feb. 25, 2025, 2:04 PM), https://leg.colorado.gov/content/ssa2025a-02252025-020412-pm-committee-summary.

Two days after her arrest, Denver ICE's X account posted the picture of Ms. Vizguerra-Ramirez's apprehension, with a piercing image of her handcuffed and chained around the waist.[13] ICE's main X account reposted the picture with the caption ". . .Despite her being featured in national media for years, we arrested her in public March 17. A high profile status does not exempt a person from immigration law."[14] The Department of Homeland Security's (DHS) Assistant Secretary for Public Affairs, Tricia McLaughlan, who oversees DHS' public outreach, crisis communications, and is principal advisor to Secretary Kristi Noem, posted to X: ". . .We will find, arrest, and deport illegal aliens regardless of if they were a featured 'Time Person of the Year.'" ECF No. 37 at 9. Former ICE FOD Fabbricatore publicly celebrated Ms. Vizguerra-Ramirez's arrest on X as well, posting, "She is a criminal, hates Trump, and is an open-borders, abolish-ICE advocate. Bye!!!!" *Id.* He posted screenshots from Ms. Vizguerra-Ramirez's Facebook page showing her opposition to ICE and Trump and posted that people should "stop with their tear-jerking for a criminal and anti/ICE [sic] activist." *Id.*

Ms. Vizguerra-Ramirez's arrest and detention present discrepancies and irregularities, discussed in her Amended Petition and Motion to Clarify. ECF No. 26, 31.

**III.    Ms. Vizguerra-Ramirez's detention has silenced her and others' speech.**

Despite Ms. Vizguerra-Ramirez's attempts to continue her activist work while detained, she has been prevented from exercising most of her forms of activism. She

---

[13] @ERODenver, X (Mar. 19, 2025),
https://x.com/ERODenver/status/1902379157008609329.
[14] @ICEgov, X (Mar. 21, 2025), https://x.com/ICEgov/status/1903090536308940894.

cannot access the internet to post on social media, livestream, or update her educational channels, which reach thousands of individuals. ECF No. 45-1 at ¶¶ 27-31; ECF No. 45-2 at ¶ 11. She cannot continue leading organizing efforts for Abolish ICE Denver or for various protest marches she had planned. ECF No. 45-1 at ¶ 27. Ms. Vizguerra-Ramirez also fears that speaking out in detention will lead her to be transferred, placed in solitary confinement, or deported. ECF No. 45-1 at ¶ 32.

Other community members have refrained from speech following Ms. Vizguerra-Ramirez's arrest. Activists have stopped posting to social media or became less public in their activism in response to her arrest because they are at risk of retaliation. ECF No. 45-3 at ¶¶ 25-26. Most immigrant leaders in the state no longer wish to speak in public settings and are hesitant to interview with media even if their identity remains anonymous. ECF No. 45-2 at ¶ 13.

**IV.    Ms. Vizguerra-Ramirez's arrest and detention are part of a Trump administration policy intended to silence and chill the speech of immigration advocates.**

Ms. Vizguerra-Ramirez's highly publicized arrest is part of an effort by the Trump administration to silence and chill speech by immigrant advocates and critics of the administration's policies.  Under the first Trump administration, the New York University Immigrant Rights Clinic and its partners documented more than 1,000 incidents of alleged First Amendment retaliation against immigrant rights activists.[15] These retaliatory incidents included ICE targeting prominent immigrant rights leaders for

---

[15] Nick Pinto, *Across the U.S., Trump Used ICE to Crack Down on Immigration Activists*, THE INTERCEPT (Nov. 1, 2020), https://theintercept.com/2020/11/01/ice-immigration-activists-map/.

deportation. "Immigrants who have spoken out against detention and deportation policies through protest, community organizing, the arts, the press, and the legal system have found themselves fined, put in proceedings, placed in solitary confinement, transferred to far-off detention facilities, or rapidly deported because of their First Amendment activity."[16]

The second Trump Administration has continued the pattern of targeting immigrant advocates and critics of the administration. Indeed, Ms. Vizguerra-Ramirez's arrest comes on the on the heels of the administration's arrests of immigrant activists, university leaders, and critics of the administration, such as Rasha Alawieh, Mahmoud Khalil, Rümeysa Öztürk, Mohsen Madawi, Badar Khan Suri, and Leqaa Kordia, among others.[17] In ordering Mr. Mahdawi's release, the district court considered the "extraordinary setting of this case and others like in it" in which individuals "are being

---

[16] Alina Das, *Protecting Immigrant Activists from U.S. Government Retaliation: Lessons from First Amendment Litigation* (Feb. 12, 2025), https://knightcolumbia.org/content/protecting-immigrant-activists-from-us-government-retaliation-lessons-from-first-amendment-litigation.

