# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-00881-NYW-KAS

JEANETTE VIZGUERRA-RAMIREZ

Petitioner-Plaintiff,

v.

DAWN CEJA, Warden, Aurora ICE Processing Center,
ROBERT GUADIAN, Field Office Director, U.S. Immigration and Customs Enforcement,
KRISTI NOEM, Secretary, U.S. Department of Homeland Security,
PAMELA BONDI, U.S. Attorney General, U.S. Department of Justice,

    In their official capacities,

    Respondents-Defendants.

---

**REPLY TO RESPONSE, ECF No. 53, TO MOTION FOR RELEASE ON BOND OR, IN THE ALTERNATIVE, A PRELIMINARY INJUNCTION ORDERING RELEASE PENDING A FINAL JUDGMENT, ECF No. 45**

---

Petitioner-Plaintiff ("Petitioner"), Jeanette Vizguerra-Ramirez ("Ms. Vizguerra-Ramirez"), files this Reply to the Respondents-Defendants' ("Respondents") Response to the Motion for Bond, or In the Alternative, a Preliminary Injunction Ordering Release Pending a Final Judgment, ECF No. 45, urging the Court to grant Ms. Vizguerra-Ramirez's immediate release.

The parties agree that Ms. Vizguerra-Ramirez's habeas petition is fully briefed, and this Court can rule on it. ECF No. 53 at 1. Ms. Vizguerra-Ramirez states sufficient grounds to prevail and merits release on that basis. ECF Nos. 1, 26, 39. However, should the Court require a more complete record on the facts fueling Ms. Vizguerra-

1

Ramirez's First Amendment claim, it should grant her Motion for Expedited Discovery, ECF No. 37. Alternatively, if the Court would benefit from additional briefing regardings this Court's jurisdiction, bond is similarly warranted. *See* ECF No. 56. Under either circumstance, Ms. Vizguerra-Ramirez respectfully requests that this Court order her release pending any further consideration of her underlying habeas petition.

A showing of either a clear case on the merits *or* exceptional circumstances is sufficient for her to prevail on her Motion for Bond, ECF No. 45. Ms. Vizguerra-Ramirez satisfies both and merits immediate release. Concurrently, she also satisfies the injunctive factors, providing an alternative basis for the relief sought. Finally, the Court may grant release based on its authority under the All Writs Act, 28 U.S.C. § 1651.

**I. Respondents undermine this Court's authority to grant the requested relief.**

Respondents seek to divest this Court of power it squarely wields, yet their position on this question is largely incoherent. Nevertheless, all paths lead to the same result: this Court has inherent equitable authority to grant bond.

First, Respondents' attempt to dilute binding Tenth Circuit precedent fails. ECF No. 53 at 6-7. In *Pfaff v. Wells*, which controls here, the circuit court recognized the "inherent power of a federal district court" to release a petitioner on bond "pending hearing and decision on a petition for habeas relief." 648 F.2d 689, 693 (10th Cir. 1981). The fact that the court's holding pertained to a person held in state custody rather than federal custody has no bearing on the underlying authority of this Court. *Stow v. Perrill*, 30 F.3d 142 (10th Cir. 1994) (applying *Pfaff* where habeas petition was brought under 28 U.S.C. § 2241); *Roberts v. Diggins*, No. 22-CV-00053-PAB, 2022 WL 180634, at *5 (D. Colo. Jan. 20, 2022) (same); *see also United States v. Palermo*, 191 F. App'x 812,

813 (10th Cir. 2006) (extending *Pfaff* to a habeas brought under 28 U.S.C. § 2255). In contrast, Respondents cite no authority declining to extend *Pfaff*'s holding beyond 28 U.S.C. § 2254. ECF No. 53 at 7. Thus, courts have already read *Pfaff*'s holding more broadly than the state criminal context and Ms. Vizguerra-Ramirez asks this Court for nothing extraordinary.

Second, in the same breath that they assert that Ms. Vizguerra-Ramirez's Motion, ECF No. 45, is an issue of first impression not authorized by Tenth Circuit precedent and attempt to reject the premise that out-of-circuit precedent from the Second Circuit is instructive, they point to another a case from the Seventh Circuit to prop up their faulty analysis. ECF No. 53 at 8 (citing *Bolante v. Keisler*, 506 F.3d 618, 620 (7th Cir. 2007)). Just as the Second Circuit's decision in *Mapp v. Reno*, 241 F.3d 221 (2d Cir. 2001), recognizes district courts' authority to issue release on bond during pending habeas petitions, so does the Seventh Circuit's decision in *Bolante*. 506 F.3d at 620. There, the petitioner sought bond while his immigration case remained pending before the circuit court on a petition for review, *not* a petition for habeas corpus. *Id*. at 619. The Seventh Circuit explicitly noted that it had "[i]nherent judicial authority to grant bail to persons who have asked for relief in an application for habeas corpus." *Id.* at 620. Various district courts agree. *Khalil v. Trump*, No. 2:25-cv-01963-MEF-MAH, ECF No. 316 (D. NJ Jun. 20, 2025); *Ozturk v. Trump*, No. 2:25-CV-374, 2025 WL 1420540, at *4 (D. Vt. May 16, 2025); *Suri v. Trump*, No. 1:25-CV-480 (PTG/WBP), 2025 WL 1392143, at *1 (E.D. Va. May 14, 2025); *Mohammed H. v. Trump*, No. CV 25-1576 (JWB/DTS), 2025 WL 1334847, at *3 (D. Minn. May 5, 2025); *Mahdawi*

*v. Trump*, No. 2:25-CV-389, 2025 WL 1243135, at *8 (D. Vt. Apr. 30, 2025); *Zepeda Rivas v. Jennings*, 445 F. Supp. 3d 36, 41 (N.D. Cal. 2020) (collecting cases).

Third, time and again, Respondents attempt to evade the underlying questions presented in Ms. Vizguerra-Ramirez's habeas petition, and presume, without direction from this Court, that the putative reinstatement order dictates the statute of detention. That issue remains for this Court to resolve. However, even if detention were statutorily authorized, the Supreme Court has consistently allowed for habeas challenges, like this one. *See, e.g.*, *Jennings v. Rodriguez*, 138 S. Ct. 830, 837-39 (2018); *Demore v. Kim*, 538 U.S. 510, 517 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

Thus, the authority to grant release recognized in *Mapp* exists here. 241 F.3d at 223 ("We hold that the federal courts have the same inherent authority to admit habeas petitioners to bail in the immigration context as they do in criminal habeas cases."). Respondents' argument to the contrary is unconvincing. *See* ECF No. 53 at 9. They cite to a case that, albeit involving detention under 8 U.S.C. § 1231, concerned a final order of removal where there were no pending proceedings and post-order detention procedures applied. ECF No. 53 at 9 (citing *Cinquemani v. Ashcroft*, No. 00-CV-1460 (RJD), 2001 WL 939664, at *7-8 (E.D.N.Y. Aug. 16, 2001)). That is not Ms. Vizguerra-Ramirez's posture and has no bearing on this Court's authority to grant bond. *Ramirez v. Bondi*, No. 25-CV-1002-RMR, 2025 WL 1294919 (D. Colo. May 5, 2025) (granting habeas petition pursuant to § 1231); *Juarez v. Choate*, No. 1:24-CV-00419-CNS, 2024 WL 1012912 (D. Colo. Mar. 8, 2024), appeal dismissed (June 24, 2024) (same). Ms. Vizguerra-Ramirez seeks traditional habeas relief: release.

Finally, this Court can grant immediate release pursuant to its authority under the All Writs Act, 28 U.S.C. § 1651.

## II. Ms. Vizguerra-Ramirez satisfies each of the disjunctive elements needed to demonstrate that release pending a decision on the habeas petition is warranted.

As discussed above, *Pfaff* is controlling and sets forth a disjunctive test. Ms. Vizguerra-Ramirez must demonstrate *either* that she has a clear case on the merits *or* exceptional circumstances to prevail on her request for bond. 648 F.2d at 693; *see also* ECF No. 53 at 9 (setting forth *Pfaff*'s test). She satisfies both and merits release.

Respondents cite to a single unpublished Tenth Circuit case endorsing a conjunctive test and insist it applies. ECF No. 53 at 7 (citing *Vreeland v. Zupan*, 644 F. App'x 812, 813 (10th Cir. 2016)). It does not. *See Arostegui-Maldonado v. Garland*, 75 F.4th 1132, 1142 (10th Cir. 2023), abrogated on other grounds by *Riley v. Bondi*, No. 23-1270, 2025 WL 1758502 (U.S. June 26, 2025) (binding precedent can only be overturned by en banc consideration or where a subsequent Supreme Court decision contradicts or invalidates the circuit court's prior analysis). Further, most Tenth Circuit cases treat the two *Pfaff* factors as alternatives. *See, United States v. Zander*, 669 F. App'x 955, 956 (10th Cir. 2016); *Barnett v. Hargett*, 166 F.3d 1220 (10th Cir. 1999).

### A. *Ms. Vizguerra-Ramirez demonstrates a clear case on the merits that she is entitled to habeas relief.*

Before moving to the merits of Ms. Vizguerra-Ramirez's habeas claims, she clarifies the procedural posture of her case and how it relates to others similarly situated. Respondents continue to repeat a fundamental misstatement or misunderstanding of who is subjected to immigration detention. ECF No. 53 at 14 ("only two of the cases Petitioner cites have to do with First Amendment retaliation challenges

arising from a noncitizen being detained for removal"); 18-19 (insisting that *Mahdawi* and *Ozturk* "involved noncitizens who were *lawfully present* in the United States" and "the government did not identify any laws the noncitizens violated that required their removal"). Respondents' cascading arguments are flawed because they are rotten at their roots.

The distinction Respondents attempt to draw does not exist. 8 U.S.C. § 1226(a) provides authority to arrest and detain "pending a decision on whether the [noncitizen] is to be removed from the United States." In other words, an individual must be in proceedings where the government is trying to deport them. The thrust of any inquiry regarding immigration detention pursuant to the Immigration and Nationality Act hinges on the question of whether the individual is inadmissible pursuant to 8 U.S.C. § 1182, removable under 8 U.S.C. § 1227, or whether a prior order of removal can be reinstated based on 8 U.S.C. § 1231. Thus, it makes no difference whether someone was lawfully *admitted* to the United States because in each of the habeas cases discussed, the government is detaining the individual with the goal of effectuating removal. *Mahdawi*, 2025 WL 1243135, at *3  (describing the charge of removability); *Ozturk v. Trump*, No. 2:25-CV-374, 2025 WL 1420540, at *2 (D. Vt. May 16, 2025) (same).

Similarly, Respondents ineffectively try to distinguish between Ms. Vizguerra-Ramirez's procedural posture and those presented in *Ragbir* and *Bello-Reyes* to weaken her claim, but their arguments fall flat. *See* ECF No. 53 at 14-16. In *Ragbir*, the Second Circuit found that the petitioner had a bona fide First Amendment retaliation claim even where he had a valid removal order with no further avenues to exhaust—an arguably weaker position than Ms. Vizguerra-Ramirez. *Ragbir*, 923 F.3d at 69. The

Supreme Court's ruling in *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020) did not disturb that holding. And akin to the petitioner in *Bello-Reyes*, ICE took enforcement action against Ms. Vizguerra-Ramirez after she spoke at a rally and expressed opposition to the agency's actions. *Bello-Reyes v. Gaynor*, 985 F.3d 696, 698 (9th Cir. 2021). Thus, these cases are a close match to the facts Ms. Vizguerra-Ramirez presents.

<u>First Amendment retaliation</u>: The events leading up to Ms. Vizguerra-Ramirez's arrest and detention are outrageous and lead to an inevitable finding that the government is stripping her of her liberty in retaliation for core political speech, in violation of the First Amendment. *Irizarry v. Yehia*, 38 F.4th 1282, 1288 (10th Cir. 2022); *see also Ragbir*, 923 F.3d at 73.

Ms. Vizguerra-Ramirez's arrest is undoubtedly the most high-profile in the State of Colorado since President Trump took office in January 2025. Much like the circumstances leading to Ms. Öztürk's clandestine arrest, or the snatching of Mr. Khalil from his home, plain clothed undercover ICE officers approached Ms. Vizguerra-Ramirez, surrounded her, placed her in handcuffs and shackles, and took her out of the public sphere. ECF No. 45 at 3-4. Targeted arrests, scattered across the country, mirror one another, suggesting that officers operated from the same playbook. Put another way, Ms. Vizguerra-Ramirez's case helps demonstrate a nationwide trend where ICE targeted political activists to silence their speech and send a message that if you make your opposition to U.S. government actions known, you will be next.

By arresting Ms. Vizguerra-Ramirez, ICE took retaliatory action to silence her *and* other outspoken community activists. Because, in addition to serving as a symbol of

7

resistance and hope for her community through what she says, Ms. Vizguerra-Ramirez acts as a source of information and connection through what she *does*: ensuring that people in her community are aware of their rights, know how to exercise them, and feel empowered to speak out and take action. ECF Nos. 45-2 ¶¶ 13-15; 45-3 ¶ 25. Ms. Vizguerra-Ramirez has never been one to shy away from the inherent risk of being publicly outspoken. And all the while, ICE has known about her presence in the United States and affirmatively chosen not to take action to detain her or effectuate her removal. However, in March 2025, ICE singled Ms. Vizguerra-Ramirez out for deportation based not only on the viewpoint of her political speech but also on the public attention it received.

Under Tenth Circuit precedent, Respondents' actions are unlawful. *Irizarry*, 38 F.4th at 1288. Thus, Ms. Vizguerra-Ramirez is likely to prevail on her First Amendment retaliation claim. *See, e.g.*, *Suri v. Trump*, No. 25-1560, 2025 WL 1806692, at *4 (4th Cir. July 1, 2025) (discussing that the government did not "contest the district court's finding that it detained Suri in retaliation for his First Amendment activity"); *Mohammed H. v. Trump*, No. CV 25-1576 (JWB/DTS), 2025 WL 1692739, at *4 (D. Minn. June 17, 2025) (granting habeas relief where ICE arrested and detained petitioner based on core political speech, finding the agency's actions violated the First Amendment).

Due Process: Respondents' detention of Ms. Vizguerra-Ramirez is deficient in process and she is likely to prevail on this claim.

First, Ms. Vizguerra-Ramirez raises a meritorious procedural due process challenge. When Congress enacts a statutory entitlement, basic procedural due process protections attach. *Mathews v. Eldridge*, 424 U. S. 319, 332 (1976). Detention without

explanation or clear legal basis does not comply with what due process requires. *Id.* at 348-49 ("The essence of due process is the requirement that a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it.").

Respondents failed to provide Ms. Vizguerra-Ramirez the process she was due because to this day, it is unclear what statute of detention applies. ECF No. 26 at 1-2, 23-24. Even assuming her detention might be otherwise statutorily authorized, Respondents failed to provide the process required under *either* possible statute of detention, 8 U.S.C. § 1226 or 8 U.S.C. § 1231. Further, the putative reinstatement order does not comply with the agency's regulatory requirements, violating her due process rights. 8 C.F.R. § 241.8(b); *Id.* at 6-9, 23-24.

Second, Ms. Vizguerra-Ramirez is likely to prevail on a substantive due process challenge. Civil detention of a removeable noncitizen violates the Constitution if it is punitive. *Wong Wing v. United States*, 163 U.S. 228, 237–38 (1896). Punishment may be inferred "if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless." *Bell v. Wolfish*, 441 U.S. 520, 53 (1979). Here, Respondents provide no proof of special nonpunitive factors that outweigh Ms. Vizguerra-Ramirez's liberty interest. Rather, the evidence shows that Respondents' decision to arrest and detain Ms. Vizguerra-Ramirez was illegitimate in both purpose (punishment of protected speech) and effect (intimidation of other noncitizens and outspoken advocates).

<u>Violation of 8 U.S.C. §1231(a)(5)</u>: Even if Ms. Vizguerra-Ramirez were detained pursuant to 8 U.S.C. § 1231(a)(5), her detention is not justified. The government's ineffective attempt at reinstatement in 2013 was fatally flawed and the piece of paper they issued does not meet the regulatory definition of a reinstatement order. 8 C.F.R. §

241.8(b); ECF No. 26. Thus, the statutory basis Respondents allege authorizes Ms. Vizguerra-Ramirez's detention does not exist. Even if the reinstatement statute applies, the plain language of 8 U.S.C. § 1231(a)(5) and accompanying regulation establish a requirement that went unmet. The government's action (perhaps more aptly described as an inaction) violated the plain meaning of the statute. Because the violation is clear on its face, supplemental authority is not required for Ms. Vizguerra-Ramirez to prevail.

Ms. Vizguerra-Ramirez establishes that she is likely to succeed on three separate claims for relief. As a result, she satisfies *Pfaff* standard and merits bond.

B.   *Ms. Vizguerra-Ramirez demonstrates exceptional circumstances.*

Concurrently, Ms. Vizguerra-Ramirez makes a showing of exceptional circumstances. The chilling of First Amendment protected speech is in and of itself an exceptional circumstance and release is warranted on that basis alone.

Respondents argue without merit that Ms. Vizguerra-Ramirez's community ties and status as a prominent immigration advocate do not constitute exceptional circumstances, ECF No. 53 at 17, when courts considering the definition of exceptional circumstances have considered these factors and more. *See, e.g., Esry v. Escapule*, No. CV-13-02028-PHX-SRB, 2014 WL 3067082, at *11 (D. Ariz. July 7, 2014) (recognizing "weighty special circumstances" as a factor in the exceptional circumstances analysis); *Mahdawi*, 2025 WL 1243135, at *12.

Ms. Vizguerra-Ramirez's situation certainly falls outside of the ordinary and she overwhelmingly establishes that her circumstances are exceptional. First, ICE arrested Ms. Vizguerra-Ramirez not in isolation, but as part of an extensive nationwide pattern and practice of retaliating against outspoken activists. ECF No. 45 at 9-14. Although the

10

substance of the advocates' speech differed, the message sent by ICE was the same: political speech that diverges from the perspective of the Executive Branch is not tolerated. Arrest and detention became a tool used to punish individuals and chill others from exercising their right to free speech.

Turning to Ms. Vizguerra-Ramirez's situation, the government expressly allowed her to live and work in the United States for more than a decade after purportedly issuing an order of reinstatement, changing course only recently in response to her prominent political dissent. ECF No. 26 at 6-19. The timing of her arrest was striking, coming on the heels of her public testimony before the Colorado legislature and the day after she vigorously opposed federal immigration policies at a protest held outside of the Colorado State Capital Building. ECF No. 45-1 ¶ 23. It was a targeted enforcement action given that undercover ICE agents surrounded her, placed her in handcuffs and shackles and meticulously photographed the event to splash it all over the agency's social media feeds. ECF No. 45 at 9. This was no ordinary arrest. It was meant to cut off her connection to her community including the resources, guidance, and sense of power she provided and to instill fear in other immigrant leaders preventing them from speaking out publicly in the wake of her arrest. ECF No. 45-2 ¶¶ 13-15; ECF No. 45-3 ¶ 25. The evidence overwhelmingly suggests that the government's arrest and detention of Ms. Vizguerra-Ramirez resulted from an "official policy" of retaliation and a glaring constitutional violation. *See, e.g.*, *Lozman v. City of Riviera Beach*, 138 S. Ct. 1945 (2018).

Second, Ms. Vizguerra-Ramirez and her family are facing significant harm due to her continued detention. Her physical health is deteriorating due to gastro-intestinal

issues, chronic migraines, and severe lower back pain. ECF No. 45-2 ¶ 18; ECF No. 45-1 ¶ 26. She suffers from exhaustion, anxiety, and insomnia due to her worry for her children. ECF No. 45-1 ¶¶ 25-26. Her youngest daughter, a rising high school freshman, requires her mother's support and is facing irreversible harm due to their continued separation. ECF No. 57-1. The "burden of such separation" may be a "common aspect of detention," but the weight of the burden on Ms. Vizguerra-Ramirez's family is exceptionally heavy and irreparable. ECF No. 53 at 19. Years of trauma have been inflicted on this family because of the systemic failures and weaponization of the immigration system. *Id.* There is no better example of how that harm negatively impacts families than the one presented here.

Finally, Ms. Vizguerra-Ramirez is neither a danger to the community nor a flight risk. *See Mahdawi*, 2025 WL 1243135, at *12 (examining "conventional bail issues of risk of flight and danger to society" as part of the exceptional circumstances analysis). Respondents do not allege Ms. Vizguerra-Ramirez is a danger and she prevails on this element. In her 90-day custody review, the Acting Deputy Field Office Director determined that she poses risk of flight pending removal. ECF No. 53-1 ¶ 16. Yet, Ms. Vizguerra-Ramirez has lived in Colorado for nearly three decades, she lives alongside her four children and three grandchildren, Colorado is the base for her immigration advocacy as well as the advocacy organizations she founded, it is her place of employment, and it is her home. ECF No. 45-1; 45-2; 45-3. If Ms. Vizguerra-Ramirez cannot assuage Respondents' concerns related to flight, no one can.

In sum, Ms. Vizguerra-Ramirez satisfies each of the independent bond factors set forth in *Pfaff*. 648 F.2d at 693. She merits release on this basis.

### III. Contrary to Respondents' Assertions, Ms. Vizguerra-Ramirez is entitled to a preliminary injunction in the form of release.

Ms. Vizguerra-Ramirez merits injunctive relief. Because Petitioner seeks to preserve the status quo, a preliminary injunction "does not require [Respondents] to do something that they were not doing during the last uncontested period." *Evans v. Fogarty*, 44 Fed. Appx. 542, 928 (10th Cir. 2002).

#### A. Ms. Vizguerra-Ramirez will suffer irreparable harm.

Chilling of speech counts as irreparable harm. *See, e.g.*, *Hartman v. Moore*, 547 U.S. 250, 256 (2006); *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 794 (1988); *Wooley v. Maynard*, 430 U.S. 705, 714 (1977); *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").

Here, Respondents used Ms. Vizguerra-Ramirez's arrest and detention as a tool to cut off her ability to communicate with her community, curtail her speech, send an ominous message to other activists to cool speech and dilute the movement's power, all amidst a larger backdrop of a nationwide pattern of targeted arrests motivated by the same unconstitutional purpose—to strip people of due process and silence their First Amendment rights. *See* ECF Nos. 45 at 14-17, 45-1, 45-2, 46. On top of it all, Ms. Vizguerra-Ramirez and her family are personally suffering. ECF Nos. 45-1, 46, 57-1. The harm they are experiencing on account of her unlawful detention is irreversible and permanent. *Id.* Despite what Respondents argue, ECF No. 53 at 23, the damaging impact far surpasses the universal toll that detention poses to those detained by ICE.

Considering the unique circumstances presented, Ms. Vizguerra-Ramirez demonstrates irreparable harm. Thus, she makes a strong showing on this factor.

> B. *Ms. Vizguerra-Ramirez is likely to succeed on the merits.*

Ms. Vizguerra-Ramirez is likely to prevail on the merits of her habeas petition. As an initial matter, this Court has jurisdiction. ECF Nos. 26, 45, 50; *see, e.g.*, *Suri*, 2025 WL 1806692, at *8; *Mohammed H.*, 2025 WL 1692739, at *2; *Aditya W. H. v. Trump, No. 25-CV-1976 (KMM/JFD), 2025 WL 1420131, at *7–9  (D. Minn. May 14, 2025)*; *Mahdawi*, 2025 WL 1243135, at *4–8; *Ozturk*, 2025 WL 1145250, at *10–15. Respondents relentlessly argue to the contrary. *See* ECF No. 53 at 10. Their argument is misplaced because Ms. Vizguerra-Ramirez's habeas petition challenges the validity of her *detention* and is properly brought via habeas. *Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973) ("[T]he writ is available . . . to attack future confinement and obtain future releases."); *Mohammed H.*, 2025 WL 1334847, at *3 (finding that the "jurisdictional arguments misconstrue Petitioner's habeas claims. Contrary to the Government's framing, Petitioner does not seek to end his removal proceeding or vacate the underlying executive determinations. Rather, he simply seeks to end his allegedly unlawful confinement."). Further, as described above and in earlier briefing, Ms. Vizguerra-Ramirez has three claims for relief, each of which is likely to succeed. ECF Nos. 26, 45, 50. This factor weighs in her favor.

> C. *The balance of equities weighs in favor of Ms. Vizguerra-Ramirez.*

The balance of harms and public interest favor Ms. Vizguerra-Ramirez because she challenges unconstitutional government conduct. *Free the Nipple—Fort Collins v. City of Fort Collins*, 916 F.3d 792, 805–06 (10th Cir. 2019).

Respondents assert that their ability to enforce immigration law is significant. ECF No. 53 at 24. However, they have not shown that Ms. Vizguerra-Ramirez must

remain detained for them to exercise that ability. In fact, most people in immigration proceedings are not detained.[1] Nor have they shown why, more than twelve years after the issuance of the putative reinstatement order, her detention is so necessary *now*. To the contrary, she has built greater equities during that time, has had no new criminal legal contact, and has even stronger ties to the community. Further, Ms. Vizguerra-Ramirez is in the process of fighting to establish the harm that would befall her if removed to Mexico, an ongoing court procedure that will require her active participation and presence. Clearly, Ms. Vizguerra-Ramirez is invested in seeking that protection, making it even less likely that she would abscond. Meanwhile, Ms. Vizguerra-Ramirez has a significant liberty issue at stake. Respondents have offered nothing to show that effective alternatives to detention are not available.

Therefore, the government can meet its own interest and that of Ms. Vizguerra-Ramirez at the same time if she is released and this Court should order a preliminary injunction granting bond.

## IV.    Conclusion

For the forgoing reasons, Ms. Vizguerra-Ramirez respectfully requests that the Court grant her Motion for Bond and order her immediate release.

Respectfully submitted,

---

[1] At the end of May 2025, there were 3,546,863 active cases pending before U.S. immigration courts. TRAC Immigration: Immigration Court Quick Facts, https://tracreports.org/immigration/quickfacts/eoir.html (last visited July 1, 2025). At the same time, there is an astronomically high number of people currently in immigration detention—56,397 as of June 15, 2025. TRAC Immigration: Immigration Detention Quick Facts, https://tracreports.org/immigration/quickfacts/eoir.html (last visited Jul. 1, 2025). Nevertheless, even assuming all detained cases will be heard by the court, they only comprise less than 1.6 percent of the total number of pending immigration cases.

/s/ Laura P. Lunn
Laura P. Lunn
Shira N. Hereld
ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK
7301 Federal Boulevard, Suite 300
Westminster, Colorado 80030
Tel: 720-370-9100
llunn@rmian.org
shereld@rmian.org

Laura L. Lichter
Mark R. Barr
Lichter Immigration
1601 Vine Street
Denver, CO 80206
(303) 554-8400
LLichter@LichterImmigration.com
MBarr@LichterImmigration.com

Elizabeth Jordan
Lilli Warren*
Student Law Office
University of Denver Sturm College of Law
2255 East Evans Avenue Suite 335
Denver, CO 80210
303-871-6368
Elizabeth.jordan@du.edu
lilli.warren@du.edu
*Student Attorney Appearance on file

Brian Scott Green
Law Office of Brian Green
9609 S University Boulevard
#630084
Highlands Ranch, CO 80130
(443) 799-4225
BrianGreen@greenUSimmigration.com

*Counsel for Petitioner-Plaintiff*

16

**CERTIFICATE OF SERVICE**

I hereby certify that on July 3, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, pursuant to Fed. R. Civ. P. 5, which will send notification of such filing to the following recipients by email:

Benjamin.Gibson@usdoj.gov
Kevin.Traskos@usdoj.gov
Timothy.Jafek@usdoj.gov

/s/ Laura P. Lunn
Laura Lunn
ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK
