**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 25-cv-00881-NYW-KAS

JEANETTE VIZGUERRA-RAMIREZ,

        Petitioner,

v.

JUAN BALTAZAR, Warden, Aurora ICE Processing Center,
ROBERT GUADIAN, Field Office Director, U.S. Immigration and Customs Enforcement,
KRISTI NOEM, Secretary, U.S. Department of Homeland Security, and
PAMELA BONDI, U.S. Attorney General,

        In their official capacities,

        Respondents.

---

**RESPONSE TO SECOND AMENDED APPLICATION FOR WRIT OF HABEAS
CORPUS, ECF No. 61**

---

Respondents file this response to the Second Amended Application for Writ of Habeas Corpus ("Second Amended Petition"). ECF No. 61. The Court granted the Joint Motion for Entry of Briefing Schedule. ECF No. 66. Thus, the response "will address only Petitioner's newly-added allegations and Count IV." ECF No. 64 at 1.[1]

The Court should deny Petitioner's new due process challenge, which is based on allegations that her detention has become prolonged. Specifically, Petitioner

---

[1] Petitioner's original habeas petition focused on the validity of the reinstatement order that is the basis for her detention. ECF No. 1. Petitioner's amended petition added a challenge to her detention based on an alleged violation of the First Amendment. ECF No. 26. Respondents have already responded to those challenges to Petitioner's detention, ECF Nos. 16 & 30, and do not address them any further here.

challenges her detention as violating due process under the standard articulated by the Supreme Court in *Zadvydas v. Davis,* 533 U.S. 678 (2001), for evaluating the constitutionality of detention pursuant to a removal order, and as otherwise violating her due process rights. Based on this new challenge, she seeks immediate release from detention or, in the alternative, a bond hearing.

The Court should not grant the requested relief. Petitioner's detention under 8 U.S.C. § 1231 does not violate due process. Under *Zadvydas*, such a detention satisfies due process so long as there is a "significant likelihood of removal in the reasonably foreseeable future." 533 U.S. at 701. Here, there is a definite termination point to Petitioner's detention—the end of her withholding-only proceedings. Given that termination point, her detention complies with the standard articulated in *Zadvydas* and adopted by the Tenth Circuit in *Soberanes v. Comfort*, 388 F.3d 1305, 1311 (10th Cir. 2004). Petitioner also argues that the Court should apply a six-factor test to determine whether her continuing detention violates due process. But the Court should not apply that six-factor test here because in *Zadvydas,* the Supreme Court defined the specific standard for determining whether an extended detention to execute a removal order complies with due process, and that standard is met here.

## LEGAL BACKGROUND

The Immigration and Nationality Act ("INA") authorizes the detention of noncitizens who are subject to removal orders. 8 U.S.C. § 1231(a)(5) provides for the reinstatement of removal orders against noncitizens who illegally reenter the United States. The Supreme Court, in turn, has explained that Section 1231 authorizes the

detention of noncitizens who are subject to such a reinstated removal order.  *See Johnson v. Guzman Chavez*, 594 U.S. 523, 535 (2021).

In general, the Department of Homeland Security ("DHS") must remove noncitizens who have been ordered removed "within a period of 90 days," also known as the "removal period."  8 U.S.C. § 1231(a)(1)(A).  During the removal period, detention of the noncitizen is mandatory until removal occurs.  *Id.* § 1231(a)(2).

Once the removal period is up, DHS may continue to detain noncitizens who are determined to be "a risk to the community or unlikely to comply with the order of removal."  *Id.* § 1231(a)(6).  Enforcement and Removal Operations ("ERO"), a subcomponent of ICE, "conducts post-order custody reviews (POCR), an individualized due process assessment of an alien's custody status to ensure the alien's detention complies with Constitutional due process requirements."  Ex. A, Decl. of S. Blea, ¶ 10. POCRs are conducted at 90-day and 180-day intervals following the issuance of a final order of removal.  *Id.* ¶ 11 (citing 8 C.F.R. § 241.4).  Reviews prior to the end of the 90-day removal period are conducted by the Field Office Director and ERO.  *Id.* ¶ 12.  If a noncitizen is not released or removed within 90 days of the Field Office Director's decision, subsequent custody decisions are made by ERO's Removal and International Operations office.  *Id.* ¶ 13.  The regulations provide for POCRs every 90 days by Removal and International Operations until the noncitizen is released from detention or removed from the United States.  *Id.* ¶ 14 (citing 8 C.F.R. § 241.4).

There are times when a noncitizen will not be removed within the removal period.  In some circumstances, an appeal or proceeding may need to be completed

before removal to the designated country.  For example, a noncitizen subject to a reinstated removal order may seek certain relief.  DHS may not remove a noncitizen "to a country if the Attorney General decides that [her] life or freedom would be threatened in that country because of [her] race, religion, nationality, membership in a particular social group, or political opinion."  *Id.* § 1231(b)(3)(A).  Thus, a noncitizen who is subject to a reinstatement of a removal order may seek "withholding of removal" based on a reasonable fear of persecution or torture if she is returned to the country of removal.  *See* 8 C.F.R. § 208.31(a), (c).

## FACTUAL BACKGROUND

**Illegal entry and reinstatement of removal order.**  The facts relating to Petitioner's detention have been set forth in prior briefing on Petitioner's original and amended habeas petition.  *See* ECF Nos. 1, 16, 18, 26, 30, 39.  In brief, Petitioner is a native and citizen of Mexico.  ECF No. 61 ¶ 6.  She entered the United States without inspection on two occasions.  *Id.* ¶¶ 11, 16.  In 2013, she was issued a reinstatement of removal order (the "2013 Reinstatement Order").  ECF No. 16-1 at 4.  Between 2013 and 2016, Petitioner repeatedly sought, and received, stays of removal relating to the 2013 Reinstatement Order.  *Id.* at 4-5.  In February 2017, Immigration and Customs Enforcement ("ICE") denied Petitioner's application for a stay of removal and issued a Notice of Revocation of Release, at which point her counsel notified ERO that she would be taking sanctuary in the First Unitarian Society Church in Denver and would not report to ICE.  *Id.* at 5.  In March 2019, Petitioner again applied for a stay of removal, which was denied.  *Id.*  In December 2021, Petitioner applied for and received

a stay of removal for one year.  *Id.*  In February 2023, ICE granted a stay of removal for one year, which expired.  *Id.*

**Detention and withholding-only proceedings.**  ICE arrested Petitioner on March 17, 2025.  ECF No. 61 ¶ 22.  The next day, she claimed a fear of return to Mexico.  Ex. A ¶ 4.  She is detained at the Denver Contract Detention Facility in Aurora, Colorado under 8 U.S.C. § 1231.  *Id.* ¶ 3.

Petitioner's withholding-only proceedings are ongoing based on her claim that she fears a return to Mexico.  On April 12, 2025, United States Citizenship and Immigration Services ("USCIS") notified Petitioner that it had found that she had not shown a reasonable fear of return.  *Id.* ¶ 6.[2]  USCIS then issued a notice on May 2, 2025, that it had referred the reasonable fear determination to an immigration judge. *Id.* ¶ 7.  On May 20, 2025, an immigration judge vacated USCIS's negative reasonable fear finding and found Petitioner had established a reasonable possibility that she would be persecuted based on a protected ground if removed to Mexico.  *Id.* ¶ 9.  The immigration judge then scheduled a hearing on Petitioner's request for withholding-only relief for October 14, 2025.  *Id.* ¶ 22.  Petitioner sought, and received, a continuance of that hearing date to November 6, 2025.  *Id.* ¶ 23.

On June 12, 2025—within 90 days of her arrest—the Acting Deputy Field Office Director issued Petitioner a "Continue to Detain" letter indicating her detention would

---

[2] Petitioner alleges that USCIS pursued her reasonable fear interview without notice to counsel, resulting in delays to her withholding-only proceedings.  ECF No. 61 ¶¶ 33-49, 113-14.  Respondents have previously presented evidence regarding USCIS's attempts to perform a reasonable fear interview in March and April of 2025.  ECF No. 30 at 6-8.

continue because she had not demonstrated that, if released, she would not pose a significant risk of flight pending removal.  *Id.* ¶ 15.

**The Original and Amended Petitions.**  On March 18, 2025, Petitioner filed an application for writ of habeas corpus (the "Petition") under 28 U.S.C. § 2241.  ECF No. 1.  In the Petition, she challenged the validity of the 2013 Reinstatement Order, arguing that she was being detained without authority in violation of due process and 8 U.S.C. § 1231(a)(5).  *Id.* ¶¶ 33-40.  On March 21, 2025, the Court issued an order prohibiting Respondents from removing Petitioner from the District of Colorado or the United States until either it or the Tenth Circuit vacates that order.  ECF No. 11 at 5-6.  On March 24, 2025, Respondents responded to an Order to Show Cause issued by the Court.  ECF No. 16.  Petitioner replied on March 26, 2025.  ECF No. 18.[3]

On April 8, 2025, Petitioner filed an amended petition (the "Amended Petition"), in which she added a challenge to her detention based on allegations that the decision to arrest and detain her was retaliatory for her exercise of her First Amendment rights.  ECF No. 26.  She alleged that she has previously engaged in activism related to immigration and labor policy.  *Id.* ¶ 23.  She contended that Respondents arrested her, detained her, and executed the 2013 Reinstatement Order against her as retaliation for that activism.  *Id.* ¶ 24.  Respondents filed a response to the Amended Petition on April 29, 2025.  ECF No. 30.  Petitioner replied on May 13, 2025.  ECF No. 39.

---

[3] On July 28, 2025, Petitioner filed a petition for review with the Tenth Circuit regarding the validity of her removal order.  *Vizguerra-Ramirez v. Bondi*, 25-9559, Dkt. No. 1 (10th Cir. July 28, 2015); *see also* ECF No. 61 ¶ 118.  It does not appear Petitioner has sought a stay of removal with the Tenth Circuit related to that petition for review.

**The Second Amended Petition.**  Petitioner now brings the Second Amended Petition, in which she challenges her detention as violating due process.  ECF No. 61 ¶¶ 98-124.  Specifically, she argues that because Respondents have detained her for more than six months, her detention has become "unconstitutionally prolonged."  *Id.* ¶ 98.  According to Petitioner, her detention now violates due process because "[t]here is no substantial likelihood that DHS will be able to carry out [her] removal in the reasonably foreseeable future due to her on-going withholding-only proceedings and the likelihood of subsequent administrative and judicial appeals."  *Id.* at 6 (citing *Zadvydas*, 533 U.S. 678).  She also argues that her detention is unconstitutionally prolonged based upon a six-factor test that a court in this district employed when determining the constitutionality of detention during removal proceedings (*i.e.*, before a removal order had been entered).  *Id.* ¶¶ 101-120 (citing *Singh v. Choate*, 19-cv-00909-KLM, 2019 WL 3943960 (D. Colo. Aug. 21, 2019)).  Petitioner requests immediate release or, in the alternative, a bond hearing before an impartial adjudicator within seven days of an order by the Court.  *Id.* ¶¶ 121-122.  She requests that at any bond hearing, the government must be required to justify her ongoing detention by clear and convincing evidence.  *Id.* ¶ 122.

### ARGUMENT

The Court should not grant Petitioner relief based on her new due process challenge to her detention.  *Zadvydas* defines what due process requires for detentions under Section 1231.  Here, Petitioner has yet to be removed because she is

pursuing withholding-only proceedings.  Those proceedings will end.  Under *Zadvydas* and *Soberanes*, her detention does not violate due process.

**I.     Petitioner's detention under 8 U.S.C. § 1231 satisfies due process.**

In *Zadvydas*, the Supreme Court defined the standards that govern the constitutionality of a noncitizen's prolonged detention under Section 1231.  There, two detained noncitizens had been ordered removed but had not been removed during the removal period because one was not a recognized citizen of any country and the other could not be removed to the proposed country of removal due to the lack of a repatriation treaty with that country.  Zadvydas, 533 U.S. at 684-86.  Thus, each noncitizen remained detained with no prospect of being removed at any point in the future.  The Court indicated that "a serious constitutional problem" would arise under the Due Process Clause if Section 1231 permitted "indefinite detention of an alien."  *Id.* at 690.  To avoid that due-process problem, the Court held that, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by" Section 1231.  *Id.* at 699.  But the Court also clarified that "an alien *may* be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future."  *Id.* at 701 (emphasis added).

The Tenth Circuit has recognized that *Zadvydas* defined the standard for courts to use when evaluating whether post-order detention is unconstitutionally prolonged.  It has explained that "in considering whether an alien's continued detention after issuance of a final order of removal is permissible, 'the habeas court must ask whether the

detention in question exceeds a period reasonably necessary to secure removal.'"
*Soberanes*, 388 F.3d at 1311 (quoting *Zadvydas*, 533 U.S. at 699).

In other words, the Court in *Zadvydas* "offered [courts] a standard through which to judge indefinite-detention cases" under Section 1231.  *Martinez v. Larose*, 968 F.3d 555, 566 (6th Cir. 2020).  Several other circuit courts have recognized as much.  In *Martinez v. Larose*, the Sixth Circuit rejected a petitioner's request for a bond hearing during his two-year detention under Section 1231, concluding that the proper standard to apply to the request was "the *Zadvydas* standard."  968 F.3d at 565-566.  Similarly, in *Castaneda v. Perry*, a petitioner detained under Section 1231 requested a bond hearing "even if his *Zadvydas* claim fails."  95 F.4th 750, 760 (4th Cir. 2024).  The Fourth Circuit rejected that request, concluding that the due process standard articulated in *Zadvydas* "provides the sole recourse available to a § 1231 detainee challenging his detention on due process grounds."  *Id.*  It reasoned that, if the petitioner's continued detention did "not offend the Due Process Clause" under *Zadvydas*, "then the unavailability of . . . [a] bond hearing before an IJ, the very purpose of which is to seek release from detention, does not either."  *Id.*  Finally, in *G.P. v. Garland*, the First Circuit applied *Zadvydas* to a challenge to a detention under Section 1231.  103 F.4th 898, 903-04 (1st Cir. 2024).

Petitioner argues that "[t]here is no substantial likelihood that DHS will be able to carry out [her] removal in the reasonably foreseeable future due to her on-going withholding-only proceedings and the likelihood of subsequent administrative and judicial appeals."  ECF No. 61 at 6.  But the Tenth Circuit has determined that a Section 1231 detention that is ongoing because the noncitizen is pursuing relief related to her

removal does not violate due process.  *See Soberanes*, 388 F.3d at 1311.  In

*Soberanes*, the Tenth Circuit explained that when a noncitizen's detention is "directly

associated with a judicial review process that has a definite and evidently impending

termination point," the detention "is clearly neither indefinite nor potentially permanent

like the detention held improper in *Zadvydas*."  *Id.*  Rather, Petitioner's situation is "more

akin to detention during the administrative review process," which the Supreme Court

has upheld as constitutional.  *Id.* (citing *Demore v. Kim*, 538 U.S. 510, 527-29 (2003)).

If Petitioner's request for withholding-only relief is denied, she will be removed

back to Mexico.  Even if her request is ultimately granted, the government would remain

authorized to find a different country to accept her.  Either way, her proceedings will

end.  Thus, there is a significant likelihood of her removal in the reasonably foreseeable

future.  The absence of a specific date when the proceedings will end does not show,

for this purpose, that the proceedings are indefinite.  *See id.*; *cf. Mwangi v. Terry,* 465 F.

App'x 784, 787 (10th Cir. 2012) ("Although a precise end-date to his removal cannot be

pinpointed, that is because his removal proceedings continue, not because the

government cannot remove him.").

Petitioner, though, argues that the Court should allow her to proceed with an "as-

applied, constitutional claim[ ] against prolonged, post-removal detention" separate from

*Zadvydas*.  ECF No. 61 ¶ 80.  She argues that in *Johnson v. Arteaga-Martinez*, 596

U.S. 573 (2022), the Supreme Court left open an avenue for such challenges to

prolonged detention.  *Id.* ¶¶ 80-81.  She points to three cases in which courts in this

district have used the six-factor test from *Singh* to analyze whether continuing detention

under Section 1231 violates due process.  *Id.* ¶ 82 (citing *Arostegui-Maldonado v. Baltazar*, 25-cv-2205-WJM-STV, 2025 WL 2280357 (D. Colo. Aug. 8, 2025); *Ramirez v. Bondi*, No. 25-cv-1002-RMR, 2025 WL 1294919 (D. Colo. May 5, 2025);[4] *Juarez v. Choate*, No. 1:24-cv-00419-CNS, 2024 WL 1012912 (D. Colo. March 8, 2024)).

There are several reasons the Court should not follow those other courts in applying the *Singh* factors to a detention under Section 1231.  First, the courts in this district that have re-purposed the *Singh* factors for this context assumed that in *Arteaga-Martinez* the Supreme Court allowed for due process challenges to Section 1231 detentions apart from *Zadvydas*.  The Supreme Court did no such thing.  In *Arteaga-Martinez*, the Court addressed whether Section 1231 provided for bond hearings as a statutory matter.  596 U.S. at 580-81.  The Court concluded it did not.  *Id.*  The noncitizen in *Arteaga-Martinez* argued, among other things, that Section 1231 would raise "serious due process concerns" if it did not allow for bond hearings.  *Id.* at 583.  In response, the government—not the Court—indicated that "as-applied constitutional challenges" may be available to address "exceptional" cases of detention under Section 1231.  *Id.*  The Supreme Court left the viability of such a challenge "for the lower courts to consider in the first instance."  *Id.*; *see also Castaneda*, 95 F.4th at 761 ("To be clear, the Court only *acknowledged* the government's position; it did not endorse it." (emphasis in original)).  In any event, it appears that an as-applied due process challenge would need to be based on "exceptional" circumstances.  The circumstances

---

[4] The government has appealed the Court's order in *Ramirez* to the Tenth Circuit, and the opening brief is due on November 3, 2025.  Order, *Munoz Ramirez v. Bondi*, 25-1263, Dkt. No. 15 (10th Cir. Sept. 25, 2025).

around Petitioner's ongoing detention under Section 1231 are not exceptional. Her detention continues due to her ongoing withholding-only proceedings. Her circumstances are like the petitioner's in *Soberanes* where the Tenth Circuit determined that a Section 1231 detention that continued due to ongoing judicial proceedings satisfied due process. *See* 388 F.3d at 1311.

Second, those courts that have used the *Singh* factors in the Section 1231 context have not adequately explained why standards for evaluating the detention of those who have not been ordered removed should be the same as the standards used to evaluate the detention of those subject to a final removal order. In *Juarez*, the court suggested that "there appears to be little substantial distinction between the liberty interest of noncitizens detained pursuant to § 1226(c) and § 1231(a)(6), because regardless of the stage of the proceedings, the same important interest is at stake— freedom from prolonged detention." 2024 WL 1012912, at *6 (citation modified). But even if noncitizens detained under Sections 1226 and 1231 both have an interest in freedom from prolonged detention, the *Juarez* court did not address that the Supreme Court has already explained that noncitizens detained under Section 1226 are differently situated from those detained under Section 1231 because one group has not yet been deemed removable and the other group has. *See Guzman Chavez*, 594 U.S. at 544. This case involves a noncitizen who has already been ordered removed, who has already refused to report to ICE on a prior occasion, and who (in withholding-only proceedings) may obtain, at most, an order barring her removal to a particular country. In these circumstances, the risk of flight—and the government's corresponding interest

in preventing flight—is magnified, and the noncitizen's interest in release is diminished.

Third, the factors identified by *Singh* for analyzing the constitutionality of a detention under Section 1226 are inapposite here, amorphous, and inconsistent with the well-defined *Zadvydas* standard. For example, consideration of the *Singh* factor on the likelihood of a final removal order is inapposite in the context of a Section 1231 detention: a final removal order already exists in a Section 1231 detention. *Cf. G.P.*, 103 F.4th at 904-05 (rejecting consideration of "the likelihood" of "a final removal order" (citation omitted)). The *Singh* factors also require consideration of the length of detention and future detention, but the *Zadvydas* standard establishes a specific standard for evaluating whether extended detention under Section 1231 complies with due process. Finally, the *Singh* factors require consideration of delays in immigration proceedings, but again, the *Zadvydas* inquiry sets a specific standard—whether those delays would show that removal is not reasonably foreseeable.

In sum, the Court should assess the constitutionality of Petitioner's Section 1231 detention under the *Zadvydas* standard, not the inapposite *Singh* factors. And under Zadvydas, Petitioner's ongoing detention—due to her withholding-only proceedings—does not violate due process. If noncitizens detained under Section 1231 can simply invoke the *Singh* factors after six months of detention, it would render the Supreme Court's decision in *Zadvydas* a dead letter.

## II.    Even under the *Singh* factors, Petitioner's detention satisfies due process.

Some courts in this district have used a six-factor test to evaluate the detention of noncitizens under Section 1226, considering: (1) the total length of detention to date; (2)

the likely duration of future detention; (3) the conditions of detention; (4) delays by the detainee; (5) delays by the government; and (6) the likelihood of a final order of removal.  *See Singh*, 2019 WL 3943960, at *5.  As explained above, that six-factor test does not apply here.  But, even if it did, it does not suggest a violation of due process in Petitioner's case because her detention has a definite termination point.

**First and second factors.**  The duration of detention weighs in Respondents' favor.  Petitioner's roughly seven-month detention is not unreasonable because it has a definite end point.  *See Soberanes*, 388 F.3d at 1311.

**Third factor.**  The Court should not consider the conditions of Petitioner's detention because such a challenge must be brought through a civil action, not a habeas petition.  *See Palma-Salazar v. Davis*, 677 F.3d 1031, 1035 (10th Cir. 2012).

**Fourth and fifth factors.**  As to delays caused by the parties, these factors weigh in favor of Respondents.  As a general matter, Petitioner "finds [herself] in continued detention" under Section 1231 "because [she] voluntarily initiated withholding-only proceedings, blocking [her] prompt removal from the United States."  *Castaneda*, 95 F.4th at 761.  Petitioner argues that USCIS delayed her withholding-only proceedings by attempting to perform a reasonable fear interview without contacting counsel.  ECF No. 61 ¶¶ 112-14.  But USCIS scheduled a reasonable-fear interview with Petitioner on at least five occasions and attempted to contact Petitioner's counsel during four of those attempted interviews.  ECF No. 30 at 7.  Also, Petitioner has filed for, and received, a continuance of her withholding-only proceedings.  Ex. A ¶¶ 22-23.

**Sixth factor.**  As to the likelihood of a final removal order, this factor favors the government because a final removal order already exists.  *See Guzman Chavez*, 594 U.S. at 534.  And, even if an immigration judge grants withholding of removal to Mexico, Petitioner still may be removed to another country once the Court's order prohibiting her removal is vacated.  *See id.* at 537.

In sum, even if the Court were to analyze Petitioner's detention under the *Singh* six-factor test, those factors do not establish that her detention violates due process.

**III.    If the Court orders a bond hearing, due process does not require that the government bear the burden of proof at the bond hearing.**

Petitioner contends that, at a bond hearing, the government should bear the burden of proof to justify her ongoing detention by clear and convincing evidence.  See ECF No. 61 ¶ 122.  Due process does not require that allocation of the burden of proof. "The Supreme Court has been clear and consistent that the Constitution requires lesser procedural protections for aliens subject to removal, and a concomitantly lesser role for judicial intervention in the detention process."  *Basri v. Barr*, 469 F. Supp. 3d 1063, 1074 (D. Colo. 2020).  Indeed, courts in this district have held that due process does not require the government to bear the burden to justify detention at a bond hearing.  *See id.; see also de Zarate v. Choate*, No. 23-cv-00571-PAB, 2023 WL 2574370, at *5 (D. Colo. Mar. 20, 2023).

## CONCLUSION

For the foregoing reasons, the Court should not grant Petitioner immediate release or a bond hearing based on her new due process challenge to her detention.

15

Dated: October 20, 2025.

Respectfully submitted,

PETER MCNEILLY
United States Attorney

s/ Benjamin Gibson
**_Benjamin Gibson_**
**_Timothy Bart Jafek_**
**_Kevin Traskos_**
Assistant United States Attorneys
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: (303) 454-0100
benjamin.gibson@usdoj.gov
timothy.jafek@usdoj.gov
kevin.traskos@usdoj.gov

Counsel for Respondents

## CERTIFICATE OF SERVICE

I certify that on October 20, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following recipients by e-mail:

llichter@lichterimmigration.com
mbarr@lichterimmigration.com
briangreen@greenimmigration.com
Elizabeth.jordan@du.edu
llunn@rmian.org
shereld@rmian.org

*s/ Benjamin Gibson*
Benjamin Gibson