# Ex. A

Petitioner's Second Motion to Continue

in Withholding-Only Proceedings

(October 27, 2025)

Case No. 1:25-cv-00881-NYW    Document 68-1    filed 10/31/25    USDC Colorado    pg
2 of 24
Uploaded on: 10/27/2025 at 10:03:51 PM (Mountain Daylight Time) Base City: AUR

**Laura L. Lichter, Esq.**                                    **NON-DETAINED**
EOIR ID: MX784003
CO Bar No.: 24420
Lichter Immigration
1601 Vine Street
Denver, CO 80206
(303) 554-8400
llichter@lichterimmigration.com


## UNITED STATES DEPARTMENT OF JUSTICE
## EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
## IMMIGRATION COURT
## AURORA, COLORADO


| | |
|---|---|
| In the Matter of: ) | |
| ) | |
| **VIZGUERRA-RAMIREZ, Jeanette** ) | **File No.:    A089-826-036** |
| ) | |
| In withholding-only proceedings. ) | |
| ) | |


**IJ: Ivan E. Gardzelewski**            **Next Hearing Date: November 6, 2025**


## RESPONDENT'S SECOND MOTION TO CONTINUE

COMES NOW the Respondent, Jeanette Vizguerra-Ramirez, with the help of her attorney, Laura L. Lichter of Lichter Immigration, to again move the Court for a continuance until such time as her procedural posture is clarified by the U.S. Court of Appeals, which is primed to shortly decide whether she is subject to a reinstated order of removal, the alleged existence of which has limited her relief options in proceedings.

Ms. Vizguerra previously requested a continuance, and the Court obliged, changing the merits hearing from October 14, 2025, to the currently scheduled date of November 6, 2025. Since that time, three events have occurred, all of which militate in favor of a second continuance.

First, while Ms. Vizguerra's legal team completed its opening brief in the currently pending petition for review, the government has slowed review by requesting a postponement of its own briefing schedule, which the Tenth Circuit has granted.

Second, Ms. Vizguerra's daughter Luna Baez Vizguerra, has enrolled in the Air Force, with a start date of November 18, 2025. Once her training has started, an Air Force representative will sign the official enlistment paperwork. Armed with the signed agreement, undersigned counsel anticipates seeking military deferred action before USCIS for Ms. Vizguerra, the approval of which would render her withholding claim moot.

Third and finally, the government has recently filed its response to Ms. Vizguerra's second amended petition for habeas corpus. A reply is due next Monday, November 3rd, and work on that briefing will prevent undersigned counsel from having the capacity to simultaneously prepare for a withholding claim in Immigration Court. Once the habeas reply is submitted on November 3rd, the habeas proceedings will be ripe for a decision, with a possible release also impacting Ms. Vizguerra's withholding claim currently in a detained setting.

A more detailed explanation follows, with the relevant updates discussed above highlighted in the discussion below.

EOIR – 2 of 23

A089-826-036

Page ii

Case No. 1:25-cv-00881-NYW    Document 68-1    filed 10/31/25    USDC Colorado    pg
Uploaded on: 10/27/2025 at 10:03:51 PM (Mountain Daylight Time) Base City: AUR
4 of 24

## TABLE OF CONTENTS

I.    Statement of Relevant Facts ....................................................................................iv
    A.    IJ denial of cancellation and grant of voluntary departure in 2011 ..........iv
    B.    BIA appeal and tolling of voluntary departure period...............................iv
    C.    Departure and return while appeal pending................................................iv
    D.    Issuance of putative reinstatement order in 2013.......................................v
    E.    ICE stay of removal in 2013 ........................................................................v
    F.    Detention in 2025 .......................................................................................vi
    G.    Judicial and administrative challenges to detention and reinstatement....vi
        1.    Withholding of removal........................................................................vi
        2.    Habeas corpus ....................................................................................vii
        3.    Petition for review ..............................................................................vii
    H.    Enrollment of Ms. Vizguerra's daughter in the U.S. Air Force ...............ix
II.    Discussion .................................................................................................................ix
    A.    Ms. Vizguerra-Ramirez has raised serious legal issues in her petition for
        review that have a fair prospect of success...................................................ix
        1.    The Department cannot issue a final reinstatement order before
            considering any objections to that order.........................................ix
        2.    A tolled grant of voluntary departure does not convert to a
            removal order if the recipient departs the U.S. during the
            pendency of her appeal ......................................................................x
            a.    The withdrawal regulation requires that a reactivated IJ
                order have the same effect as the original order .................xi
            b.    The reinstatement statute does not apply to individuals
                who did not have an order of removal at the time of their
                departure from the U.S. .......................................................xii
            c.    Both interpretations of the withdrawal regulation possibly
                violate the statute on finality ..............................................xii
    B.    A decision from the Tenth Circuit is imminent.........................................xv
    C.    A positive decision from the Tenth Circuit would render moot any
        agency resources invested in adjudicating Ms. Vizguerra-Ramirez's
        withholding claim .......................................................................................xv
    D.    Proceeding with a merits hearing on withholding at the same time Ms.
        Vizguerra-Ramirez's legal team is working on a District Court habeas
        brief would be unfairly burdensome and counterproductive ...................xv
    E.    Ms. Vizguerra will soon have an application for military deferred action,
        the granting of which would moot out the withholding claim...............xvi

Case No. 1:25-cv-00881-NYW    Document 68-1    filed 10/31/25    USDC Colorado    pg
5 of 24
Uploaded on: 10/27/2025 at 10:03:51 PM (Mountain Daylight Time) Base City: AUR

## I.    Statement of Relevant Facts

### A.    IJ denial of cancellation and grant of voluntary departure in 2011

Ms. Vizguerra-Ramirez is a 53-year-old citizen of Mexico. In 1997, at the age of 25, she fled to the U.S. with her husband and daughter due to the persecution her husband experienced at his job from criminal organizations. The family entered the United States without inspection.

In 2009, Ms. Vizguerra-Ramirez was placed in removal proceedings. As a defense to removal, she applied for cancellation of removal, basing her claim on the hardship she believed would befall her three U.S. citizen children.

On November 18, 2011, an Immigration Judge in Denver denied Ms. Vizguerra-Ramirez's cancellation application, finding that she had not met the high standard for demonstrating her removal would constitute an exceptional and extremely unusual hardship. However, the Immigration Judge granted Ms. Vizguerra-Ramirez's alternate request for voluntary departure, giving her 60 days to leave the country in lieu of a removal order.

### B.    BIA appeal and tolling of voluntary departure period

On December 16, 2011, Ms. Vizguerra-Ramirez timely appealed the denial of her cancellation application to the Board of Immigration Appeals. Her timely appeal meant that her 60-day period of voluntary departure was tolled during the pendency of the appeal. 8 C.F.R. § 1003.6(a).

### C.    Departure and return while appeal pending

In September 2012, while her appeal remained pending, Ms. Vizguerra-Ramirez learned that her mother was dying. Wanting to see her one last time, Ms. Vizguerra-Ramirez flew back to Mexico. Her departure from the United States, by regulation, triggered a subsequent, automatic withdrawal of her appeal. 8 C.F.R. § 1003.4.

Having attended her mother's funeral and grieved with family in Mexico, Ms. Vizguerra-Ramirez returned to the U.S., without inspection, in April 2013. She was apprehended shortly after her entry and charged criminally for illegal entry, a misdemeanor, under 8 U.S.C. § 1325(a)(1), receiving a sentence of one year of unsupervised probation.

After being released from criminal custody, Ms. Vizguerra-Ramirez was turned over to ICE custody in El Paso, Texas, where she remained until June 7, 2013. Ms. Vizguerra-Ramirez was then released under an order of supervision, which required her to report to the Denver ICE Field Office in Centennial, Colorado.

### D.    Issuance of putative reinstatement order in 2013

On July 24, 2013, at her check-in, ICE officials detained Ms. Vizguerra-Ramirez. The next day, July 25, 2013, ICE officials presented her with a putative reinstatement order on Form I-871, which was filled out, signed and dated on both the top (notice of intent to reinstate) *and* bottom (final reinstatement order). Having been notified on July 25th that an order had already issued the day prior and without notice or opportunity to contest the determination, Ms. Vizguerra-Ramirez declined to sign the middle of the form. That order is attached and incorporated hereto as Exhibit A.

The putative reinstatement order dated July 24, 2013, is unambiguously facially deficient and does not satisfy the minimum regulatory definition of a reinstatement order. 8 C.F.R. § 241.8(b). It clearly indicates that ICE officials issued the order on July 24th *before* informing Ms. Vizguerra-Ramirez of its existence and of her right to raise an objection prior to the order becoming final. It also clearly indicates that the officer making the decision to reinstate did not review "all available evidence" or any "statements made or submitted in rebuttal" before signing the order portion of the form. Thus, the officer could not have credibly executed the required "Certification" by signing the putative order.

The procedural error was not immaterial. Had Ms. Vizguerra-Ramirez been notified of the possibility of a reinstatement order, she could have alerted officials to the fact that she did *not* have a prior removal order. Instead, she had a grant of voluntary departure that was issued in lieu of a removal order, and by leaving the U.S. while her appeal was pending, she necessarily complied with the order's departure deadline and did not leave *under* an order of removal. Absent a prior removal order, there was nothing to be reinstated in 2013.

### E.    ICE stay of removal in 2013

Perhaps aware of the procedural violation, ICE agents granted Ms. Vizguerra-Ramirez a stay of removal on August 8, 2013. Since that time, ICE repeatedly granted extensions of that stay of removal, with her most recent stay expiring in 2024. Under then-current guidance in 2024, Ms. Vizguerra-Ramirez was not an enforcement priority; an extension of stay was unnecessary and unlikely to be adjudicated.

Case No. 1:25-cv-00881-NYW    Document 68-1    filed 10/31/25    USDC Colorado    pg
7 of 24
Uploaded on: 10/27/2025 at 10:03:51 PM (Mountain Daylight Time) Base City: AUR

### F.    Detention in 2025

On Monday, March 17, 2025, Ms. Vizguerra-Ramirez was arrested by ICE agents while on her lunch break from work at Target. She was placed in shackles, photographed, and told in Spanish by one of the officers, "We finally got you!" She was transported to the GEO Aurora ICE Processing Center, where she has remained in custody.

### G.    Judicial and administrative challenges to detention and reinstatement

Following her detention, Ms. Vizguerra-Ramirez has challenged her detention and removal in three different forums.

#### 1.    Withholding of removal

In detention, Ms. Vizguerra-Ramirez expressed a fear of persecution or torture in Mexico. She has a long record of public criticism of systemic corruption and violence in Mexico, as well as the United States. Her activism has targeted abuses by the Mexican government, law enforcement, and cartel collusion, making her a visible and outspoken political dissident. Ms. Vizguerra-Ramirez's sincerely held and consistently demonstrated political beliefs arise out of her deeply held conviction that all people deserve basic, fundamental human rights and that governments and others must respect those rights. This includes basic protections for workers, the indigenous, migrants and women. Her beliefs and activism have, and will, make her a target for retribution by the Mexican government and by cartels that the government is unable or unwilling to control.

Officials from the USCIS Asylum Office, following a procedurally flawed and prejudicial initial screening, determined that Ms. Vizguerra-Ramirez did not establish a reasonable fear of persecution or torture. However, an Immigration Judge later reversed that determination, allowing Ms. Vizguerra-Ramirez to proceed with an application for withholding of removal under 8 U.S.C. § 1231(b)(3)(B) and protection under the Convention Against Torture ("CAT"), pursuant to 8 C.F.R. § 1208.16-18. The application is currently pending before an Immigration Judge with a merits hearing currently scheduled for November 6, 2025.

Case No. 1:25-cv-00881-NYW    Document 68-1    filed 10/31/25    USDC Colorado    pg
8 of 24
Uploaded on: 10/27/2025 at 10:03:51 PM (Mountain Daylight Time) Base City: AUR

## 2.    Habeas corpus

Ms. Vizguerra-Ramirez has challenged the legality of her detention before U.S. District Court, with her initial habeas petition filed on March 18, 2025, focused on the absence of a legally cognizable reinstatement order given the procedural defects on the face of the order. Case No. 1:25-cv-00881-NYM. On April 8, 2025, she filed an amended petition, adding a First Amendment retaliation claim. On September 29, 2025, she filed a second amended petition, adding a Fifth Amendment prolonged detention claim.

On October 20, 2025, the government filed its response the amended petition. A reply by Ms. Vizguerra is due no later than Monday, November 3, 2025. Undersigned counsel is actively working on that briefing.

| | | |
|---|---|---|
| 10/03/2025 | 66 | MINUTE ORDER: The 64 Joint Motion for Entry of Briefing Schedule is **GRANTED**. As set forth in the Joint Motion, no later than October 20, 2025, Respondents shall file a brief in response to the 61 Amended and Verified Petition for Writ of Habeas Corpus. Petitioner may file a reply brief no later than November 3, 2025. By Judge Nina Y. Wang on 10/3/2025. Text Only Entry(nywlc8, ) (Entered: 10/03/2025) |
| 10/20/2025 | 67 | RESPONSE to 61 Amended Application for Writ of Habeas Corpus by Defendants Juan Baltazar, Pamela Bondi, Dawn Ceja, Robert Guadian, Kristi NoemAttorney Benjamin Henry Gibson added to party Juan Baltazar(pty:dft). (Attachments: # 1 Exhibit A - Declaration of S. Blea)(Gibson, Benjamin) (Entered: 10/20/2025) |

## 3.    Petition for review

Ms. Vizguerra-Ramirez has the right to challenge the government's putative reinstatement order before the Tenth Circuit Court of Appeals, where she would argue that it was legal error to hold that a tolled grant of voluntary departure converts to a removal order if the recipient departs the U.S. during the pendency of her agency appeal. The deadline for filing a petition for review is 30 days. 8 U.S.C. § 1252(b)(1).

Ms Vizguerra-Ramirez did not file a petition for review within 30 days in 2013 because, at that time, a person with a reinstated order of removal could not seek judicial review until reasonable fear and withholding-only proceedings were finished. *See, e.g., Neri-Garcia v. Holder*, 696 F.3d 1003, 1008 (10th Cir. 2012) (PFR of denial of relief in reasonable fear proceedings was "timely filed" upon completion of the reasonable fear proceedings). Also in 2013, the only circuit to have directly addressed the issue held that a reinstated order of removal did not become final for purposes of § 1252(b)(1) until reasonable fear proceedings were completed. *Ortiz-Alfaro v. Holder*, 694 F.3d 955, 958 (9th Cir. 2012).

In 2014, the Tenth Circuit formally agreed with the Ninth, holding that a reinstatement order was not final for purposes of judicial review until the reasonable fear and withholding-only proceedings were finished. *Luna-Garcia v. Holder*, 777 F.3d 1182, 11185 (10th Cir. 2015). The Tenth Circuit later affirmed that holding in *Arostegui-Maldonado v. Garland*, 75 F.4th 1132, 1139 (10th Cir. 2023).

Case No. 1:25-cv-00881-NYW   Document 68-1   filed 10/31/25   USDC Colorado   pg
9 of 24
Uploaded on: 10/27/2025 at 10:03:51 PM (Mountain Daylight Time) Base City: AUR

In Ms. Vizguerra-Ramirez's case, her reasonable-fear and withholding proceedings were not completed within 30 days of the issuance of the reinstatement order. In fact, they had not even been started and would not start for over a decade. This is because ICE, despite issuing the putative reinstatement order in 2013, did not seek to immediately execute that order, instead granting Ms. Vizguerra-Ramirez a stay of removal, which it then renewed numerous times in the subsequent years.

Immediately following Ms. Vizguerra-Ramirez's detention in March, and faced with the prospect of immediate removal, she filed a precautionary petition for review with the Tenth Circuit, Case No. 25-9532. She later voluntarily withdrew that petition once she received confirmation that her reasonable-fear proceedings had been initiated, relying on *Luna-Garcia* and *Arostegui-Maldonado*, and anticipating that those protection claims would need to reach finality before she could seek judicial review of the underlying reinstatement order.

That reliance changed with the Supreme Court's decision in *Riley v. Bondi*, 145 S. Ct. 2190 (2025) on June 26, 2025. In *Riley*, the Supreme Court held that, for purposes of judicial review, a DHS-issued removal order, not the agency's decision at the conclusion of withholding-only proceedings, is the final removal order that triggers the 30-day filing deadline for a petition for review. In so holding, the Court overturned decisions from every court of appeals except the Second and Fourth Circuits holding that the deadline commences at the end of fear-based proceedings. This included an overruling of *Arostegui-Maldonado* in the Tenth Circuit. In addition, the Supreme Court held that the 30-day filing deadline is a non-jurisdictional claim-processing rule subject to equitable exceptions including waiver and forfeiture, and possibly equitable tolling.

Within 30 days of *Riley*, Ms. Vizguerra-Ramirez filed another petition for review, Case No. 25-9559. It is currently pending, with an opening brief due on October 14, 2025.

Undersigned counsel prepared and filed her opening brief by the Court's original deadline of October 14, 2025, without seeking any extension. The government's brief was original due on November 13, 2025. However, on October 15th, the government moved to abate the briefing schedule during the pendency of the government shutdown. The Tenth Circuit denied the abatement request, but moved the deadline for the government's responsive briefing to December 15, 2025.

A089-826-036
Page viii

Case No. 1:25-cv-00881-NYW    Document 68-1    filed 10/31/25    USDC Colorado    pg
10 of 24
Uploaded on: 10/27/2025 at 10:03:51 PM (Mountain Daylight Time) Base City: AUR

| | | |
|---|---|---|
| 10/14/2025 | _15_ 📄 | [11222704] Appellant/Petitioner's brief filed by Jeanette Vizguerra-Ramirez. Served on 10/14/2025 by email. Oral argument requested? Yes. Word/page count: 6704. This pleading complies with all required privacy and virus certifications: Yes. [25-9559] MRB [Entered: 10/14/2025 10:03 PM] |
| 10/15/2025 | 16 | [11222767] Minute order filed - the brief submitted by petitioner is accepted for filing. The parties will be notified via separate docket entry if paper copies are required. Respondent brief now due 11/13/2025 for Pamela J. Bondi. (Text Only - No Attachment) [25-9559] [Entered: 10/15/2025 08:14 AM] |
| 10/15/2025 | _17_ 📄 | [11222917] Motion filed by Respondent Pamela J. Bondi to abate case. Served on: 10/15/2025. Manner of service: email. This pleading complies with all required privacy and virus certifications: Yes. [25-9559] AAA [Entered: 10/15/2025 11:51 AM] |
| 10/15/2025 | _18_ | [11222974] Order filed by Clerk of the Court denying Attorney Motion for a Stay of the Briefing Schedule in Light of the Lapse of Appropriations filed by Respondent Pamela J. Bondi. However, the request for additional time is granted. Respondent brief now due 12/15/2025 for Pamela J. Bondi. No further extensions on the clerk's authority. Served on 10/15/2025. [25-9559] [Entered: 10/15/2025 01:04 PM] |

## H.    Enrollment of Ms. Vizguerra's daughter in the U.S. Air Force

<mark>On October 21, 2025, Ms. Vizguerra's adult, U.S. citizen daughter, Luna Baez Vizguerra, enlisted in the Regular Air Force for six years of active duty. See GUARANTEED TRAINING ENLISTMENT AGREEMENT / NON-PRIOR SERVICE / UNITED STATES AIR FORCE, attached as Ex. A.</mark>

# II.    Discussion

## A.    Ms. Vizguerra-Ramirez has raised serious legal issues in her petition for review that have a fair prospect of success

There is a substantial likelihood that Ms. Vizguerra-Ramirez will prevail on her petition for review at the Tenth Circuit. She has raised meritorious challenges regarding: (1) the procedural deficiencies with the 2013 putative order, and (2) the legal infirmity of the government's contention that she left the U.S. under an order of removal in 2012. Her arguments before the Tenth Circuit are summarized below.

### 1.    The Department cannot issue a final reinstatement order before considering any objections to that order.

The putative order dated July 24, 2013, is an invalid basis for removal. By the terms of its own regulations, the order is defective because it was issued prior to the expiration of the time during which Ms. Vizguerra-Ramirez was permitted to raise objections to the order. In fact, the record shows that the order was finalized and issued prior to the time when Ms. Vizguerra-Ramirez was even informed of her right to make a challenge.

In the first step of the reinstatement process, a DHS agent prepares a Notice of Intent to Reinstate Order, laying out the alleged facts concerning an individual's prior order, her identity, and her alleged unlawful reentry. 8 C.F.R. § 241.8(a). The

Uploaded on: 10/27/2025 at 10:03:51 PM (Mountain Daylight Time) Base City: AUR

preparing officer then signs and dates the upper portion of that document, Form I-871. In Ms. Vizguerra-Ramirez's case, this took place on July 24, 2013. Ex. A.

In the second step, the notice of intended reinstatement is provided to the non-citizen, and she is informed of her right to make a statement of objection, orally or in writing. 8 C.F.R. § 241.8(b) ("If the [individual] wishes to make . . . a statement, the officer shall allow the [individual] to do so and shall consider whether the [individual]'s statement warrants reconsideration of the determination."). The non-citizen is asked to sign the middle portion of Form I-871 as verification. In Ms. Vizguerra-Ramirez's case, this took place the next day, July 25, 2013, although she declined the offer of signing the form until she had a chance to talk to an attorney. Ex. A.

In the third step of this accelerated deportation procedure, after the non-citizen was afforded the opportunity to mount a challenge, a different DHS officer signs the bottom of the form, turning the intended reinstatement into an actual removal order. However, in Ms. Vizguerra-Ramirez'ss case, this happened even before she was notified of the right to challenge the reinstatement determination. The fix was already in—the Department had decided to reinstate no matter what objection Ms. Vizguerra raised. Ex. A. That violation of Ms. Vizguerra's due process protections renders any deportation premised on the July 24, 2013, order fatally defective.

## 2. A tolled grant of voluntary departure does not convert to a removal order if the recipient departs the U.S. during the pendency of her appeal

Even if the Department had abided by the regulations and refrained from issuing a reinstatement order until after it considered any objections to that order, Ms. Vizguerra-Ramirez would contend that her departure in September 2012 was not made "under an order of removal," and therefore she does not fall within the parameters of the reinstatement statute, 8 U.S.C. § 1231(a)(5).

The gist of the Department's position is that when Ms. Vizguerra-Ramirez departed the U.S. in September 2012 during the pendency of her Board appeal, her leaving made the IJ decision retroactively final as of November 18, 2011. And because Ms. Vizguerra-Ramirez voluntarily departed the U.S. more than 60 days after November 18, 2011, her voluntary departure order, which had been tolled during the pendency of her appeal, retroactively converted to a removal order, effective when the clock struck midnight on the morning of January 17, 2011. Such an interpretation would not be consistent with: (a) the withdrawal regulation, (b) the reinstatement statute, and (c) the statutory definition of finality.

A089-826-036

Page x

a.    **The withdrawal regulation requires that a reactivated
IJ order have the same effect as the original order**

The government's principal source of authority for its reading would be the
withdrawal regulation, at 8 C.F.R. § 1003.4. However, that regulation provides no
clear answer regarding the impact on a tolled period of voluntary departure—whether
that period starts at the moment of departure or retroactively starts at the time of the
IJ's decision. The regulation simply states the following:

> Departure from the United States of a person who is the subject of
> deportation or removal proceedings, except for arriving aliens as defined
> in § 1001.1(q) of this chapter, subsequent to the taking of an appeal, but
> prior to a decision thereon, shall constitute a withdrawal of the appeal,
> and the initial decision in the case shall be final *to the same extent as though
> no appeal had been taken.*

8 C.F.R. § 1003.4 (emphasis added).

So, what to make of the phrase "to the same extent as though no appeal had
been taken"? Ms. Vizguerra-Ramirez would posit that a commonsense reading
indicates an intention to put a person back in the position they would have occupied
at the time of the IJ decision if they had not appealed. In Ms. Vizguerra-Ramirez's
case, that would be as a person granted 60 days to leave the country, with a warning
that if she failed to leave within those 60 days, the voluntary departure order would
convert to a final order of removal. 8 C.F.R. § 1240.26 (noting that when granting
voluntary departure, the IJ "shall also enter an alternate order or removal," to become
effective if the terms of the voluntary departure order are violated). Under that
reading, with the 60 days only commencing on the date of Ms. Vizguerra-Ramirez's
departure in September 2012, she necessarily complied with the terms of her
voluntary departure grant and the alternate removal order never came into being.

Under the agency's interpretation, the IJ's order, which had been tolled during
the pendency of the appeal, not only became immediately effective following Ms.
Vizguerra-Ramirez's departure, but was backdated to the time of its initial issuance,
with the 60-day voluntary departure period retroactively commencing in November of
2011. But that is a strained reading of the regulation, given that it would not put Ms.
Vizguerra-Ramirez back in the same position as she occupied at the time of the IJ
order, with the ability to leave the country within 60 days so as not to have a removal
order on her record. Instead, the government's reading would put Ms. Vizguerra-
Ramirez in a worse position, with no ability to benefit from the IJ's grant. It would be

Case No. 1:25-cv-00881-NYW    Document 68-1    filed 10/31/25    USDC Colorado    pg
13 of 24
Uploaded on: 10/27/2025 at 10:03:51 PM (Mountain Daylight Time) Base City: AUR

as if the IJ in 2011 had only ordered removal and had not granted voluntary departure. Such a reading would violate the letter and spirit of the regulation, which requires the reawakened order to have the "same" effect as the original order.

> **b.    The reinstatement statute does not apply to individuals who did not have an order of removal at the time of their departure from the U.S.**

Even if the government's reading of the regulation is correct, that following Ms. Vizguerra-Ramirez's departure in September 2012, her 60-day voluntary departure period retroactively began in November 2011, she would still not fit within the four corners of the reinstatement statute. That provision reads as follows:

> Reinstatement of removal orders against aliens illegally reentering. If the Attorney General finds that an alien has reentered the United States illegally after having been removed or *having departed voluntarily, under an order of removal*, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this Act, and the alien shall be removed under the prior order at any time after the reentry.

8 U.S.C. § 1231(a)(5) (emphasis added).

Under the plain terms of the reinstatement statute, it does not apply to someone who, at the time of their voluntary departure, was not "under an order of removal." In other words, no matter the subsequent impact of Ms. Vizguerra-Ramirez's departure on her voluntary departure grant, at the time she first crossed the border into Mexico, she was not "under an order of removal." At the time of her departure, instead, she was the recipient of a 60-day voluntary departure grant that was tolled during the pendency of her appeal. 8 C.F.R. § 1003.6(a).

> **c.    Both interpretations of the withdrawal regulation possibly violate the statute on finality**

Lurking in the background is the possibility that the preferred interpretations of *both* the government and Ms. Vizguerra-Ramirez are wrong, to the extent that they are ultra vires with respect to the statute on finality. The government believes that following Ms. Vizguerra-Ramirez's September 2012 departure, the IJ's order immediately became administratively final, but with an effective date for the start of the voluntary departure period backdated to November 2011. Ms. Vizguerra-Ramirez, by contrast, believes that a better interpretation of the regulation is that the IJ's

Case No. 1:25-cv-00881-NYW    Document 68-1    filed 10/31/25    USDC Colorado    pg
14 of 24
Uploaded on: 10/27/2025 at 10:03:51 PM (Mountain Daylight Time) Base City: AUR

voluntary departure order achieved administrative finality on the date of her departure
in September 2012. As can be seen, both readings assume that administrative finality
can be triggered by departure. But that would appear to be contrary to the actual
statute on finality, 8 U.S.C. § 1101(a)(47)(B).

By law, a removal order can only become final when one of two things
happens: (1) the Board affirms an IJ's order of removal; or (2) the time allotted for
filing an administrative appeal has expired. 8 U.S.C. §1101(a)(47)(B). In Ms.
Vizguerra-Ramirez's case, she filed a BIA appeal prior to the expiration of the
regulatory 30-day deadline. 8 C.F.R. § 1003.38(b). Therefore, the second prong of §
1101(a)(47)(B) would be inapplicable. The Board then notified Ms. Vizguerra-Ramirez
on May 30, 2013, that her appeal was deemed withdrawn due to her departure, by
operation of 8 C.F.R. § 1003.4. Ex. F. But in doing so, the Board did not *affirm* the IJ's
decision. Accordingly, under the plain terms of the statute, that notice would not meet
the requirements of the first prong of § 1101(a)(47)(B). Instead, taking the statute at
face value, the IJ's order has never achieved administrative finality, leaving Ms.
Vizguerra-Ramirez in a bureaucratic purgatory. But of relevance to the issue in this
case, she could not have voluntarily departed in September 2012 while "under an
order of removal" because the order in her case, under the terms of § 1101(a)(47)(B),
could not have reached finality. As of the date of her departure, neither the first nor
second prongs of § 1101(a)(47)(B) applied.

The only way both the government and Ms. Vizguerra can claim that the
departure triggered finality is by relying on the withdrawal regulation, 8 C.F.R. §
1003.4. But in doing so, they would be implicitly acknowledging that the regulation's
drafters had, effectively, rewritten the finality statute. With this third mechanism for
triggering finality, the statute at 8 U.S.C. § 1101(a)(47)(B), as amended by regulation,
would read as follows:

(B)    The order described under subparagraph (a) shall become final
upon the earlier of—

(i)    a determination by the Board of Immigration Appeals affirming
such order; or

(ii)    the expiration of the [30-day] period in which the alien is
permitted to seek review of such order by the Board of Immigration
Appeals; or

(iii)    [departure from the United States, subsequent to the taking of an
appeal, but prior to a decision thereon].

A089-826-036
Page xiii

Case No. 1:25-cv-00881-NYW    Document 68-1    filed 10/31/25    USDC Colorado    pg
15 of 24
Uploaded on: 10/27/2025 at 10:03:51 PM (Mountain Daylight Time) Base City: AUR

The regulations therefore arguably broaden the scope of 8 U.S.C. §
1101(a)(47)(B) and violate the plain language of the statute. In cases where an appeal
is taken of an IJ's order, the statute only allows that order to become final following a
Board affirmance, but the regulation expands the statute by allowing for a departure
trigger in addition to an affirmance.

The notion that alternative, regulatory definitions of finality are inconsistent
with the plain language of the finality statute is supported by the Ninth Circuit's
decision in *Ocampo v. Holder*, 629 F.3d 923, 927 (9th Cir. 2010), which held that a
different regulation, 8 C.F.R. § 1241.1(f) (which says that finality commences at the
moment a respondent overstays a voluntary departure period and the alternate
removal order is triggered, rather than commencing at the time of the IJ's order) is
inconsistent with 8 U.S.C. § 1101(a)(47)(B). The *Ocampo* panel held that because the
statutory definition of finality was "clear and unambiguous that removal orders
become final only in these two circumstances," there was "no need to resort to" a
regulation providing a third alternative "for clarification." *Ocampo*, 629 F.3d at 927.
The *Ocampo* court further reasoned that allowing 8 C.F.R. § 1241.1(f)'s voluntary
departure expiration date to trigger finality, in the face of the plain language of 8
U.S.C. § 1101(a)(47)(B), would violate the rule that "'[a] regulation may not serve to
amend a statute, nor add to the statute something which is not there,' by 'effectively
amending 8 U.S.C. § 1101(a)(47)(B) to afford an additional circumstance when
removal orders become final that is not expressed in the statute.'" *Id.* (quoting *Cal.
Cosmetology Coal. v. Riley*, 110 F.3d 1454, 1460 (9th Cir. 1997)). *See also Ogunbode v. Barr*,
780 Fed. Appx. 628, 632 (10th Cir. 2019) (agreeing with the reasoning of *Ocampo*).

Just as 8 C.F.R. § 1241.1(f) was found to be invalid in *Ocampo*, because it
provided an alternative means of achieving finality not found in the statute, so too is it
possible that the withdrawal regulation at 8 C.F.R. § 1003.4 is legally infirm, since it
describes an alternate means of reaching finality—departure—that is not found in the
statute. It is possible that the only permissible way to read the statute is to look at its
plain language, which requires either a Board affirmance or the expiration of the 30-
day appeal period. 8 U.S.C. § 1101(a)(47)(B). Absent either of those two triggering
events, there can be no finality. And, in Ms. Vizguerra-Ramirez's case, because her
order never reached finality under the terms of the statute, she could not have left the
U.S. while "under a final order." And absent a final order, there was nothing for the
Department to later attempt to reinstate following her return.

Case No. 1:25-cv-00881-NYW    Document 68-1    filed 10/31/25    USDC Colorado    pg
16 of 23
Uploaded on: 10/27/2025 at 10:03:51 PM (Mountain Daylight Time) Base City: AUR

## B.    A decision from the Tenth Circuit is imminent

The arguments outlined above were presented to the Tenth Circuit in an opening brief filed October 14, 2025. The government's brief was supposed to be due November 13, 2025, but is now due a month later, on December 15, 2025, after the Court granted a government motion to delay briefing. After briefing is completed, the case will be ripe for a decision from the Tenth Circuit.

## C.    A positive decision from the Tenth Circuit would render moot any agency resources invested in adjudicating Ms. Vizguerra-Ramirez's withholding claim

Should the Tenth Circuit agree with Ms. Vizguerra-Ramirez that the government's putative reinstatement order is either procedurally or substantively flawed, then her withholding-only proceedings would be terminated, rendering pointless any Court or Department resources expended on a review of her protection claims. Even if the Department, following termination, initiated a new round of ordinary removal proceedings under INA § 240, Ms. Vizguerra-Ramirez would be able to pursue relief not currently available, to wit, cancellation of removal and asylum. Accordingly, a prudent course of action would be to wait for the Tenth Circuit to clarify the status of the government's putative 2013 reinstatement order before proceeding with an adjudication of Ms. Vizguerra-Ramirez's withholding claims.

## D.    Proceeding with a merits hearing on withholding at the same time Ms. Vizguerra-Ramirez's legal team is working on a District Court habeas brief would be unfairly burdensome and counterproductive

As noted above, Ms. Vizguerra-Ramirez is simultaneously pursuing claims before three courts, all while in detention—a habeas claim in federal district court, a petition for review in the circuit court, and withholding applications before this Court. While the generosity of Ms. Vizguerra-Ramirez's community supporters has helped defray some of the legal costs for this work, a considerable portion of the litigation—including the entirety of her withholding claims—is being done pro bono.

At the same time undersigned counsel will be preparing for the withholding merits on November 6th, she must also work on a reply brief due in U.S. District Court on Monday, November 3rd. The work is overwhelming.

Accordingly, even if the Court is not inclined to grant a continuance until proceedings at the Tenth Circuit are completed, she would respectfully move for a

Case No. 1:25-cv-00881-NYW   Document 68-1   filed 10/31/25   USDC Colorado   pg
17 of 24
Uploaded on: 10/27/2025 at 10:03:51 PM (Mountain Daylight Time) Base City: AUR

shorter abatement due to her need to focus on the habeas reply brief for the next several days, preventing work on the withholding claim.

She would also note two things with respect to the habeas claim. The first is that once her reply brief is submitted, there should be no further briefing at the District Court. So, this Court should not expect further requests for a continuance based on any District Court briefing deadline. Once the reply brief is submitted, the matter will be ripe for a decision.

The second is that a habeas victory, leading to Ms. Vizguerra's release from detention, would mean a change of venue to the non-detained docket and the mooting out of any pending hearing dates on the detained docket. Given the complexity of her withholding claim, it is highly likely that Ms. Vizguerra's hearing would have to extend beyond the 60 minutes currently allotted by the Immigration Court, likely being reset for a continued hearing on a later date. Given the possibility of release ordered by the District Court, it would serve judicial economy to make sure that the withholding claim starts and finishes before the same Immigration Judge. Accordingly, a brief continuance to await a habeas decision, now imminent, would be prudent.

### E. Ms. Vizguerra will soon have an application for military deferred action, the granting of which would moot out the withholding claim

As noted above, Ms. Vizguerra's daughter enlisted in the Air Force on October 21, 2025. Her entry date is on November 18, 2025, and at that time Air Force personnel will sign off on her enlistment paperwork, DD Form 4.

With proof that her daughter is serving in the Air Force, Ms Vizguerra will apply for military-based deferred action with USCIS. Deferred action is a form of prosecutorial discretion to defer removal action (deportation) against an individual for a certain period of time. If USCIS grants deferred action, DHS considers the person to be lawfully present in the United States for the period deferred action is in effect. Under current guidelines, a person can receive deferred action in increments of two years. Some people qualify for deferred action due to their status as the parent of an active-duty member of the U.S. armed forces. *See* 'Discretionary Options for Military Members, Enlistees and Their Families,' available at:
https://www.uscis.gov/military/discretionary-options-for-military-members-enlistees-and-their-families

==Ms. Vizguerra will be seeking deferred action once her daughter starts her training and is provided the DD Form 4 Enlistment Document. She believes she could make a strong case for a discretionary grant based on her minimal criminal record, long presence in the U.S., family connections, and contributions to the community in her role as union organizer and activist.==

==If deferred action is granted, Ms. Vizguerra would not have an immediate fear of persecution or torture in Mexico given her temporary protection in the U.S. through other means. Any withholding claim would necessarily have to be held in abeyance pending a future time when removal again became imminent. Accordingly, it would be prudent for the Court to postpone the current hearing date pending the outcome of the anticipated request for military deferred action.==

WHEREFORE, for the reasons articulated above, the Respondent respectfully moves for a continuance in these proceedings.

DATED: October 27, 2025

Respectfully submitted,


s/ Laura L. Lichter
Laura L. Lichter, Esq.
Lichter Immigration
1601 Vine Street
Denver, CO 80206
(303) 554-8400
LLichter@LichterImmigration.com

COUNSEL FOR RESPONDENT


INDEX OF EXHIBITS

| Ex. | Document | Pages |
|-----|----------|-------|
| A | GUARANTEED TRAINING ENLISTMENT AGREEMENT \| NON-PRIOR SERVICE \| UNITED STATES AIR FORCE<br>• Signed by Ms. Vizguerra's adult, U.S. citizen daughter on October 21, 2025. | 1-4 |

| GUARANTEED TRAINING ENLISTMENT AGREEMENT NON-PRIOR SERVICE - UNITED STATES AIR FORCE | ANNEX A TO DD FORM 4 *(See instructions on reverse)* |
|---|---|

**PRIVACY ACT STATEMENT**

AUTHORITY: 10 U.S.C., Chapter 31, Enlistments; AFI 36-2002, Enlisted Accessions; AFI 36-2013, Officer Training School (OTS) and Enlisted Commissioning Programs (ECPS); Executive Order 9397 (SSN), as amended.

PURPOSE: To determin enlistment eligibility or process qualified applicants, classification and assignment actions after enlistment.

ROUTINE USES: In addition to those disclosures generally permitted under 5 U.S.C. 552a(b) of the Privacy Act of 1974, as amended, these records contained therein may specifically be disclosed outside the DoD as a routine use pursuant to 5 U.S.C. 552a(b)(3). DoD 'Blanket Routine Uses' published at the beginning of the Air Force's compilation of system of records notices apply.

DISCLOSURE: Voluntary. However failure to furnish personal identification information may negate the enlistment/reenlistment application.

SORN(s): F036 AF PC H, Air Force Enlistment/Commissioning Records System.

| SECTION I | TERMS OF ENLISTMENT AGREEMENT |
|---|---|

A. FOUR-YEAR ENLISTMENT. I am enlisting in the Regular Air Force in the pay grade E-1 for FOUR years of active duty. I have been counseled on my enlistment grade entitlement and have no claim to a higher grade. I understand my date of rank (DOR) is my date of Regular Air Force enlistment. I may not apply for retraining into another Air Force Specialty (AFS) until I have completed 35 months service. Additionally, I have been counseled on the six-year enlistment program, any enlistment bonus programs available, and decline the option or it is not available for my enlistment. (    )

B. SIX-YEAR ENLISTMENT. I am enlisting in the Regular Air Force in the pay grade E-1 for SIX years of active duty. I have been counseled on my enlistment entitlement and have no claim to a higher grade. I understand my DOR is my date of Regular Air Force enlistment. If enlisting in pay grade E-1 or E-2, I also understand I will be promoted to the pay grade of E-3 upon completion of technical training or completion of 20 weeks of technical training, whichever occurs first. I understand my DOR for A1C will then be adjusted to the date I completed Basic Military Training without back pay and allowances. I further understand, MY TERM OF ENLISTMENT WILL NOT BE REDUCED IF I AM RECLASSIFIED INTO ANOTHER AFS. Additionally, I understand that I may not apply for retraining into another AFS until I have completed 59 months service. (    )

C. GUARANTEED TRAINING ENLISTMENT PROGRAM (GTEP). I am guaranteed training and a first regular assignment in AFS

    Tact Acft Maint 5th Gen (2A337)                                          , I understand "first regular

assignment" refers to the first duty location after completion of technical training. I have read my computer reservation agreement printout or a description of the typical duties in the above AFS and I understand I can be assigned to any or all of the tasks within the AFS. I further understand the intent of the Air Force is to retain me in my guaranteed AFS for my complete enlistment, but the Air Force needs come first. In the event of mission changes, Air Force-wide conversion in my AFS, my disqualification from my AFS at any time, or other Air Force requirements, the Air Force cannot guarantee tenure in my AFS. Additionally, I understand the following conditions apply:

1. I will receive additional screening: medical, moral, background, etc., during and after Basic Military Training (BMT) which may affect my qualifications for the Air Force and my guaranteed specialty.

2. If I am disqualified from my selected AFS through no fault of my own based on additional screening, I may be involuntarily discharged from the Air Force or reclassified into another AFS based on the needs of the Air Force. My aptitude scores and preferences will be considered in the reclassification decision. If reclassified, I may choose to (a) complete my enlistment in another available AFS for which I am qualified, or (b) request separation from the Air Force.

3. My Guaranteed Training Enlistment Agreement is contingent upon my on-time completion of BMT. If for any reason I am unable to graduate BMT as scheduled (based upon my actual date of entry), this enlistment agreement as it pertains to my AFS guarantee may be voided. In that event, I may be involuntarily discharged from the Air Force, or reclassified into another AFS based on the needs of the Air Force, although my aptitude scores and preferences will be considered. If reclassified, I will complete my enlistment in another available AFS for which I am qualified. I may request separation; however, approval will be based on the needs of the Air Force.

4. My Guaranteed Training Enlistment Agreement is contingent upon my on-time completion of my initial skills training (award of AFS). If for any reason I am unable to complete initial skill-level training as scheduled (based upon my actual date of entry), this enlistment agreement as it pertains to my AFS guarantee may be voided. In that event I may be involuntarily discharged or reclassified into another AFS based on the needs of the Air Force. Again, my aptitude scores and preferences will be considered in the decision. If reclassified, I will complete my enlistment in the new AFS.

5. If I fail to complete training because of ACADEMIC DEFICIENCY, MISCONDUCT, DISQUALIFICATIONS I HAVE CONCEALED, OR OTHER ACTIONS FOR WHICH I AM RESPONSIBLE, I will have voided this enlistment agreement as it pertains to my AFS guarantee. In that event I may be involuntarily discharged or reclassified into another AFS based on the needs of the Air Force. Again, my aptitude and preferences will be considered in the decision. If reclassified, I will complete my enlistment in the new AFS.

6. If prior to award of the apprentice skill level in my guaranteed AFS, I discover any failure by the Air Force to honor its agreement concerning my guaranteed specialty, I must notify my squadron commander in writing within 30 days of discovery or I waive the option to choose another specialty or request separation under this agreement.

7. My failure to maintain Air Force standards, or to perform assigned duties (including, but not limited to; security, firing of weapons, or operations) will result in my involuntary discharge or other appropriate actions. I also understand I may be required to bear arms and fire weapons, regardless of the AFS I am performing. (    )

D. REMARKS:  Baez Vizguerra, Luna S. 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

| AF FORM 3007, 20170522 | PREVIOUS EDITIONS ARE OBSOLETE | PRIVACY ACT INFORMATION: The information in this form is FOR OFFICIAL USE ONLY. Protect IAW the Privacy Act of 1974. |

A089-826-036

Page 1

Case No. 1:25-cv-00881-NYW   Document 68-1   filed 10/31/25   USDC Colorado   pg
20 of 24
Uploaded on: 10/27/2025 at 10:03:51 PM (Mountain Daylight Time) Base City: AUR

E. APPLICANT INFORMATION. I understand that leave is granted during training status only for emergencies. If I am a non-US citizen I must attain US citizenship to be eligible for reenlistment in the Air Force. I understand I cannot apply for any pre-commissioning or commissioning program until I have served at least one year on active duty. Furthermore, I understand if I receive an initial enlistment bonus, I am ineligible to apply for those programs until I have completed at least half on my initial term of enlistment. I am obligated to be available for duty 24 hours per day, seven days a week regardless of religious obligations or practices. I further understand accommodation of worship or other unique religious practices, such as waiver of immunizations or medical treatment, dietary laws, or wear of particular religious garb, cannot be guaranteed at all times but will depend on military necessity. I also understand my Home of Record and Place of Enlistment as recorded cannot be changed while I am in the Air Force. I have been briefed on my responsibility to participate in the Air Force Direct Deposit Program. I have seen the basic the basic training film, and the following additional film(s):

None                                                      (     )

| SECTION II | ACKNOWLEDGMENT AND REVIEW ON DATE OF ENLISTMENT |
|---|---|

This is my official agreement with the U.S. Air Force, and it lists all promises guaranteed to me by any Air Force representative in regard to enlistment grade, job training, assignments, future promotions, and all other personnel actions. On the day of my enlistment and prior to taking the oath of enlistment, I have carefully reviewed this Form and all other documents. I fully understand that ANY PROMISE MADE BY ANYONE (ORAL OR WRITTEN) TO ME THAT IS NOT IDENTIFIED ON THIS FORM WILL NOT BE HONORED BY THE AIR FORCE. My initials in paragraphs that apply to me and my signature below constitute my UNDERSTANDING AND ACCEPTANCE OF THIS ENLISTMENT AGREEMENT.

| DATE | NAME (Last, First, Middle Initial) | SSN | SIGNATURE OF APPLICANT |
|---|---|---|---|
| 21 OCT 2025 | Baez Vizguerra, Luna S. | 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 | Luna Baez |

| SECTION III | VERIFICATION BY USAF REPRESENTATIVE |
|---|---|

On the date of applicant's enlistment, I discussed each applicable entry on this Form with the applicant. I have personally verified enlistee meets the requirements for enlistment options chosen.

| DATE | NAME AND GRADE OF USAF REPRESENTATIVE | SIGNATURE OF REPRESENTATIVE |
|---|---|---|
| 21 OCT 2025 | Felicia Holly, CIV | |

## COMPLETION INSTRUCTIONS

**General Instructions:** Indicate appropriate Annex to DD Form 4 on top of form. Air Force representative lines out non-applicable paragraphs and completes blank spaces in applicable paragraphs. Use AF Form 3008 only if additional agreements or remarks are required, and annotate applicable paragraphs from AF Form 3008 in Paragraph E, Remarks. Applicant initials after each applicable paragraph and signs in appropriate block.

**Section I.** Ensure all blanks are filled in as follows:

Paragraph A. Complete for four-year enlistee. Fill in numeric number for pay grade authorized, either 1, 2, or 3. DO NOT ENTER RANK.

Paragraph B. Complete for six-year enlistee. Fill in numeric number for pay grade authorized, either 1, 2, or 3. DO NOT ENTER RANK.

Paragraph C. Enter AFSC and Air Force Specialty.

Paragraph D. Enter remarks, date remarks were added, and have applicant initial after remarks, or enter "none" and have applicant initial. Use AF Form 3008 as required for additional remarks. The following are mandatory remarks, as applicable:

    1. If applicant has supplemental agreement(s) on AF Form 3008, enter:

        "AF Form 3008, paragraph(s) _____ and _____ , supplements this enlistment agreement".

    2. If applicant is not DEP eligible or does not enter DEP in the time frame specified by the USAFRS within receipt of job reservation, enter:

        "I accept the terms of my enlistment agreement."  (Signature and Date.)

    3. If this form supersedes a previous form, enter:

        "This form supersedes AF Form 3005 (or 3007), dated (enter date)." Additionally, void the superseded form by crossing through the agreement and writing "VOID" across the face of the form with signature of Air Force representative and date voided. The new agreement will be annex "A" if original was "C" and "B" if original was "D" (if originals were "A" and "B" then use "C" and "D"). When more than one agreement is void, retain only the original enlistment document voided and include a short memo for record on the new agreement of all voided agreements. Ensure the following information is provided in the memo: (Form number, date signed, date agreement was voided and reason for change).

    4. If applicant is entering an AFSC authorized an Enlistment Bonus option and declines the option, enter:

        "I was counseled on the Enlistment Bonus option and decline the option." (Date and applicant initials.)

    5. Refer to appropriate directives for any additional remarks.

**Section II.** Include any designations of applicant's name such as JR., III, etc. Ensure applicant's initials are in appropriate paragraphs in Section I and II and applicant signs document on date of enlistment (DEP or Reg AF).

**Section III.** USAF Representative ensures applicant has initialed in applicable paragraphs and witnesses applicant's signature. Ensure appropriate waivers or source documents have been obtained before signing document.

| AF FORM 3007, 20170522 | PREVIOUS EDITIONS ARE OBSOLETE | PRIVACY ACT INFORMATION: The information in this form is FOR OFFICIAL USE ONLY. Protect IAW the Privacy Act of 1974 |
|---|---|---|

SUPPLEMENT TO ENLISTMENT AGREEMENT - UNITED STATES AIR FORCE | ANNEX B    TO DD FORM 4
*(See instructions on reverse)*

## PRIVACY ACT STATEMENT

*AUTHORITY: 10 U.S.C., Chapter 31, Enlistments; AFI 36-2002, Enlisted Accessions; AFI 36-2013, Officer Training School (OTS) and Enlisted Commissioning Programs (ECPS); Executive Order 9397 (SSN), as amended.*

*PURPOSE: To determine enlistment eligibility or process qualified applicants; classification and assignment actions after enlistment.*

*ROUTINE USES: In addition to these disclosures generally permitted under 5 U.S.C. 552a(b) of the Privacy Act of 1974, as amended, these records contained therein may specifically be disclosed outside the DoD as a routine use pursuant to 5 U.S.C. 552a(b)(3). DoD 'Blanket Routine Uses' published at the beginning of the Air Force's compilation of systems of records notices apply.*

*DISCLOSURE: Voluntary. However failure to furnish personal identification information may negate the enlistment/commissioning application.*

*SORN(s): F036 AF PC H, Air Force Enlistment/Commissioning Records System*

### I. ADDITIONAL TERMS OF ENLISTMENT AGREEMENT

**A. INITIAL ENLISTMENT BONUS OPTION.** I understand that upon completion of technical training and award of the three skill level in my guaranteed Air Force Specialty Tact Acft Maint 5th Gen (2A337), I will be authorized payment of an initial enlistment bonus in the amount of $ 0 payable not earlier than one month after arrival at my first permanent duty station. I further understand, as defined by the DOD Military Pay and Allowance Entitlements Manual, that should I voluntarily or involuntarily not complete the term of obligated service for which the bonus is paid, or should I not maintain qualification in the bonuses AFS, I may be required to repay the unearned portion of the bonus. In the event any administrative action is initiated by the or the Air Force that could result in the need to recoup bonus payments, I consent to the withholding of a portion of may current pay in anticipation of that indebtedness. Such held pay shall be paid to me if it is later determined that recoupment is not required. (        )

**B. 1C231 OR 1T231 ENLISTMENT OPTION.** I understand that I am enlisting with the guaranteed AFS Tact Acft Maint 5th Gen (2A337). I further understand that, although I have already been administered the Physical Abilities and Stamina Test (PAST) locally, I will be readministered the test in Basic Military Training. Failure to requalify on the PAST will result in loss of my guaranteed AFS through my own fault. I realize that I am a volunteer for Flight Duty, Parachute Duty and Diving Duty. I understand any action, to include self-initiated elimination, which results in my elimination from training may result in discharge from the Air Force. I waive any entitlement I have to remain in the Air Force and be reclassified. I may be retained and reclassified in the Air Force based on mission requirements and needs of the Air Force. (        )

**C. BUDDY SYSTEM.** *(Note: All individuals must be of the same sex)* I am enlisting with *(enter names)).*

**D. GUARANTEED ASSIGNMENT.** My assignment after training will be to Tact Acft Maint 5th Gen (2A337) for a minimum of twelve (12) months, providing I continue to meet Air Force standards and remain qualified in my enlisting skill. This option may be voided by a national emergency or by mission changes affecting requirements for my enlisting skill at my base or country of choice. (        )

**E. REMARKS.** Pay Grade = E-1

### II. ACKNOWLEDGMENT AND REVIEW ON DATE OF ENLISTMENT

This supplements my official enlistment agreement with the United States Air Force, and it lists all additional promises guaranteed to me by any Air Force representative in regard to enlistment grade, job, training, future assignments, future promotions, and all other personnel actions. On the day of my enlistment and prior to taking the oath of enlistment, I have carefully reviewed this form and all other documents. I fully understand that any oral or written promise that is not identified on my enlistment agreement and this IMT will not be honored by the Air Force. My signature below constitutes my understanding and acceptance of this enlistment agreement.

| DATE | NAME OF APPLICANT  *(Last, First, Middle Initial)* | SSN | SIGNATURE OF APPLICANT |
|---|---|---|---|
| 21 OCT 2025 | Baez Vizguerra, Luna S. | 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 | Luna Baez |

### III. VERIFICATION BY USAF REPRESENTATIVE ON DATE OF ENLISTMENT

| DATE | NAME AND GRADE OF USAF REPRESENTATIVE | SIGNATURE OF USAF REPRESENTATIVE |
|---|---|---|
| 21 OCT 2025 | Felicia Holly, CIV | |

**AF FORM 3008, 20170522**    PREVIOUS EDITIONS ARE OBSOLETE    PRIVACY ACT INFORMATION: The information in this form is FOR OFFICIAL USE ONLY. Protect IAW the Privacy Act of 1974.

EOIR — 20 of 23

## COMPLETION INSTRUCTIONS

General Instructions: Indicate appropriate Annex to DD Form 4 on the of this IMT. The Air Force representative completes blank spaces in applicable paragraphs, lists applicable paragraphs on the applicant's Enlistment Agreement, and lines out nonapplicable paragraphs. Applicant initials after each applicable paragraph and signs appropriate block.

Section I.   Ensure all blanks are filled in as follows:

Paragraph A.   Use only if Enlistment Bonus (IEB) is authorized, and applicant accepts. Use extreme care in completing this paragraph. Enter the Air Force Specialty Code (AFSC) and Air Force Specialty (AFS) in the first blank, in the second, enter the dollar amount of IEB authorized.

Paragraph C.   This paragraph is used for Non-prior Service (NPS) enlistees who are of the same sex being assigned to BMT together. Enter name(s). Use Remarks section if more space is required.

Paragraph D.   Use for guaranteed base or country of choice enlistment option. Enter country or base.

Paragraph E.   Enter remarks and have applicant initial after remarks, or enter "none" and have applicant initial. The following are mandatory remarks, as applicable:

    1.   If applicant is not Delayed Enlistment Program (DEP) eligible  or does not enter the DEP in the time frame specified by U.S. Recruiting Service within receipt of job reservation, enter:

      "I accept the terms of my enlistment agreement.    *Signature and Date*."

    2.   If this IMT supersedes a previous IMT/form, enter:

      "This IMT supersedes AF IMT 3008 dated   *(enter date)*".

    3.   Use any other additional remarks as required by appropriate directives.

Section II.   Ensure applicant initials in appropriate paragraphs in Sections I and II and signs document on date of enlistment   *(DEP or Reg AF).*

Section III.   USAF Representative ensures applicant has initialed in applicable paragraphs and witnesses applicant's signature. Ensure appropriate waivers or source documents have been obtained before signing document.

AF FORM 3008, 20170522          PREVIOUS EDITIONS ARE OBSOLETE

Case No. 1:25-cv-00881-NYW   Document 68-1   filed 10/31/25   USDC Colorado   pg
23 of 24
Uploaded on: 10/27/2025 at 10:03:51 PM (Mountain Daylight Time) Base City: AUR

## UNITED STATES DEPARTMENT OF JUSTICE
## EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
## AURORA IMMIGRATION COURT

Respondent's Name:                        |
                                          |   A-Number:
    VIZGUERRA-RAMIREZ, Jeanette           |   089-826-036
                                          |
                                          |
To:                                       |
    Lichter, Laura L.                     |   In Withholding-Only Proceedings
    Lichter Immigration                   |   Initiated on May 20, 2025
    1601 Vine Street                      |
    Denver, CO 80206                      |

## ORDER OF THE IMMIGRATION JUDGE

Respondent has filed the following motion in these proceedings:

Motion to Continue. The hearing is set for November 6, 2025, at 1:00 p.m.

After considering the facts and circumstances, the motion is [  ] granted [  ] denied for the
following reason(s):

_____

Immigration Judge: Ivan E. Gardzelewski
Date:

Appeal:    Department of Homeland Security:    [  ] waived    [  ] reserved
           Respondent:                         [  ] waived    [  ] reserved

## Certificate of Service

This document was served:
Via: [M] Mail | [P] Personal Service | [E] Electronic Service | [U] Address Unavailable
To: [  ] Noncitizen | [  ] Noncitizen c/o custodial officer | [  ] Noncitizen's atty/rep. | [  ] DHS
Respondent's Name:   VIZGUERRA-RAMIREZ, Jeanette  |  A-Number: 089-826-036

Date: _____    By: _____, Court Staff

EOIR — 22 of 23

Case No. 1:25-cv-00881-NYW    Document 68-1    filed 10/31/25    USDC Colorado    pg
24 of 24
Uploaded on: 10/27/2025 at 10:03:51 PM (Mountain Daylight Time) Base City: AUR

**In the Matter of:  Jeanette VIZGUERRA-RAMIREZ**


**A Number:          089-826-036**


## CERTIFICATE OF SERVICE

Service was completed through ECAS. For purposes of ECAS service, DHS is always considered to be participating in ECAS.


s/ Laura L. Lichter                          October 27, 2025
Laura L. Lichter                             Date

A089-826-036