[17] Jennifer Brown, *ICE calls detained Denver activist Jeanette Vizguerra a "convicted criminal alien," says she faces deportation*, COLORADO SUN (Mar. 19, 2025), https://coloradosun.com/2025/03/19/jeanette-vizguerra-arrest; Adrian Florido, *Tufts student Rümeysa Öztürk freed from immigration detention*, NPR NEWS (May 9, 2025), https://www.npr.org/2025/05/09/nx-s1-5393055/tufts-student-rumeysa-ozturk-ordered-freed-from-immigration-detention; Sergio Martínez-Beltrán, *Federal judge orders release of Columbia University student Mohsen Mahdawi*, NPR NEWS (Apr. 30, 2025), https://www.npr.org/2025/04/30/nx-s1-5382306/mohsen-madawi-released-ice-columbia-university-activist-judge; Joseph Stepansky, *US judge orders release of Badar Khan Suri from immigration custody*, AL JAZEERA (May 14, 2025), https://www.aljazeera.com/news/2025/5/14/us-judge-orders-release-of-badar-khan-suri-from-immigration-custody; *US arrests second student over Columbia University pro-Palestinian activism*, AL JAZEERA (Mar. 14, 2025), https://www.aljazeera.com/news/2025/3/14/us-arrests-second-student-imposes-receivership-on-columbia-university.

arrested and threatened with deportation for stating their views on the political issues of the day." *Mahdawi v. Trump*, No. 2:25-CV-389, 2025 WL 1243135, at *12 (D. Vt. Apr. 30, 2025).

Nor has the targeting of advocates been limited to noncitizens themselves; U.S. citizen attorneys and judges have also been targeted. This includes an attorney representing a student protestor detained by federal immigration agents, and the arrest of immigration judges in Wisconsin and New Mexico that prompted the Milwaukee County executive to state, "[i]t is clear that the F.B.I. is politicizing this situation to make an example of her and others across the country who oppose their attack on the judicial system and our nation's immigration laws."[18]

Members of Congress from Colorado, Representatives Neguse, Crow, DeGette, and Petterson spoke out against Ms. Vizguerra-Ramirez "abrupt" detention as exemplifying "a troubling pattern of civil rights violations and disregard for due process."[19] Senators Bennet and Hickenlooper also commented on Ms. Vizguerra-

---

[18] Juana Summers, Tyler Bartlam, Patrick Jarenwattananon, *Attorney representing a student protester detained by federal immigration agents*, NPR NEWS (Apr. 9, 2025), https://www.npr.org/2025/04/09/nx-s1-5357455/attorney-detained-by-immigration-authorities; Sam Levine, *Homeland Security told US-born immigration lawyer to leave country*, THE GUARDIAN (Apr. 15, 2025), https://www.theguardian.com/us-news/2025/apr/15/self-deportation-email-citizen-immigration-lawyer; Devlin Barrett, *Wisconsin Judge Arrested, Accused of Shielding Immigrant from Federal Agents*, NY TIMES (Apr. 25, 2025), https://www.nytimes.com/2025/04/25/us/politics/fbi-arrest-judge.html.
[19] @repdianadegette, INSTAGRAM (Mar. 18, 2025), https://www.instagram.com/p/DHWqc9BRMV9/?igsh=MXZ2emRiN3FuZHBjMQ%3D%3D.

Ramirez's arrest, calling her a  "pillar in her community,"[20] and noting, "[t]here are serious concerns about ICE's actions to detain Jeanette Vizguerra."[21] Denver Mayor Mike Johnston publicly referred to Ms. Vizguerra-Ramirez's re-arrest as a "Putin-style persecution of political dissidents."[22]

Finally, Ms. Vizguerra-Ramirez's detention in Colorado is reflective of the attacks the Trump administration has pursued against Colorado more broadly. Throughout his campaign, now-President Trump repeatedly targeted Aurora specifically, including repeating "sensational falsehoods" of a "complete gang takeover" of the city.[23] President Trump promised to begin his presidency with "Operation Aurora," a mass deportation effort in Aurora, Colorado.[24] The administration attempted to make good on this promise on February 5, 2025, carrying out heavily-armed raids of multiple apartment buildings.[25]

---

[20] @SenatorBennet, X (Mar. 18, 2025),
https://x.com/SenatorBennet/status/1902000152824483978.
[21] @SenatorHick, X (Mar. 18, 2025),
https://x.com/SenatorHick/status/1902014403869856081.
[22] @denversmayor, X (Mar. 18, 2025),
https://x.com/denversmayor/status/1902042530490773525.
[23] Chase Woodruff, *After months of deportation rhetoric, Trump's first hours in office put Aurora on edge*, COLORADO NEWSLINE (Jan. 21, 2025),
https://coloradonewsline.com/2025/01/21/deportation-rhetoric-trump-aurora-on-edge/;
Chase Woodruff, *How false claims of a 'complete gang takeover' drew Trump to Aurora*, COLORADO NEWSLINE (Oct. 11, 2024), https://coloradonewsline.com/2024/10/11/false-claims-gang-takeover-trump-aurora/.
[24] Sam Brasch, Allison Sherry, & Stephanie Rivera, *How immigrants and their advocates are bracing for 'Operation Aurora'*, DENVERITE (Nov. 6, 2024),
https://denverite.com/2024/11/06/trump-operation-aurora-immigrants-advocates-react/.
[25] Kevin Beaty, *What we saw from inside ICE's raid at Aurora's Edge apartments*, DENVERITE (Feb. 6, 2025), https://denverite.com/2025/02/06/aurora-edge-at-lowry-ice-raid/%20=/.

The administration has further targeted Colorado immigrants by attacking Denver's alleged status as a sanctuary city. On March 5, 2025, Denver Mayor Mike Johnston was called to a lengthy Congressional hearing in which House Republicans repeated false claims that immigrants had caused rising crime within Denver and Aurora due to their progressive immigration policies.[26] On April 28, 2025, the White House issued the Executive Order *Protecting American Communities from Criminal Aliens*, directly targeting designated "sanctuary" jurisdictions, such as Denver, by threatening to suspend or terminate their funding. Finally, the Department of Justice sued the State of Colorado and the City of Denver on May 2, 2025, alleging that the city and state had passed "sanctuary laws" in violation of the U.S. Constitution.[27] In this context, Ms. Vizguerra-Ramirez's extraordinary arrest is no surprise because she was targeted for her protected expression denouncing the Trump administration's immigration policy.

## ARGUMENT

### I.   THIS COURT SHOULD ORDER MS. VIZGUERRA-RAMIREZ'S IMMEDIATE RELEASE PENDING THE ADJUDICATION OF HER HABEAS PETITION

#### a.   This Court has authority to grant Ms. Vizguerra-Ramirez immediate release pending the adjudication of this habeas petition.

Ms. Vizguerra-Ramirez's meets the standard for release pending adjudication of her habeas petition and for a preliminary injunction.

---

[26] Chase Woodruff, *Denver mayor defends immigration policies in GOP 'sanctuary cities' hearing*, COLORADO NEWSLINE (Mar. 5, 2025), https://coloradonewsline.com/2025/03/05/denver-mayor-immigration-sanctuary-cities/.
[27] *USA v. State of Colorado et al*, 1:25-cv-01391-KAS, ECF No. 1 (D. Colo. May 2, 2025); Andrew Kenney, *Trump's DOJ sues to block Colorado and Denver's 'sanctuary laws'*, CPR NEWS (May 2, 2025), https://www.cpr.org/2025/05/02/trump-doj-sues-denver-colorado-immigration-laws/.

The Tenth Circuit has explicitly recognized the availability of a bond in the context of a pending habeas petition. *Pfaff v. Wells*, 648 F.2d 689, 693 (10th Cir. 1981); *United States v. Zander*, 669 F. App'x 955, 956 (10th Cir. 2016); *see also Lucas v. Hadden*, 790 F.2d 365, 367 (3d Cir. 1986); *Baker v. Sard*, 420 F.2d 1342, 1343 (D.C. Cir. 1969) ("Release is available in a habeas corpus action, which is a civil collateral attack"). In *Pfaff*, the circuit court examined a habeas corpus petition brought by petitioners with pending warrants for their arrest pursuant to criminal charges who challenged their extradition to another state. The court found that "[d]espite the lack of specific statutory authority, it is within the inherent power of a federal district court to enlarge a state prisoner on bond, pending hearing and decision on a petition for habeas relief." *Id.* at 693 (citing *In re Wainright*, 518 F.2d 173, 174 (5th Cir. 1975)). In so doing, the Tenth Circuit set forth the test for such considerations, requiring "a showing of exceptional circumstances . . . for such relief, or a demonstration of a clear case on the merits of the habeas petition." *Id.* A showing of one, or the other, is sufficient to prevail on a motion for bond pending the outcome of the underlying habeas petition. *Id.*; *United States v. Wellington*, No. 25-2001, 2025 WL 1178460, at *1 (10th Cir. Apr. 23, 2025) (recognizing the disjunctive test set forth in *Pfaff*); *but see King v. Ciolli*, No. 1:23-CV-00519-CNS, 2023 WL 11196896, at *1 (D. Colo. Sept. 5, 2023) (discussing "the apparent tension between federal appellate courts" as to whether the test is disjunctive or conjunctive and finding that petitioner failed to meet either of the required elements to establish eligibility for release during the pendency of habeas proceedings).

The Tenth Circuit has applied the *Pfaff v. Wells* standard outside the 28 U.S.C. § 2254 context to determine whether someone imprisoned "seeking federal habeas relief" can obtain "release pending a determination on the merits." *United States v. Palermo*, 191 F. App'x 812, 813 (10th Cir. 2006). At least one district court has followed suit in the context of a habeas for someone challenging the legality of detention ordered by an Indian tribe pursuant to 25 U.S.C. § 1303. *Coriz v. Rodriguez*, 347 F. Supp. 3d 707, 715 (D.N.M. 2018). Therefore, it is the most appropriate standard for this Court to adopt when assessing Ms. Vizguerra-Ramirez's request for bond.

Although the Tenth Circuit has yet to address the precise issue of release during pending habeas proceedings in the immigration context, the Second Circuit has endorsed district courts' authority under such circumstances. *Mapp*, 241 F.3d at 229 (finding that the district court acted within its power when it considered whether petitioner, who was held in civil immigration detention, was entitled to release on bail). Moreover, "[t]he Second Circuit has specifically recognized potential retaliation for protected political speech as a cognizable ground for habeas relief for a noncitizen in ICE custody, noting that 'to allow this retaliatory conduct to proceed would broadly chill protected speech, among not only activists subject to final orders of deportation but also those citizens and other residents who would fear retaliation against others.'" *Ozturk v. Trump*, No. 25-cv-374, ⎯⎯ F.Supp.3d ⎯⎯, ⎯⎯, 2025 WL 1145250, at *19 (D. Vt. Apr. 18, 2025) (quoting *Ragbir v. Homan*, 923 F.3d 53, 71 (2d Cir. 2019)) (finding plausible allegations of constitutional violations and ordering a bail hearing). Various district courts agree. *Id.*; *see*, *e.g.*, *Suri v. Trump*, No. 1:25-CV-480 (PTG/WBP), 2025 WL 1392143, at

*1 (E.D. Va. May 14, 2025) (ordering immediate release on personal recognizance during the pendency of petitioner's habeas proceedings); *Mahdawi*, 2025 WL 1243135, at *14 (granting immediate release on personal recognizance pending the outcome of the habeas proceeding); *Avendano Hernandez v. Decker*, 450 F. Supp. 3d 443 (S.D.N.Y. 2020) (ordering immediate release of petitioner under *Mapp*); *Coronel v. Decker*, 449 F. Supp. 3d 274, 290 (S.D.N.Y. 2020) (same).

### b. Ms. Vizguerra-Ramirez satisfies the requirements for release while her habeas is pending.

Pursuant to *Pfaff*, Ms. Vizguerra-Ramirez must raise a clear claim on the merits for habeas relief or show exceptional circumstances. Satisfying either element indicates she merits release. Here, she satisfies both.

### i. Ms. Vizguerra-Ramirez demonstrates a clear likelihood of success on the merits

Ms. Vizguerra-Ramirez raises substantial claims. Through her amended habeas corpus petition, she seeks to protect her rights under the First Amendment, the Fifth Amendment, and 8 U.S.C. § 1231(a)(5) and its implementing regulations. ECF No. 26 at 23-26. Ms. Vizguerra-Ramirez satisfies this requirement.

1. First Amendment. Ms. Vizguerra-Ramirez has a substantial claim that she was targeted in retaliation for being a prominent political figure and outspoken critic of federal immigration policies, and that her arrest stifles her (and others') community organizing.

"[S]peech on public issues occupies the 'highest rung of the hierarchy of First Amendment values,' and is entitled to special protection." *Connick v. Myers*, 461 U.S.

138, 145 (1983). In particular, "speech critical of the exercise of the State's power lies at the very center of the First Amendment." *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1034 (1991). "When the government targets not subject matter, but particular views taken by speakers on a subject, the violation of the First Amendment is all the more blatant. Because '[i]t is a fundamental principle of the First Amendment that the government may not punish or suppress speech based on disapproval of the ideas or perspectives the speech conveys,' viewpoint discrimination is thus an egregious form of content discrimination." *Matal v. Tam*, 582 U.S. 218, 248 (2017) (Kennedy, J., concurring in part). This extends to noncitizens' right to be free from retaliation for the exercise of First Amendment rights. *See Ragbir*, 923 F.3d at 71 (holding that a noncitizen could not be deported in retaliation for his protected speech even where he was deportable on other grounds).

["T]here is practically universal agreement that a major purpose of' the First Amendment 'was to protect the free discussion of governmental affairs.'" *Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 755 (2011) (quoting *Buckley v. Valeo*, 424 U.S. 1, 14 (1976) (per curiam)). "Discrimination against speech because of its message is presumed to be unconstitutional." *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 828 (1995). Thus, "[o]fficial reprisal for protected speech 'offends the Constitution [because] it threatens to inhibit exercise of the protected right.'" *Hartman v. Moore*, 547 U.S. 250, 256 (2006) (alteration in original) (quoting *Crawford–El v. Britton*, 523 U.S. 574, 588 n. 10 (1998)).

To succeed on her First Amendment retaliation claim, Ms. Vizguerra-Ramirez must show: "(1) that [she] was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Irizarry v. Yehia*, 38 F.4th 1282, 1288 (10th Cir. 2022) (quoting *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000)). Ms. Vizguerra-Ramirez satisfies this standard.

Ms. Vizguerra-Ramirez's claim—that she is being punished because of her political speech and the views she expresses—therefore implicate the heart of the First Amendment. Few governmental actions could be more chilling on speech than a federal agency choosing to jail an individual based on their public criticism of government policies. *See City of Houston v. Hill*, 482 U.S. 451, 462-63 (1987) ("The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state.").

First, it is beyond contest that "[f]reedom of speech and press is accorded [noncitizens] residing in this country." *Bridges v. Wixon*, 326 U.S. 135, 148 (1945) (citing *Bridges v. California*, 314 U.S. 252 (1941)). Indeed, the speech of a noncitizen on an issue central to "current political debate among American citizens and other residents" lies "'at the heart of First Amendment protection.'" *Ragbir*, 923 F.3d at 70 (quoting *Snyder v. Phelps*, 562 U.S. 443, 451-52 (2011)). Courts in multiple circuits have held

that the First Amendment protects noncitizens who are detained and threatened with deportation because of their protected speech. *See, e.g.*, *Bello-Reyes v. Gaynor*, 985 F.3d 696, 698 (9th Cir. 2021); *Ragbir*, 923 F.3d at 53. This protection thus readily applies to Ms. Vizguerra-Ramirez's immigration advocacy, such as her interviews with newspapers, publications on her own social media, speeches at protests, and testimony before legislators and policy makers.

Second, the government's actions injured, and continue to injure, Ms. Vizguerra-Ramirez. "[O]ur standard for evaluating th[e] chilling effect on speech is objective, rather than subjective." *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007) (quotations omitted).  "Physical and verbal intimidation can chill speech." *Irizarry*, 38 F.4th at 1292 (quoting *Van Deelen v. Johnson*, 497 F.3d 1151, 1157-58 (10th Cir. 2007). "[O]ur standard for evaluating th[e] chilling effect on speech is objective, rather than subjective." *Shero*, 510 F.3d at 1203 (quotations omitted).

Here, Ms. Vizguerra-Ramirez suffered a traumatic public arrest, including verbal humiliation, shackling, and nationwide publication of her arrest photo. This injury alone would deter a person of ordinary firmness from speaking out against ICE's activities; indeed, Ms. Vizguerra-Ramirez fears losing contact with her family while detained due to using her voice. ECF No. 45-1 ¶ 32. Moreover, Ms. Vizguerra-Ramirez's over two-month detention has inflicted further harm by separating her from children and grandchildren. She and each member of her family suffered emotionally and mentally, and continue to suffer, as a result. ECF No. 45-3 ¶¶ 18-24; ECF No. 45-1 ¶ 25. Most fundamentally, she is harmed each day that she is stripped of her liberty.

Third, there is no question that Ms. Vizguerra-Ramirez's immigration advocacy triggered the government's decision to arrest and detain her. The government attempts to justify her arrest through a putative reinstatement order from 2013; however, the government had over a decade in which to arrest and attempt to remove her under this order.  Instead, the government either failed to pursue enforcement or affirmatively granted stays of removal. Only now, amidst a nationwide crackdown against advocates and with Colorado – Aurora and Denver specifically – in the administration's crosshairs, did the government engineer Ms. Vizguerra-Ramirez's arrest and removal. "To allow this retaliatory conduct to proceed would broadly chill protected speech" of other noncitizens engaged in immigrant advocacy, extending the unconstitutional impact of Ms. Vizguerra-Ramirez's arrest and detention. *Ragbir*, 923 F.3d at 71.

2. <u>Due Process</u>. Ms. Vizguerra-Ramirez's Fifth Amendment due process claims are similarly substantial. The Constitution establishes due process rights for "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Black v. Decker*, 103 F.4th 133, 143 (2d Cir. 2024) (quoting *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)). "Freedom from imprisonment— from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690. Immigration detention is civil, not criminal, and thus only justified when necessary to ensure a noncitizen's appearance during removal proceedings and to prevent danger to the community. *See Black*, 103 F.4th at 143 (citing *Zadvydas*, 533 U.S. at 690).

21

The government's detention of Ms. Vizguerra-Ramirez is wholly unjustified, as the government has not demonstrated that she—a local and national advocate, "pillar" of her community, and "rock" of her children and grandchildren—is either a flight risk or a danger. *Cf. Zadvydas*, 533 U.S. at 690. Detention as punishment for her speech serves no legitimate purpose, "regardless of any alleged First Amendment violation. Immigration detention cannot be motivated by a punitive purpose. Nor can it be motivated by the desire to deter others from speaking." *Mahdawi*, 2025 WL 1243135, at *11.

Ms. Vizguerra-Ramirez's detention bears no "reasonable relation" to any nonpunitive government purpose. *Id*. There is no credible argument that Ms. Vizguerra-Ramirez cannot be safely released back to her family and there is every indication that Ms. Vizguerra-Ramirez's "detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons," which violates the due process clause. *Demore v. Kim*, 538 U.S. 510, 532-33 (2003) (Kennedy, J., concurring); *see also German Santos v. Warden Pike Cnty. Corr. Facility,* 96 5 F.3d 203, 211 (3d Cir. 2020) ("[I]f an alien's civil detention . . . looks penal, that tilts the scales toward finding the detention unreasonable.").

3. Reinstatement under 8 U.S.C. § 1231(a)(5). Finally, Ms. Vizguerra-Ramirez's claims under 8 U.S.C. § 1231(a)(5) and its implementing regulations are also substantial. To the extent that the government asserts detention authority under this regulation, such an argument is unfounded. In serving this document, the government failed to abide by due process protections, and the document itself does not meet the

regulatory definition of a reinstatement order. ECF No. 26. The government's reliance on the putative reinstatement order—which raises a substantial claim—serves only as a pretext for Ms. Vizguerra-Ramirez's ongoing detention.

Courts that consider motions for release in this context have routinely found challenges of this nature—specifically the constitutional concerns around adequate process—to be "substantial claims" for purposes of release. Ms. Vizguerra-Ramirez's claims thus more than meet this prong of the *Pfaff* standard.

### ii.  Ms. Vizguerra-Ramirez's case presents exceptional circumstances.

Ms. Vizguerra-Ramirez's strong community ties, her status as a nationally prominent immigration advocate, the retaliatory circumstances of her arrest and detention, and the harm that she, her family, and her community face due to her detention all present exceptional circumstances justifying her release during the pendency of this litigation.

When applying the *Pfaff* standard, courts have looked at factors including deteriorating health in detention and unusual delay. *Barnett v. Hargett*, 166 F.3d 1220 (10th Cir. 1999) (citing *Salerno v. United States,* 878 F.2d 317 (9th Cir.1989)). In *Mapp*, the Second Circuit recognized that bail should be granted "when extraordinary or exceptional circumstances exist which make the grant of bail necessary to make the habeas remedy effective." *Mapp, 241 F.3d at 226.*

District courts grappling with this factor in the context of immigration habeas petitions have considered flight risk and dangerousness, particularly in light of "the

extraordinary setting of this case and others like it." *Mahdawi*, 2025 WL 1243135, at *12. In this context, the scope of the constitutional deprivation and the nature of the government's behavior surrounding a petitioner's detention can support a finding of exceptional circumstances. *See, e.g., D'Alessandro v. Mukasey*, No. 08-cv-914, 2009 WL 799957, at *3 (W.D.N.Y. Mar. 25, 2009) (listing "grossly defective" immigration custody reviews and petitioner's unconstitutionally prolonged detention as two circumstances that qualified the case as extraordinary and exceptional). In *Ozturk*, another recent case involving a political dissident, the district court examined three factors before granting release: (1) "the unusual sequence of events" related to Ms. Öztürk's arrest and detention; (2) the facts presenting "extraordinary circumstances," including DHS's revocation of Ms. Ozturk's lawful immigration status in response to her co-authoring an op-ed in her campus newspaper; and (3) the health risks raised by the conditions of confinement. 2025 WL 1420540, at *8.

In this case, there is no evidence that Ms. Vizguerra-Ramirez poses a flight risk or danger to the community. Despite the government's public smear campaign referring to her as a "convicted criminal alien," Ms. Vizguerra-Ramirez has two nonviolent, minor convictions directly tied to her immigration status, which are 12 and 16 years old.[28] Ms. Vizguerra-Ramirez demonstrates deep ties to her community. She has every reason to remain in Colorado, the home of her four children and her three grandchildren, the base

---

[28] Jennifer Brown, *ICE calls detained Denver activist Jeannette Vizguerra a "convicted criminal alien," says she faces deportation,* COLORADO SUN (Mar. 19, 2025), https://coloradosun.com/2025/03/19/jeanette-vizguerra-arrest/.

for her immigration advocacy as well as the advocacy organizations she founded, her place of employment, and her home for nearly three decades. ECF No. 45-1; 45-2; 45-3.

The facts that Ms. Vizguerra-Ramirez presents—including her dramatized arrest and public detention tied to ICE's viewpoint discriminatory policy—are novel, extraordinary, and constitute exceptional circumstances. ICE officers targeted Ms. Vizguerra-Ramirez as part of a multi-year campaign to retaliate against her for her national advocacy. This clear and broad violation of the First Amendment both unlawfully punishes Ms. Vizguerra-Ramirez and curtails the speech of countless other activists.

The way the government effectuated Ms. Vizguerra-Ramirez's arrest and detention further underscores the existence of exceptional circumstances justifying her release. Both local and national ICE X accounts triumphantly posted her arrest photograph—together, these posts garnered over 300,000 views. A former ICE Field Director and a current member of DHS's administration both also publicly posted, celebrating her arrest and threatening the arrest and detention of others in her position. While in detention, Ms. Vizguerra-Ramirez's meaningful access to counsel has routinely been frustrated. ECF No. 45-1 ¶ 30.

Critically, ICE arrested and threatened Ms. Vizguerra-Ramirez with deportation as part of a pattern of government arrests. In this way, the exceptional circumstances Ms. Vizguerra-Ramirez faces echo those of Mohsan Mahdawi and Rümeysa Öztürk—both of whom outspoken activists jailed in retaliation for their activism, and both of whom were recently released on bond because their continued detention could potentially chill "the

speech of millions and millions of individuals in this country who are not citizens."[29] In releasing Mr. Mahdawi, the Court likened the pattern of arrests to the "moral panic" of the Red Scare: "The wheel of history has come around again, but as before, these times of excess will pass." *Mahdawi*, 2025 WL 1243135, at *13.

Both Ms. Vizguerra-Ramirez and the community from which she was torn are being irreparably damaged by her daily absence. ECF No. 45-3 ¶ 25. In her words, "My detention has left the community is without a valued guide. . ." ECF No. 45-1 ¶ 29. The movement she leads has "suffered" and other immigrant leaders fear to speak out publicly in the wake of her arrest. ECF No. 45-2 ¶¶ 13-15; ECF No. 45-3 ¶ 25.

Ms. Vizguerra-Ramirez and her children particularly suffer from her weeks of detention, which has put unbearable emotional and financial pressure on the family because "[s]he's the one who is always there [for her children]. . .And right now, she's gone." ECF No. 45-3 ¶¶ 1, 17-24; ECF No. 45-1 ¶ 25. Her absence has strained her children's mental health near to the breaking point and put such enormous pressure on them that they "feel stress from every angle in our lives." ECF No. 45-3 ¶ 18-24.

Ms. Vizguerra-Ramirez, meanwhile, suffers from exhaustion, anxiety, and insomnia due to her worry for her children, particularly her youngest child who is still in high school. ECF No. 45-1 ¶¶ 25-26. Physically, the strain and poor conditions of

---

[29] Adrian Florido, *Tufts student Rümeysa Öztürk ordered freed from immigration detention*, NPR NEWS (May 9, 2025), https://www.npr.org/2025/05/09/nx-s1-5393055/tufts-student-rumeysa-ozturk-ordered-freed-from-immigration-detention; Sergio Martinez Beltran, *Federal judge orders release of Columbia University student Mohsen Mahdawi*, NPR NEWS (April 30, 2025), https://www.npr.org/2025/04/30/nx-s1-5382306/mohsen-madawi-released-ice-columbia-university-activist-judge.

detention have exacerbated her ongoing gastro-intestinal issues and given her ongoing migraines and lower back pain. ECF No. 45-2 ¶ 18; ECF No. 45-1 ¶ 26. Emotionally, she experiences symptoms of ongoing trauma and re-traumatization due to her deep grief about her family separation and her inability to fight for her community. ECF No. 45-2 ¶¶ 17-19.

Even if Ms. Vizguerra-Ramirez is ultimately released at the conclusion of what could be protracted litigation, she will have been prevented from speaking freely all the while and the message to others will be received loud and clear: speak out at your own peril. *Cf. Arias v. Decker*, 459 F. Supp. 3d 561, 580 (S.D.N.Y. 2020) (granting bail to avoid "precisely the harm their petition seeks to avert"). Release is also necessary to avoid the punitive consequence of Ms. Vizguerra-Ramirez's continued detention: the enormous burden on her children, her separation from her community, her limited access to counsel, and her stifled ability to participate in the community advocacy efforts that provide her purpose and resilience. ECF No. 45-1 ¶¶ 27-36.

In sum, Ms. Vizguerra-Ramirez merits release under the *Pfaff* standard.

## II.   IN THE ALTERNATIVE, THIS COURT SHOULD GRANT A PRELIMINARY INJUNCTION ORDERING MS. VIZGUERRA-RAMIREZ'S RELEASE FROM DETENTION.

In the alternative to release on bond, this Court should grant a preliminary injunction ordering Ms. Vizguerra-Ramirez's release from detention pending the adjudication of this litigation. To obtain preliminary relief, a movant must demonstrate "(i) they will suffer irreparable harm unless the injunction is issued; (ii) they have a substantial likelihood of prevailing on the merits; (iii) the threatened injury outweighs any harm that

the preliminary injunction may cause the opposing party; and (iv) the injunction will not adversely affect the public interest. *Diné Citizens Against Ruining Our Env't*, 839 F.3d at 1281. Ms. Vizguerra-Ramirez makes such a showing.

### a. Ms. Vizguerra-Ramirez will suffer irreparable harm if not released.

Ms. Vizguerra-Ramirez suffers great, immediate and irreparable harm each day she remains detained. The harm suffered is imminent and ongoing; it is "certain, great, and not theoretical." *Heidman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003). "Irreparable harm, as the name suggests, is harm that cannot be undone, such as by an award of compensatory damages or otherwise." *Salt Lake Tribune Publ'g Co., LLC v. AT&T Corp.,* 320 F.3d 1081, 1105 (10th Cir. 2003).

The violation of an individual's constitutional rights is an irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 373–74 (1976). Indeed, "[m]ost courts consider the infringement of a constitutional right enough and require no further showing of irreparable injury." *Free the Nipple—Fort Collins v. City of Fort Collins*, 916 F.3d 792, 805–06 (10th Cir. 2019) (citing *Awad v. Ziriax*, 670 F.3d 1111, 1131 (10th Cir. 2012)). Ms. Vizguerra-Ramirez's First Amendment and Fifth Amendment rights have been violated by her incarceration, as discussed *supra* at *II.a*.

Irreparable physical and mental harm is inevitable for those incarcerated. As the Supreme Court has explained, "[t]he time spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness." *Barker v. Wingo*, 407 U.S. 514, 532–33 (1972); *see also Velasco*

*Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) (describing immigration detention); *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017) (same).

In addition to suffering all the above listed harms, Ms. Vizguerra-Ramirez is emotionally and psychologically harmed due to the separation from her four children (one lawful permanent resident and three U.S. citizens) and three U.S. citizen grandchildren. She worries constantly about the impact of her detention on her family. ECF No. 45-1 ¶¶ 25. And rightfully so, Ms. Vizguerra-Ramirez's children report deteriorating mental health symptoms, including a sense of overwhelm, uncertainty, lack of motivation, and constant worry, and self-isolation and feeling like life cannot move forward without their mom by their side. ECF No. 45-3 at ¶ 18-24. Harm to Ms. Vizguerra-Ramirez's children based on her detention is concurrently damaging to her.

Ms. Vizguerra-Ramirez also suffers from the imposition on her participation in her immigration advocacy, an "integral part of who she is as a person." ECF No. 45-3 ¶ 2. While detained, she cannot access her social media platforms or her community education channels, she can only speak to the press once per month, and she cannot continue her organizing efforts. Detention effectively prevents her from pursuing her decades-long work of advocating on behalf of her community and sets back the years of work she has poured into empowering other advocates like herself.

### b. Ms. Vizguerra-Ramirez has a substantial likelihood of success on the merits of her underlying petition.

When assessing this prong of the test, the appropriate standard is a "reasonable likelihood" of success and nothing more." *Diné Citizens Against Ruining Our*

*Environment*, 839 F.3d at 1282; *e.g., Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 229 (3d Cir. 2011) (en banc) ("[L]ikelihood of success on the merits" means that a plaintiff has "a reasonable chance, or probability, of winning . . . A likelihood does not mean more likely than not.").

Ms. Vizguerra-Ramirez is likely to prevail in her First Amendment claim, *supra* at *II.a.1*, because her arrest and detention are punitive tactics, retaliating against her for her immigrant rights advocacy. Ms. Vizguerra-Ramirez is similarly likely to prevail in her Fifth Amendment claim that her arrest and detention violate due process, *supra* at *II.a.2*. Finally, Ms. Vizguerra-Ramirez is likely to prevail on the merits of her claim that her arrest violates § 1231(a)(5) and its implementing regulations, *supra* at *II.a.3*.

### c. The public interest and the balance of equities weigh heavily in favor of a preliminary injunction.

The final considerations in a request for a preliminary injunction—the balance of the equities and public interest—weigh strongly in Ms. Vizguerra-Ramirez's favor. Where, as here, the government is a party, these two factors merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009); *Bd. of Cty. Commissioners of Bouldery. v. Suncor Energy (U.S.A.) Inc.*, No. 18-CV-01672 (WJM-SKC), 2019 WL 4926764, *7 (D. Colo. Oct. 7, 2019).

When assessing whether a preliminary injunction is warranted, the Court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 24 (2008). "When a constitutional right hangs in the balance," it "usually trumps

any harm to the defendant." *Free the Nipple—Fort Collins*, 916 F.3d at 806. The government "cannot suffer harm from an injunction that merely ends an unlawful practice." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013). In granting a preliminary injunction related to unlawful immigration detention, the District of Colorado has noted that requiring ICE's "compliance with the law serves the public interest." *Andujo-Andujo v. Longshore*, 2014 WL 2781163 at *6 (D. Colo. June 19, 2014).

Here, the balance of harms and public interest weigh heavily in Ms. Vizguerra-Ramirez's favor. As a preliminary matter, Ms. Vizguerra-Ramirez's detention bears no reasonable relation to any permissible, non-punitive purpose, as she is neither a flight risk nor dangerous. *See Zadvydas*, 533 U.S. at 690.

Moreover, Ms. Vizguerra-Ramirez raises serious constitutional and statutory claims that cannot be fully and fairly adjudicated if she is forced to suffer retaliatory detention throughout the pendency of this litigation. Ms. Vizguerra-Ramirez requests the most basic due process protections against arrest in retaliation for protected speech. Absent such protections, she remains detained in conditions akin to criminal confinement, where she is separated from her family, her community, and her life's work of immigration and community advocacy. To release Ms. Vizguerra-Ramirez at the end of what will likely prove to be long and protracted litigation will be a Pyrrhic victory, as many of the harms this litigation seeks to prevent will have already happened.

Given there is no countervailing government or public interest in Ms. Vizguerra-Ramirez's detention, both the balance of harms and the public interest weigh in her favor. Thus, this Court should order a preliminary injunction granting release.

## **CONCLUSION**

For the foregoing reasons, the Court should grant this Motion and order Respondents to immediately release Ms. Vizguerra-Ramirez pending resolution of this case on the merits and prohibit Respondents from further confining her during the proceedings' pendency unless she receives constitutionally adequate procedural protections, including notice and a pre-deprivation judicial hearing.

Respectfully submitted on May 29, 2025,

/s/ Laura P. Lunn
Laura P. Lunn
Shira N. Hereld
ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK
7301 Federal Boulevard, Suite 300
Westminster, Colorado 80030
Tel: 720-370-9100
llunn@rmian.org
shereld@rmian.org

Laura L. Lichter
Mark R. Barr
Lichter Immigration
1601 Vine Street
Denver, CO 80206
(303) 554-8400
LLichter@LichterImmigration.com
MBarr@LichterImmigration.com

Elizabeth Jordan
Lilli Warren*
Student Law Office
University of Denver Sturm College of Law
2255 East Evans Avenue Suite 335

Denver, CO 80210
303-871-6368
Elizabeth.jordan@du.edu
lilli.warren@du.edu
*Student Attorney Appearance on file

Brian Scott Green
Law Office of Brian Green
9609 S University Boulevard
#630084
Highlands Ranch, CO 80130
(443) 799-4225
BrianGreen@greenUSimmigration.com

*COUNSEL FOR PETITIONER-PLAINTIFF*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 29, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system pursuant to Fed. R. Civ. P. 5., which will send notification of such filing to the following recipients by email:

Benjamin.Gibson@usdoj.gov
Kevin.Traskos@usdoj.gov
Timothy.Jafek@usdoj.gov

/s/ Shira N. Hereld
Shira N. Hereld
ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK