**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 25-cv-00881-NYW

JEANETTE VIZGUERRA-RAMIREZ,

      Petitioner-Plaintiff,

v.

JUAN BALTAZAR,
ROBERT GUADIAN,
KRISTI NOEM, and
PAMELA BONDI,

      Respondents.

---

## MEMORANDUM OPINION AND ORDER

---

This matter is before the Court on the following filings submitted by Petitioner Jeanette Vizguerra-Ramirez ("Petitioner" or "Ms. Vizguerra-Ramirez"):

(1)    The Amended and Verified Petition for Writ of Habeas Corpus ("Second Amended Petition"), [Doc. 61];

(2)    Petitioner's Verified Motion to Clarify Scope of Temporary Restraining Order ("Motion to Clarify"), [Doc. 31];

(3)    Petitioner's Motion for Expedited Discovery, [Doc. 37]; and

(4)    Petitioner's Motion for Release on Bond or, in the Alternative, a Preliminary Injunction Ordering Release Pending a Final Judgment ("Motion for Release"), [Doc. 45].

All filings are fully briefed. Upon review, the Court concludes that oral argument would not materially assist in the disposition of the Second Amended Petition or the Motions.

For the reasons set forth herein, the Second Amended Petition is respectfully **GRANTED in part**, **TAKEN UNDER ADVISEMENT in part**, and **DISMISSED in part without prejudice**.  The Motion to Clarify is **DENIED**.  The Motion for Expedited Discovery is **TAKEN UNDER ADVISEMENT**.  The Motion for Release is **DENIED as moot**.

## BACKGROUND

The following facts are drawn from the Second Amended Petition and the exhibits submitted by the Parties.  Many of the basic facts of this case are undisputed, and the Court notes disputed facts as relevant.

Ms. Vizguerra-Ramirez is a native and citizen of Mexico.  [Doc. 61 at ¶ 6].  She entered the United States without inspection in 1997 and 2013 and has no current lawful status.  [*Id.* at ¶¶ 6, 11, 16].  She has lived in the United States for nearly thirty years, and three of her four children are U.S. citizens.  [*Id.* at ¶ 6].

Ms. Vizguerra-Ramirez was first placed in removal proceedings in 2009.  [*Id.* at ¶ 12].  In November 2011, an immigration judge denied Ms. Vizguerra-Ramirez's application for cancellation of removal.  [*Id.* at ¶ 13].  The immigration judge granted Ms. Vizguerra-Ramirez's request for voluntary departure and ordered her to do so within 60 days.  [*Id.*]; *see also* [Doc. 16-1 at ¶ 7].  Ms. Vizguerra-Ramirez appealed to the Board of Immigration Appeals ("BIA").  [Doc. 61 at ¶ 14].  While the appeal was pending, she voluntarily departed to Mexico, triggering an automatic withdrawal of the appeal.  [*Id.* at ¶ 15]; 8 C.F.R. § 1003.4 (2025).

In April 2013, Ms. Vizguerra-Ramirez reentered the United States without inspection.  [Doc. 61 at ¶ 16].  She was apprehended shortly thereafter and charged with

and convicted of illegal reentry.  [*Id.*].  In June 2013, Ms. Vizguerra-Ramirez was released under an order of supervision that required her to report to a U.S. Immigration and Customs Enforcement ("ICE") Field Office in Centennial, Colorado.  [*Id.* at ¶ 17].

On July 24, 2013, ICE officials detained Ms. Vizguerra-Ramirez at her check-in. They presented her with a Form I-871, i.e., a Notice of Intent/Decision to Reinstate Prior Order, that purported to reinstate the immigration judge's November 2011 order as an order of removal ("July 2013 Reinstatement Order").  [*Id.* at ¶ 18; *id.* at 52].  Ms. Vizguerra-Ramirez declined to sign the form.  She contends that the July 2013 Reinstatement Order was (and is) deficient under 8 C.F.R. § 241.8(b) because it appears that ICE officials finalized the order before informing her of her right to challenge the reinstatement decision.  [*Id.* at ¶¶ 18–20, 89, 91].  Ms. Vizguerra-Ramirez subsequently sought and received successive stays of removal through 2016.  [Doc. 16-1 at ¶¶ 17–22].

In February 2017, however, ICE denied Ms. Vizguerra-Ramirez's application for a further stay of removal and instead issued a Notice of Revocation of Release.  [*Id.* at ¶ 23].  Ms. Vizguerra-Ramirez did not report to ICE and took sanctuary at a church in Denver.  [*Id.* at ¶ 24; Doc. 61 at ¶ 31].  This incident garnered Ms. Vizguerra-Ramirez "significant national attention" as an immigration activist, including a feature as one of Time Magazine's "100 most influential people" in April 2017.  [Doc. 61 at ¶ 31].  Starting in December 2021, ICE granted Ms. Vizguerra-Ramirez several more stays of removal that ultimately expired in February 2024.  [Doc. 16-1 at ¶¶ 27–28].

On March 17, 2025, ICE agents detained Ms. Vizguerra-Ramirez while she was on her lunch break.  [Doc. 61 at ¶ 22].  She was handcuffed and photographed.  [*Id.*]. One agent allegedly told her, "We finally got you!"  [*Id.*].  The Denver ICE account on X

(formerly Twitter) posted a picture of Ms. Vizguerra-Ramirez in handcuffs and chains during her arrest, which was "amplified" by the main ICE X account with a comment including the statement that "[a] high-profile status does not exempt a person from immigration law."  [*Id.* at ¶ 32(a)].  Tricia McLaughlin, the Assistant Secretary for Public Affairs within DHS ("Assistant Secretary McLaughlin"), also posted on X that "Under President Trump and Secretary Noem, we are once again a nation of laws.  We will find, arrest, and deport illegal aliens regardless of if they were a featured 'Time Person of the Year.'"  [*Id.* at ¶ 32(b)].

Ms. Vizguerra-Ramirez was transported to an ICE detention facility in Aurora, Colorado, where she has remained in custody.  [*Id.* at ¶ 22]; *see also* [Doc. 67-1 at ¶ 3]. Damian Morales, an ICE Deportation Officer, has submitted a Declaration averring that Ms. Vizguerra-Ramirez is detained, and will be deported, based on the July 2013 Reinstatement Order.  [Doc. 16-1 at ¶ 30].

Soon after arriving in detention, Ms. Vizguerra-Ramirez expressed a fear of return to Mexico.  [Doc. 67-1 at ¶ 4].  An immigration judge subsequently found that she had established a reasonable possibility that she would be persecuted in Mexico on the basis of a protected ground.   [*Id.* at ¶ 9].   Ms. Vizguerra-Ramirez's withholding-only proceedings, which seek to determine whether she may be removed to Mexico, are currently ongoing.  [*Id.* at ¶ 24; Doc. 68-2]; *see also Johnson v. Guzman Chavez*, 594 U.S. 523, 530–32 (2021) (describing withholding-only process).

The day after she was detained, Ms. Vizguerra-Ramirez commenced this lawsuit by filing a Petition for Writ of Habeas Corpus ("Original Habeas Petition") against the Warden of the Aurora ICE Processing Center, now Juan Baltazar; the Acting Director of

ICE's Denver Field Office, now Robert Guadian; Kristi Noem, the Secretary of the United States Department of Homeland Security; and Pamela Bondi, the United States Attorney General (collectively, "Respondents"). [Doc. 1]. The Court ordered Respondents to show cause why Ms. Vizguerra-Ramirez's petition should not be granted. [Doc. 9]. The Court further ordered Respondents not to remove Ms. Vizguerra-Ramirez from the District of Colorado or the United States until further order by this Court or the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit"). [Doc. 11]. On April 29, 2025, Ms. Vizguerra-Ramirez filed the Motion to Clarify, asking the Court to "clarify" that its order prohibiting Ms. Vizguerra-Ramirez's removal also extends to certain procedural actions by Respondents. [Doc. 31]. After amending her Original Habeas Petition to add a claim for First Amendment retaliation, [Doc. 26], Ms. Vizguerra-Ramirez moved for expedited discovery, [Doc. 37], and immediate release, [Doc. 45].

The operative Second Amended Petition includes four claims. First, Ms. Vizguerra-Ramirez brings two related claims based on her argument that the July 2013 Reinstatement Order is insufficient to provide a basis for detention, such that her detention violates both the Fifth Amendment and 8 U.S.C. § 1231(a)(5) and its implementing regulations (the "Reinstatement Order Claims"). [Doc. 61 at ¶¶ 87–92]. The relevant regulation provides that:

> If an officer determines that an alien is subject to removal under this section, he or she shall provide the alien with written notice of his or her determination. The officer shall advise the alien that he or she may make a written or oral statement contesting the determination. If the alien wishes to make such a statement, the officer shall allow the alien to do so and shall consider whether the alien's statement warrants reconsideration of the determination.

8 C.F.R. § 241.8(b) (2025). Ms. Vizguerra-Ramirez argues, in essence, that

Respondents finalized their determination before informing her of her right to contest the determination and failed to consider her statement in opposition.  [Doc. 61 at ¶¶ 89, 91].

Next, she contends that her detention, combined with subsequent "procedural violations and irregularities," amounts to unlawful retaliation for her immigration-related advocacy, in violation of the First Amendment (the "First Amendment Claim").  [*Id.* at ¶¶ 93–97].  Ms. Vizguerra-Ramirez's Motion for Expedited Discovery and Motion for Release both relate to her First Amendment Claim.

Finally, she claims that to the extent she is detained under 8 U.S.C. § 1231(a), her detention is now unreasonably prolonged under the Fifth Amendment (the "Prolonged Detention Claim").  [*Id.* at ¶¶ 98–124].  Respondents have responded to each claim as it was added to the case, [Doc. 16; Doc. 30; Doc. 67], and Ms. Vizguerra-Ramirez has replied, [Doc. 18; Doc. 39; Doc. 68].  The Motion to Clarify, Motion for Expedited Discovery, and Motion for Release are also fully briefed.

**LEGAL STANDARD**

Section 2241 of Title 28 authorizes federal district courts to grant writs of habeas corpus when a person is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(a), (c)(3).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  "Challenges to immigration detention are properly brought directly through habeas."  *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001)).

**ANALYSIS**

**I.    Jurisdiction**

Respondents contend that the Court lacks jurisdiction over the Reinstatement Order Claims and the First Amendment Claim.  That contention chiefly arises from three statutory provisions that limit a district court's jurisdiction in the immigration context.  The first of those provisions is 8 U.S.C. § 1252(a)(5), which provides in relevant part:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter, except as provided in subsection (e).

Section 1252(b)(9) further consolidates judicial review of removal orders with the courts of appeals:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.  Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9).  Finally, § 1252(g) limits removal-related jurisdiction to the petition for review process outlined in § 1252:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

*Id.* § 1252(g). The Court addresses its jurisdiction over the Reinstatement Order Claims and the First Amendment Claim in turn.

### A.    Reinstatement Order Claims

Respondents argue that "§ 1252(a)(5) bars district-court jurisdiction" over the Reinstatement Order Claims and grants exclusive jurisdiction over such claims to the Tenth Circuit. [Doc. 16 at 14]. Under § 1252(a)(5), a petition for review with the "appropriate court of appeals" is the "sole and exclusive" method of obtaining "judicial review of an order of removal." [*Id.* at 10–11]. And because a challenge to a reinstated removal order counts as a challenge to an "order of removal" for purposes of § 1252(a)(5), Respondents argue that Ms. Vizguerra-Ramirez's constitutional and regulatory challenges to the July 2013 Reinstatement Order can only be heard by the Tenth Circuit. [*Id.* at 11–13].

Ms. Vizguerra-Ramirez replies that her claims are not focused on the "substantive legality or validity" of the reinstatement order, but rather whether the order "meet[s] the regulatory definition of a reinstatement order." [Doc. 18 at 6]. Any authority to detain her stems from that order, she reasons, so these claims are properly brought in habeas. [*Id.*].

The Tenth Circuit has held that "a reinstatement order is a 'final order of removal'" for purposes of § 1252. *Lorenzo v. Mukasey*, 508 F.3d 1278, 1282 (10th Cir. 2007) (quoting § 1252(a)(1)). A challenge to a reinstatement order is therefore subject to the judicial review provisions in § 1252(a). *Id.* That includes § 1252(a)(5)'s instruction that the "appropriate court of appeals" possesses exclusive jurisdiction to hear such a challenge in a petition for review. *See Gonzalez-Alarcon v. Macias*, 884 F.3d 1266, 1274–75 (10th Cir. 2018) (affirming district court's conclusion that § 1252(a)(5) deprived it of

jurisdiction to review habeas claim premised on alleged invalidity of reinstated removal order).  And as the Tenth Circuit explained in *Gonzalez-Alarcon*, "the jurisdiction-stripping provisions apply to indirect challenges to the merits of a removal order."  *Id.* (collecting cases).

Ms. Vizguerra-Ramirez's Reinstatement Order Claims present an indirect challenge to the merits of her reinstated removal order.  Although she frames the inquiry as whether a reinstatement order exists, the Reinstatement Order Claims depend on her argument that the July 2013 Reinstatement Order fails to comply with the regulatory requirements set out in 8 C.F.R. § 241.8.  That position plainly requires the Court to assess the validity of the July 2013 Reinstatement Order.  And because the July 2013 Reinstatement Order is the asserted basis for both her detention and her removal, [Doc. 16-1 at ¶¶ 29–30]; 8 U.S.C. § 1231(a)(5)–(6), a ruling in Ms. Vizguerra-Ramirez's favor as to her detention would also implicate the legality of her removal.  Section 1252(a) and Tenth Circuit precedent mandate that such claims be brought in a petition for review in the Tenth Circuit.[1]   Accordingly, the Reinstatement Order Claims are **DISMISSED without prejudice** for lack of subject matter jurisdiction.

### B.    First Amendment Claim

Respondents also argue that § 1252(b)(9) and § 1252(g) strip the Court of jurisdiction over Ms. Vizguerra-Ramirez's First Amendment Claim.  [Doc. 30 at 11–14].

---

[1] The Court takes judicial notice that Ms. Vizguerra-Ramirez has filed two petitions for review in *Vizguerra-Ramirez v. Bondi*, Case No. 25-9532 (10th Cir. Mar. 18, 2025), and *Vizguerra-Ramirez v. Bondi*, Case No. 25-9559 (10th Cir. Jul. 28, 2025).  *See Stan Lee Media, Inc. v. Walt Disney Co.*, 774 F.3d 1292, 1298 n.2 (10th Cir. 2014) (recognizing that Federal Rule of Evidence 201(b)(2) allows a Court to take judicial notice of "documents and docket materials filed in other courts"); *see also* [Doc. 16 at 4 (citing [Doc. 16-2])].

As with the Reinstatement Order Claims, Respondents argue that the First Amendment Claim challenges conduct that is "inextricably linked" to an order of removal and thus outside this Court's habeas jurisdiction pursuant to § 1252(b)(9). [*Id.* (quoting *Martinez v. Napolitano*, 704 F.3d 620, 623 (9th Cir. 2012))]. And because the First Amendment Claim arises from the Attorney General's actions to "execute the 2013 Reinstatement Order" by "arresting and detaining" Ms. Vizguerra-Ramirez, Respondents urge that § 1252(g) limits the Court's jurisdiction as well. [*Id.* at 14]. Respondents suggest that this conclusion is confirmed by the Supreme Court's decision in *Reno v. American-Arab Anti-Discrimination Committee* (*AADC*), 525 U.S. 471 (1999), which Respondents characterize as interpreting § 1252(g) to foreclose judicial review of selective-enforcement claims in the immigration context, [Doc. 30 at 14].

Ms. Vizguerra-Ramirez replies that Respondents overread *AADC* and the relevant statutory provisions. [Doc. 39]. She argues that § 1252(g) applies only to "three discrete actions"—i.e., the decision or action to commence proceedings, adjudicate cases, or execute removal orders—whereas her First Amendment Claim challenges only the "decision to detain." [*Id.* at 4]; *see also AADC*, 525 U.S. at 482. Ms. Vizguerra-Ramirez further argues that *AADC* left open the possibility of selective enforcement claims based on "outrageous" discrimination. [Doc. 39 at 3–6]. She urges the Court to adopt the Second Circuit's formulation of a test for outrageous discrimination in *Ragbir v. Homan*, 923 F.3d 53 (2d Cir. 2019), *vacated sub nom.*, *Pham v. Ragbir*, 141 S. Ct. 227 (2020). [Doc. 39 at 3–6]. Finally, she retreads her same argument as to § 1252(b)(9), contending that this provision is inapplicable because the salient "threshold question" is whether a removal order exists at all. [*Id.* at 6–7].

The Court begins with the Parties' statutory arguments.  As an initial matter, the Court notes that the record is unclear as to the precise statutory basis the Government invokes for Ms. Vizguerra-Ramirez's detention.  Respondents repeatedly assert that detention of an individual subject to a reinstated removal order is authorized by "8 U.S.C. § 1231."  *See, e.g.*, [Doc. 16 at 8; Doc. 30 at 5].  Broadly, that position is correct.  *See Guzman Chavez*, 594 U.S. at 526.  But § 1231 contains two potentially salient detention provisions.  First, § 1231(a)(2)(A) mandates detention during the 90-day "removal period" after "an alien is ordered removed," as defined by § 1231(a)(1)(A).  Second, § 1231(a)(6) allows for, but does not require, detention past the removal period if, among other things,[2] the Government determines that the individual is "a risk to the community or unlikely to comply with the order of removal."  The Parties generally do not address this issue, but Respondents' brief opposing the Motion for Release suggests that they believe § 1231(a)(2)(A) required Ms. Vizguerra-Ramirez's initial detention for 90-days, followed by a period of discretionary detention authorized by § 1231(a)(6).  *See* [Doc. 53 at 4–5 (indicating that ICE did not determine whether Petitioner was likely to comply with her removal order until 90 days after her initial arrest)].

Because Ms. Vizguerra-Ramirez frames her First Amendment Claim as challenging the "decision to detain," this distinction has significant ramifications for the

---

[2] Section 1231(a)(6) also permits detention beyond the removal period if the individual is inadmissible under 8 U.S.C. § 1182 or removable under certain subsections of 8 U.S.C. § 1227(a).  Respondents do not argue that Ms. Vizguerra-Ramirez fits into either of these categories.  For purposes of this Order, the Court assumes that these categories do not apply and § 1231(a)(6) could only authorize Ms. Vizguerra-Ramirez's  detention if the Government determines her to be a flight risk or danger to the community.  However, even if Ms. Vizguerra-Ramirez could be detained on one of the other bases listed in § 1231(a)(6), that would not affect the Court's assessment of its jurisdiction over the claims in the Second Amended Petition.

Court's jurisdiction.  Most of the alleged evidence of retaliation—such as several social media posts from individuals associated with ICE and the ICE agent's statement that, "We finally got you!"—occurred during or immediately after Ms. Vizguerra-Ramirez's arrest. *See* [Doc. 61 at ¶ 32].  But if § 1231(a)(2)(A) applied and *required* Respondents to apprehend and detain Ms. Vizguerra-Ramirez for at least 90 days after the decision to enforce the July 2013 Removal Order, then the "decision to detain" might be fairly characterized as "inextricably intertwined" with the decision to execute the reinstated removal order, thus depriving the Court of jurisdiction under § 1252(b)(9) and (g).

Upon inspection of § 1231(a), however, the Court concludes that the decision to detain Ms. Vizguerra-Ramirez was not mandated by § 1231(a)(2)(A).  Section 1231(a)(1)(B) provides that the 90-day removal "period begins on the latest of the following":  (1) "[t]he date the order of removal becomes administratively final"; (2) "[i]f the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order"; or (3) "[i]f the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement."  8 U.S.C. § 1231(a)(1)(B).  In the context of a reinstated removal order, the date of reinstatement typically serves as the date of the final order of removal, triggering the removal period.  *See, e.g.*, *Alva v. Kaiser*, No. 25-cv-06676-RFL, 2025 WL 2419262, at *3 (N.D. Cal. Aug. 21, 2025) ("Petitioner's 90-day removal period began to run on December 1, 2018, the date that his removal order was reinstated after his reentry into the United States."); *Garcia Uranga v. Barr*, No. 20-cv-03162-JWL, 2020 WL 4334999, at *5 (D. Kan. July 28, 2020) (collecting cases); *Uttecht v. Napolitano*, No. 8:12-cv-00347, 2012 WL 5386618, at *2 & n.1 (D. Neb. Nov. 1, 2012) (collecting cases).  Here, the July

2013 Reinstatement Order was dated July 24, 2013. [Doc. 61 at 52]. Setting aside Petitioner's arguments about the validity of the July 2013 Reinstatement Order, crediting the Government's perspective, the Reinstatement Order became "administratively final" in July 2013 at the latest. Thus, the 90-day removal period for mandatory detention under § 1231(a)(2)(A) expired long before Ms. Vizguerra-Ramirez's arrest in March 2025.

That means Ms. Vizguerra-Ramirez's detention after her arrest could only be discretionary, as authorized by § 1231(a)(6). The inquiry, then, is whether a decision to detain her under § 1231(a)(6) falls within the jurisdiction-stripping provisions in § 1252(b)(9) and (g).

### 1.    Section 1252(b)(9)

With respect to § 1252(b)(9), Ms. Vizguerra-Ramirez's challenge to Respondents' decision to detain her does not "aris[e] from" an "action taken or proceeding brought to remove an alien." "The question [under § 1252(b)(9)] is not whether *detention* is an action taken to remove an alien but whether *the legal questions* in this case arise from such an action." *Jennings v. Rodriguez*, 583 U.S. 281, 295 n.3 (2018) (plurality opinion).

While Respondents' decision to enforce the July 2013 Reinstatement Order was essentially an exercise of prosecutorial discretion, *cf. AADC*, 525 U.S. at 488–92, the decision to detain under § 1231(a)(6) requires a separate determination that an individual is a "risk to the community or unlikely to comply with the order of removal." In other words, Ms. Vizguerra-Ramirez's detention "did not flow naturally as a consequence of her removal proceedings." *Ozturk v. Trump* (*Ozturk I*), 779 F. Supp. 3d 462, 484 (D. Vt. 2025). To be sure, Ms. Vizguerra-Ramirez's detention may, in a strictly factual sense, arise from the decision to execute her reinstatement order. But the *Jennings* plurality

rejected "uncritical literalism" in interpreting the phrase "arising from" in favor of a narrower approach that focuses on the legal questions at issue. 583 U.S. at 293–95 & n.3 (quotation omitted). And the legal questions presented by Ms. Vizguerra-Ramirez's First Amendment Claim arise from whether Respondents properly determined that she was subject to detention under § 1231(a)(6) or whether they elected to arrest and detain her based on a retaliatory motive. *Ozturk I*, 779 F. Supp. 3d at 484 (finding that § 1252(b)(9) did not apply where habeas inquiry focused on whether petitioner's detention "comport[ed] with the law and the Constitution"); *Mahdawi v. Trump*, 781 F. Supp. 3d 214, 228 (D. Vt. 2025) (reaching similar conclusion where habeas petition arose from alleged retaliatory arrest, not the "Government's decision to place [petitioner] in removal proceedings"), *appeal docketed*, No. 25-1113 (2d Cir. May 1, 2025). Accordingly, the Court respectfully concludes that § 1252(b)(9) does not deprive the Court of jurisdiction over Ms. Vizguerra-Ramirez's First Amendment claim.

### 2.   Section 1252(g)

The analysis with respect to § 1252(g) is more straightforward. The Supreme Court has read § 1252(g) to preclude judicial review of only the "three discrete actions" identified therein: the "'decision or action' to 'commence proceedings, adjudicate cases, or *execute* removal orders.'" *AADC*, 525 U.S. at 482 (quoting § 1252(g)). The "many other decisions or actions that may be part of the deportation process" are not subject to this provision. *Id.* As explained above, Ms. Vizguerra-Ramirez's First Amendment claim is properly framed as challenging the "decision to detain." [Doc. 39 at 4]. Based on *AADC* and the plain text of § 1252(g), the Court has jurisdiction over Ms. Vizguerra-Ramirez's First Amendment claim.

The Court respectfully disagrees with Respondents' position that the portion of *AADC* that addresses selective enforcement claims applies here. In *AADC*, the Supreme Court held that § 1252(g) barred a habeas challenge to the Government's decision to commence removal proceedings, despite the petitioners' allegations of First Amendment retaliation. 525 U.S. at 487–88. The *AADC* Court held that "an alien unlawfully in this country has no constitutional right to assert selective enforcement as a defense against his *deportation*." *Id.* at 488 (emphasis added). Such a rule was necessary to protect the Government's prosecutorial discretion and to avoid requiring the "disclosure of foreign-policy objectives and . . . foreign-intelligence products and techniques." *Id.* at 490–91. *AADC* did, however, acknowledge "the possibility of a rare case in which the alleged basis of discrimination is so outrageous" that a selective enforcement claim may be viable. *Id.* at 491.

The Court need not decide whether this is that rare, "outrageous" case of discrimination. *AADC* dealt with selective enforcement as a defense against deportation, not detention. *See Ozturk I*, 779 F. Supp. 3d at 485 n.5 ("*AADC* was exclusively about removal, not detention."). The policy concerns underlying *AADC*'s near-ban on selective enforcement as a defense to deportation carry far less weight in a habeas challenge to the decision to detain under § 1231(a)(6). Unlike the discretionary decision to commence removal proceedings or execute a removal order, which may implicate foreign policy concerns not amenable to judicial review, the decision to detain under § 1231(a)(6) focuses only on the more pedestrian considerations of whether the individual would be "a risk to the community or unlikely to comply with the order of removal." Accordingly, the Court concludes that *AADC* is inapposite to Ms. Vizguerra-Ramirez's First Amendment

Claim based on her alleged retaliatory arrest and detention. *See Bello-Reyes v. Gaynor*, 985 F.3d 696, 700 n.4 (9th Cir. 2021) (declining to apply *AADC* in habeas case challenging alleged retaliatory immigration detention, because "*AADC* forecloses selective prosecution claims only as to the three actions listed in 8 U.S.C. § 1252(g)").

### 3.    Scope of Available Relief

The foregoing discussion relies on understanding Ms. Vizguerra-Ramirez's First Amendment Claim as challenging only her arrest and detention, not her removal. In part, that is because the Court adopts the framing of the claim that Ms. Vizguerra-Ramirez employs in her briefing. *See* [Doc. 39 at 4]. To be clear, though, the First Amendment Claim fails insofar as it challenges her removal. As Respondents point out, the Second Amended Petition appears to target the entire scope of "ICE's enforcement actions against Ms. Vizguerra-Ramirez," [Doc. 61 at ¶ 32], and asks the Court to "[e]nter an injunction restraining Respondents from taking any action to deport Petitioner unless Respondents demonstrate that such action is untainted by unlawful First Amendment retaliation and discrimination," [*id.* at 48]; *see also* [Doc. 30 at 12–13]. To the extent Ms. Vizguerra-Ramirez seeks to assert a constitutional challenge to ICE's decisions or actions to execute her removal order and commence removal proceedings, that claim must be presented to the Tenth Circuit in a petition for review. 8 U.S.C. § 1252(a)(5), (b)(9), (g). Moreover, to the extent she claims that a First Amendment challenge to her arrest and detention entitles her to relief against removal, such a claim is not cognizable in habeas. *See DHS v. Thuraissigiam*, 591 U.S. 103 (2020).

In *Thuraissigiam*, the Supreme Court reiterated that "habeas is at its core a remedy for unlawful executive detention." *Id.* at 119 (cleaned up). There, an asylum seeker in

immigration detention brought a habeas claim seeking "vacatur of his 'removal order' and 'an order directing the Department to provide him with a new opportunity to apply for asylum and other relief from removal.'" *Id.* at 117–18 (alterations omitted). The Supreme Court observed that the asylum seeker "[did] not want 'simple release' but, ultimately, the opportunity to remain lawfully in the United States." *Id.* at 119. Because that relief fell outside the originalist "core" of habeas, the asylum seeker's habeas claim failed. *See id.* at 119–20 ("Respondent and *amici* . . . have not unearthed evidence that habeas was [at the time of the founding] used to obtain anything like what is sought here, namely, authorization for an alien to remain in a country other than his own or to obtain administrative or judicial review leading to that result.").

Thus, Ms. Vizguerra-Ramirez's request that the Court enjoin Respondents from taking action to remove her from the United States falls outside the scope of available habeas relief. *See Rauda v. Jennings*, 55 F.4th 773, 779–80 (9th Cir. 2022) (applying *Thuraissigiam* to conclude that requested relief fell outside the scope of habeas where petitioner sought to "avoid being released (into El Salvador)" instead of seeking relief from "unlawful custody"); *I.M. v. U.S. Customs & Border Protection*, 67 F.4th 436, 442 (D.C. Cir. 2023) ("Because 'the essence of habeas corpus is an attack by a person in custody,' it cannot be used to challenge 'something other than the fact or length of his confinement.'" (quoting *Preiser*, 411 U.S. at 484, 494)). As explained above, this Court lacks jurisdiction to substantively adjudicate Ms. Vizguerra-Ramirez's requests for relief related to her removal. Accordingly, Ms. Vizguerra-Ramirez's First Amendment Claim is **DISMISSED in part** to the extent she contests the decision to execute the July 2013 Reinstatement Order or seeks relief directed at her removal. The Court limits its review

of the First Amendment Claim to Ms. Vizguerra-Ramirez's challenge to her alleged unlawful detention.

## II.    Merits

### A.    Prolonged Detention Claim

Because the Court's analysis of the Prolonged Detention Claim affects its analysis of the First Amendment Claim, the Court begins with the Prolonged Detention Claim.  Ms. Vizguerra-Ramirez contends that her post-removal period detention has become unreasonably prolonged in violation of her due process rights.  [Doc. 61 at ¶¶ 98–99].

#### 1.    Whether *Zadvydas* Provides the Controlling Standard

"It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings."  *Demore v. Kim*, 538 U.S. 510, 523 (2003) (quotation omitted).  While it is undisputed that Ms. Vizguerra-Ramirez is entitled to the protections of due process, the Parties contest, as an initial matter, what standard controls this claim.  Ms. Vizguerra-Ramirez asks the Court to follow three other judges in this District and apply the six-factor test adopted in *Singh v. Choate*, No. 19-cv-00909-KLM, 2019 WL 3943960, at *5 (D. Colo. Aug. 21, 2019).  [Doc. 61 at ¶¶ 99–120]; *see Arostegui-Maldonado v. Baltazar*, 794 F. Supp. 3d 926, 938 (D. Colo. 2025) (Martinez, J.), *appeal dismissed per stipulation*, No. 25-1377 (10th Cir. Oct. 10, 2025); *Ramirez v. Bondi*, No. 25-cv-01002-RMR, 2025 WL 1294919, at *6 (D. Colo. May 5, 2025) (Rodriguez, J.), *appeal docketed*, No. 25-1263 (10th Cir. July 8, 2025); *Juarez v. Choate*, No. 24-cv-00419-CNS, 2024 WL 1012912, at *4 (D. Colo. Mar. 8, 2024) (Sweeney, J.).  Respondents urge the Court to instead apply the standard articulated by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001).  [Doc. 67 at 8–13].

In *Zadvydas*, the Supreme Court confronted whether § 1231(a)(6) permits indefinite detention of individuals subject to a removal order.  533 U.S. at 682.  The Court started from the assumption that civil immigration proceedings—and detention pursuant to those proceedings—are "nonpunitive in purpose and effect."  *Id.* at 690.  Recognizing that indefinite civil detention would raise a serious constitutional issue under the Fifth Amendment's Due Process Clause, *id.*, the Court interpreted § 1231(a)(6) to authorize detention beyond an initial, presumptively reasonably six-month period only when removal is "reasonably foreseeable," *id.* at 699–701.  Thus, once an individual has been detained for more than six months, if "there is no significant likelihood of removal in the reasonably foreseeable future," then § 1231(a)(6) does not permit detention.  *Id.* at 701.

The Supreme Court has subsequently confirmed that *Zadvydas* hinged on the Court's interpretation of the scope of § 1231(a)(6) based on the canon of constitutional avoidance.  *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 579 (2022).  *Arteaga-Martinez* went on to hold that, as a matter of statutory interpretation, § 1231(a)(6) does not require a bond hearing after six months of detention.  *Id.* at 580–81.  But the *Arteaga-Martinez* Court declined to address the detainee's constitutional claim that due process principles demanded a bond hearing.  *Id.* at 583.  The Court acknowledged the Government's position that "as-applied constitutional challenges remain available to address 'exceptional' cases," but left the issue of as-applied challenges for "lower courts to consider in the first instance."  *Id.*

As Judge Sweeney observed in *Juarez*, lower courts have adopted various standards for as-applied due process challenges to prolonged detention under § 1231(a)(6).  *Juarez*, 2024 WL 1012912, at *6 (collecting cases).  Indeed, some courts

have held that the standard for an as-applied challenge is simply *Zadvydas*, because detention authorized by *Zadvydas*'s interpretation of § 1231(a)(6) necessarily also comports with due process. *See, e.g.*, *Castaneda v. Perry*, 95 F.4th 750, 760 (4th Cir. 2024). That is likely true in most cases. If every habeas petitioner detained under § 1231(a)(6) could escape *Zadvydas* by simply styling their claim as an as-applied constitutional challenge, the exception would swallow *Zadvydas*'s rule that § 1231(a)(6) detention does not offend due process so long as removal is reasonably foreseeable. *See Castaneda*, 95 F.4th at 760 ("[T]he *Zadvydas* standard *is* due process: a § 1231 detainee who fails the *Zadvydas* test fails to prove a due process violation."). But the non-*Zadvydas* constitutional backstop contemplated in *Arteaga-Martinez* avoids this problem by referring to as-applied challenges in "exceptional" cases. 596 U.S. at 583. Even *Castaneda* is equivocal on this point—the Fourth Circuit observed that "*Zadvydas* largely, if not entirely" eliminates as-applied challenges to § 1231(a) detention, but considered whether that petitioner's case was indeed "exceptional." 95 F.4th at 760–61.

Assuming an "exceptionality" inquiry is necessary before entertaining an as-applied due process challenge to detention under § 1231(a)(6), the Court finds that Ms. Vizguerra-Ramirez has satisfied such a standard. Unlike the petitioner in *Castaneda*, who claimed exceptional circumstances based on length of detention alone, 95 F.4th at 761, Ms. Vizguerra-Ramirez's Second Amended Petition includes specific, troubling allegations that her detention was motivated by Respondents' desire to retaliate against her for activities protected by the First Amendment, [Doc. 61 at ¶¶ 32–33]; *see also* [Doc. 68 at 6 (Ms. Vizguerra-Ramirez arguing, in context of her due process claim, that "Respondents have taken away her liberty for nearly eight months (predicated on a

severe First Amendment violation)")].

Ms. Vizguerra-Ramirez points to statements by individuals associated with Respondents demonstrating that Respondents were aware of her protected activities[3] at the time of her arrest: (1) the posts on X by the Denver ICE account and main ICE account; (2) Assistant Secretary McLaughlin's post on X, including the statement that the Government "will find, arrest, and deport illegal aliens regardless of if they were a featured 'Time Person of the Year'"; and (3) one of the ICE agents arresting Ms. Vizguerra-Ramirez told her, "We finally got you!" [Doc. 61 at ¶ 32(a), (b), (g)]. The posts by the Denver ICE account, the main ICE account, and Assistant Secretary McLaughlin suggest that Respondents essentially sought to make an example of Ms. Vizguerra-Ramirez by arresting and detaining an individual with a high profile as a labor and immigration activist. *Cf. Ozturk v. Trump* (*Ozturk II*), 783 F. Supp. 3d 801, 809–10 (D. Vt. 2025) (concluding that petitioner's arrest was likely motivated by retaliatory intent based on, among other things, statements by Secretary of State Marco Rubio indicating that the petitioner's protected speech was "supportive of movements that run counter to the foreign policy of the United States," such that "detention was 'basically asking them to leave the country'").

To be clear, the factual record remains relatively undeveloped as to Ms. Vizguerra-Ramirez's First Amendment Claim, and this Order does not resolve that claim on its merits. But Ms. Vizguerra-Ramirez's serious allegations of Respondents' retaliatory

---

[3] Although Respondents contend that the First Amendment Claim fails on the merits, they do not dispute that Ms. Vizguerra-Ramirez engaged in activity protected by the First Amendment by, among other things, protesting U.S. immigration policies. *See* [Doc. 30 at 17–22]; *see also* [Doc. 61 at ¶ 31; Doc. 45 at 6].

motives—based on their own undisputed statements, *see* [Doc. 30 at 17–22]—raise unique due process concerns that affect the Court's analysis of her Prolonged Detention Claim. Specifically, if Respondents' detention determinations under § 1231(a)(6) have been polluted by retaliatory intent, the mere fact that removal is reasonably foreseeable under *Zadvydas* may be insufficient to safeguard Ms. Vizguerra-Ramirez's due process rights. *See* [Doc. 67 at 12 (Respondents arguing that Petitioner's detention continues only because of her "ongoing withholding-only proceedings")]. "An impartial decisionmaker is a fundamental requirement of due process." *Gwinn v. Awmiller*, 354 F.3d 1211, 1220 (10th Cir. 2004); *accord Goldberg v. Kelly*, 397 U.S. 254, 271 (1970) ("And, of course, an impartial decision maker is essential."). Moreover, *Zadvydas* expressly relied on the assumption that immigration detention proceedings are "nonpunitive in purpose and effect." 533 U.S. at 690. That assumption was necessary because civil detention violates the Fifth Amendment's Due Process Clause except "in certain special and narrow nonpunitive circumstances, where a special justification, such as harm-threatening mental illness, outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Id.* (cleaned up). But Ms. Vizguerra-Ramirez's substantial First Amendment allegations, taken to their logical conclusion, suggest that ICE did not act as an impartial decisionmaker in determining that she was subject to continued detention under § 1231(a)(6) and may have been motivated by a punitive purpose. That presents far more serious due process concerns than a garden variety prolonged detention claim, and the Court concludes that the unique facts of this case amount to exceptional circumstances. *Arteaga-Martinez*, 596 U.S. at 583; *cf. Ozturk II*, 783 F. Supp. 3d at 811–12 (finding "extraordinary circumstances" warranting release on

bail pending adjudication of habeas claims where, among other things, the petitioner presented substantial claims that the government arrested and detained her in retaliation for her political speech).

It may be that the exceptional circumstances of this case, on their own, require a constitutionally adequate bond hearing to cure any due process issues in Respondents' detention determinations under § 1231(a)(6).    However, Petitioner makes no such argument.   And, as noted, other judges in this District have concluded that the *Singh* factors provide a sufficient framework for assessing whether a noncitizen's detention in a particular case has become unreasonably prolonged for due process purposes.   *See Arostegui-Maldonado*, 794 F. Supp. 3d at 938 (collecting cases).

Having addressed *Zadvydas* and *Arteaga-Martinez*, the Court is respectfully unpersuaded by Respondents' other arguments against the *Singh* factors.    First, Respondents argue that the *Singh* factors should not apply in § 1231 cases because *Singh* involved detention under 8 U.S.C. § 1226(c), and "noncitizens detained under Section 1226 are differently situated from those detained under Section 1231 because one group has not yet been deemed removable and the other group has."   [Doc. 67 at 12 (citing *Guzman Chavez*, 594 U.S. at 544)].   For purposes of due process, that is a distinction without a difference.   As Judge Sweeney explained in *Juarez*, "there appears to be little substantial distinction between the liberty interest of noncitizens detained pursuant to § 1226(c) and § 1231(a)(6), because regardless of the stage of the proceedings, the same important interest is at stake—freedom from prolonged detention." 2024 WL 1012912, at *6 (cleaned up); *see also Arostegui-Maldonado*, 794 F. Supp. 3d at 938–39 (following *Juarez* on this issue).   And to the extent Respondents contend that

Ms. Vizguerra-Ramirez's risk of flight is amplified due to the procedural posture of her removal proceedings, [Doc. 67 at 12–13], they may press that argument at the bond hearing.

Next, Respondents argue that the *Singh* factors are "inapposite here, amorphous, and inconsistent with the well-defined *Zadvydas* standard." [*Id.* at 13]. As explained, the unique, exceptional constitutional concerns presented by this case mean that Respondents cannot simply rely on the pendency of Ms. Vizguerra-Ramirez's withholding-only proceedings to demonstrate that they have afforded her the protections of due process when determining whether to prolong her detention under § 1231(a)(6). And although some *Singh* factors may bear on this case more heavily than others, that is an inherent feature of a multi-factor balancing test. Again, the exceptional circumstances of this case warrant a fact-specific inquiry to determine whether a bond hearing is necessary. Courts in this District have adopted the *Singh* factors to make such a determination, and this Court will follow suit.

### 2.    Application of the *Singh* Factors

*Singh* prescribes six factors used to "determine whether a noncitizen's detention has become so prolonged as to violate due process." *Ramirez*, 2025 WL 1294919, at *6. Those factors are:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Singh*, 2019 WL 3943960, at *5 (quotation omitted). The Court addresses each factor in turn.

*Total Length of Detention.*  Ms. Vizguerra-Ramirez has been detained since March 17, 2025.  *See, e.g.*, [Doc. 61 at ¶ 22; Doc. 67-1 at ¶ 3].  She has therefore been detained for approximately nine months, exceeding the presumptively reasonable six-month detention period recognized in *Zadvydas*.  533 U.S. at 701.  Accordingly, the first *Singh* factor weighs in Ms. Vizguerra-Ramirez's favor.  *See Juarez*, 2024 WL 1012912, at *6; *Ramirez*, 2025 WL 1294919, at *6; *Villaescusa-Rios v. Choate*, No. 20-cv-03187-CMA, 2021 WL 269766, at *3 (D. Colo. Jan. 27, 2021) (collecting cases).

*Likely Duration of Future Detention.*  "Courts examine the anticipated duration of all removal proceedings—including administrative and judicial appeals—when estimating how long detention will last."  *Villaescusa-Rios*, 2021 WL 269766, at *3 (quotation omitted).  Ms. Vizguerra-Ramirez's detention will likely continue while her withholding-only proceedings and petition for review in the Tenth Circuit are pending. [Doc. 61 at ¶ 103].  A hearing on her withholding-only proceedings has only recently occurred, [Doc. 68-2], and briefing has not yet completed in the petition for review, nor has oral argument been set, *see Vizguerra-Ramirez v. Bondi*, No. 25-9559 (10th Cir. 2025).  Moreover, a decision in Ms. Vizguerra-Ramirez's withholding-only proceedings would likely be appealed to the BIA.  And if she prevails on her petition for review, that could trigger a further remand and possible re-initiation of removal proceedings.  Given the overall procedural posture of Ms. Vizguerra-Ramirez's case, the Court concludes that "detention will definitely terminate at some point, but that point is likely to be many months or even years from now."  *Villaescusa-Rios*, 2021 WL 269766, at *3 (quoting *Singh*, 2019 WL 3943960, at *6).  This factor weighs in Ms. Vizguerra-Ramirez's favor.  *See, e.g.*, *Juarez*, 2024 WL 1012912, at *7.

***Conditions of Detention.***   The third factor requires the Court to consider "whether the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention."   *Villaescusa-Rios*, 2021 WL 269766, at *4 (quotation omitted). Ms. Vizguerra-Ramirez is currently detained at ICE's Contract Detention Facility in Aurora, Colorado.  [Doc. 61 at ¶ 54; Doc. 67-1 at ¶¶ 1, 3].  Ms. Vizguerra-Ramirez's factual allegations—which Respondents do not dispute—demonstrate that the conditions at the Aurora Contract Detention Facility resemble criminal incarceration.  [Doc. 61 at ¶ 107].  The clear weight of authority in this District supports this conclusion. *See, e.g.*, *de Zarate v. Choate*, No. 23-cv-00571-PAB, 2023 WL 2574370, at *4 (D. Colo. Mar. 20, 2023); *Arostegui-Maldonado*, 794 F. Supp. 3d at 940; *Villaescusa-Rios*, 2021 WL 269766, at *4.  The third *Singh* factor weighs in Ms. Vizguerra-Ramirez's favor.

***Delays Attributable to Petitioner or the Government.***   The Court considers the fourth and fifth factors together.   Respondents suggest that Ms. Vizguerra-Ramirez is responsible for some of the delays because she initiated withholding-only proceedings and then sought (and obtained) two continuances in those proceedings.  [Doc. 67 at 14]. But courts have consistently declined to "hold [a petitioner's] efforts to seek relief through the available legal channels against [her]."  *Martinez v. Ceja*, 760 F. Supp. 3d 1188, 1195 (D. Colo. 2024) (citing *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 212 (3rd Cir. 2020)).   Nor will the Court fault Ms. Vizguerra-Ramirez for insisting on her right to have counsel present at her initial reasonable fear interview ("RFI").  [Doc. 61 at ¶¶ 113–14; Doc. 67 at 14].  Ms. Vizguerra-Ramirez contends that U.S. Citizenship and Immigration Services ("USCIS") officers delayed the RFI for approximately a week by attempting to "pressure" her to proceed with the RFI without counsel.  [Doc. 61 at ¶¶ 113–

14].  Respondents dispute this characterization of events, asserting that USCIS attempted to contact Ms. Vizguerra-Ramirez's counsel during all but one of the relevant attempts to conduct an RFI.  [Doc. 67 at 14].  Simone Grant, an Associate District Director for USCIS, has submitted a Declaration averring that USCIS honored Ms. Vizguerra-Ramirez's requests to have counsel present.  [Doc. 30-1 at ¶¶ 13, 15–16, 21, 24].  Ms. Grant further asserts that for the one RFI attempt where USCIS did not attempt to contact Petitioner's counsel, USCIS agreed to reschedule the RFI.  [*Id.* at ¶ 16].  Based on the record before it, the Court cannot resolve this factual dispute as to whether USCIS delayed the RFI and, by extension, the withholding-only proceedings.  Thus, the fifth factor is neutral.  But because any delays are not attributable to Ms. Vizguerra-Ramirez, the Court finds that the fourth factor weighs in her favor.

*Likelihood of Removal.*  With respect to the sixth factor, "[t]he more likely that the alien will be removed, the longer the detention that will be deemed reasonable."  *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 860 (D. Minn. 2019) (quotation omitted).  Ms. Vizguerra-Ramirez asserts that this factor can account for her likelihood of success on her petition for review or in her withholding-only proceedings.  [Doc. 68 at 10].  As the Court has previously acknowledged, her petition for review presents a novel legal question regarding the validity of reinstated removal orders.  [Doc. 11 at 4].  The Court thus respectfully declines to predict the outcome of Ms. Vizguerra-Ramirez's petition for review.  Regarding the withholding-only proceedings, the Court assumes without deciding that this factor also encompasses an assessment of whether Ms. Vizguerra-Ramirez will obtain withholding of removal to Mexico.  But as with the petition for review, the Court lacks sufficient information to evaluate her likelihood of success.  Although an immigration

judge found that Ms. Vizguerra-Ramirez had a reasonable fear sufficient to initiate withholding-only proceedings, the immigration judge has not yet issued a decision in those proceedings. [Doc. 61 at ¶ 119; Doc. 68-2]; *cf. Arostegui-Maldonado*, 794 F. Supp. 3d at 941–42 (finding likelihood of success in withholding-only proceedings where petitioner had partially prevailed in a petition for review to the Tenth Circuit and obtained a favorable decision from an immigration judge on remand). Similarly, the Court cannot predict whether Ms. Vizguerra-Ramirez will be able to secure military parole in place and deferred action through her daughter's service in the United States Air Force. [Doc. 69]. Accordingly, this factor is neutral. *Jamal A.*, 358 F. Supp. at 860 (concluding that this factor did not favor either party where court lacked "sufficient information to determine whether Jamal is likely to be removed").

In sum, four of the six *Singh* factors favor Ms. Vizguerra-Ramirez, and the remaining two are neutral. Thus, her continued detention requires a constitutionally adequate bond hearing before an immigration judge in order to comport with due process. And because Respondents have not indicated that Ms. Vizguerra-Ramirez's request for a bond hearing within seven days of this Order is impractical, *see* [Doc. 67], the Court will grant that request as well.

### 3.    Procedures for Bond Hearing

Ms. Vizguerra-Ramirez requests that at the bond hearing, the Government bear the burden of showing by clear and convincing evidence that her continued detention is justified. [Doc. 68 at 11]. She further requests that the Court order the immigration judge to consider her ability to pay and alternative conditions of release in a bond hearing. [*Id.*]. Respondents dispute whether the Government should bear the burden of proof but do

not address whether the immigration judge should consider her ability to pay or alternative conditions of release.  Accordingly, the Court will follow other courts in this District and require the immigration judge to consider Ms. Vizguerra-Ramirez's ability to pay and alternative conditions of release when deciding whether continued detention is warranted. *See Juarez*, 2024 WL 1012912, at *9 (imposing similar conditions on bond hearing); *Ramirez*, 2025 WL 1294919, at *8 (same).

As for the burden of proof, the Court assesses "the type of process required in a given case" using the so-called *Mathews* balancing test.[4]  *L.G. v. Choate*, 744 F. Supp. 3d 1172, 1180 (D. Colo. 2024) (first quoting *Marin v. King*, 720 F. App'x 923, 940–41 (10th Cir. 2018); and then citing *J.B. v. Washington Cnty.*, 127 F.3d 919, 924 (10th Cir. 1997)); *see also, e.g.*, *Black v. Decker*, 103 F.4th 133, 147–48 (2d Cir. 2024) (applying *Mathews* to "due process challenges to prolonged detention under [8 U.S.C. § 1226(c)]"

---

[4] The Court acknowledges that its decision in this case differs from its prior ruling in *Diaz-Ceja v. McAleenan*, No. 19-cv-00824-NYW, 2019 WL 2774211 (D. Colo. July 2, 2019). In *Diaz-Ceja*, the Court declined to apply the *Mathews* factors when determining what burden of proof applies in a bond hearing for a noncitizen who was detained under 8 U.S.C. § 1226(a).  *Id.* at *9.  Instead, the Court adopted an approach consistent with the Supreme Court's analysis in involuntary detention cases and compared "the government's and the individual's respective interests, and then consider[ed] whether the existing process adequately balanced and protected the two."  *Id.*  In this case, however, the Court applies the *Mathews* factors to assess what burden of proof should apply in a bond hearing for a noncitizen in civil immigration detention.  Although the Supreme Court has not applied *Mathews* in its civil confinement jurisprudence, the test the Court distilled in *Diaz-Ceja* is functionally equivalent to the *Mathews* factors, which have been adopted by a persuasive weight of authority both within and outside of this District.  *See, e.g.*, *L.G.*, 744 F. Supp. 3d at 1180–81; *Black v. Decker*, 103 F.4th 133, 147–48 (2d Cir. 2024) (collecting cases).  *Compare, e.g.*, *German Santos*, 965 F.3d at 213–14 (applying *Mathews* to determine that the government bears the burden at a bond hearing for an individual subject to prolonged detention under 8 U.S.C. § 1226(c)), *with Miranda v. Garland*, 34 F.4th 338, 358–65 (4th Cir. 2022) (applying *Mathews* to conclude that due process does not require the government to bear the burden at a bond hearing for a noncitizen detained under § 1226(a), whose detention is not "indefinite and potentially permanent").

and observing that "[m]any courts" have used *Mathews* to "determine what process is due to noncitizens in removal proceedings" (collecting cases)).  The *Mathews* test includes three factors:  (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

First, the private interest impacted by Respondents' actions is "the most significant liberty interest there is—the interest in being free from imprisonment."  *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020) (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)).  Because freedom from restraint is "at the core of the liberty interest protected by the Due Process Clause[,] . . . commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (quotation omitted).  To be sure, "Congress may make rules as to aliens that would be unacceptable if applied to citizens."  *Demore*, 538 U.S. at 522.  But that power remains subject to "important constitutional limitations."  *Zadvydas*, 533 U.S. at 695.  Nor does it erase Ms. Vizguerra-Ramirez's significant interest in being free from detention.  Moreover, the Court has already concluded that her detention presents exceptional circumstances with unique constitutional concerns, resembles criminal incarceration, and has become unreasonably prolonged.  The first *Mathews* factor favors Ms. Vizguerra-Ramirez.

Second, the Court considers "the risk of an erroneous deprivation of such interest

through the procedures used, and the probable value, if any, of additional or substitute

procedural safeguards." *Mathews*, 424 U.S. at 335. Based on the specific circumstances

of this case, the Court finds that requiring Ms. Vizguerra-Ramirez to bear the burden—as

Respondents propose—would create a risk of an erroneous deprivation. For one, it puts

Ms. Vizguerra-Ramirez in the more difficult position of proving a negative—that is, proving

that she is neither a flight risk nor a danger to the community. *L.G.*, 744 F. Supp. 3d at

1183–84 (citing *Hernandez-Lara v. Lyons*, 10 F.4th 19, 40 (1st Cir. 2021)). To the extent

the Government contends that a risk of flight or danger to the community warrants Ms.

Vizguerra-Ramirez's continued detention, the Court has no reason to doubt that

information establishing those risks is within the Government's possession and control.

*Id.* at 1184. Additionally, as the Court has observed, Ms. Vizguerra-Ramirez has put

forward substantial allegations that Respondents have sought her detention based on a

retaliatory, punitive motive. There is thus a risk that her detention has not been properly

justified by a determination of flight risk or danger to the community. Although ICE

conducts periodic post-order custody reviews ("POCR") designed to ensure that an

individual's "detention complies with [c]onstitutional due process requirements," [Doc. 67-

1 at ¶ 10], that is not enough to dispel the risk of constitutional error here. Pursuant to

applicable regulations, the detainee bears the burden of proof in a POCR. *See* 8 C.F.R.

§ 241.4(a)(4), (d)(1) (2025). That means ICE's POCRs reflect only its determination that

Ms. Vizguerra-Ramirez had not "demonstrated that, if released, she would not pose a

significant risk of flight pending removal." [Doc. 67-1 at ¶ 15]. Thus, requiring the

Government to affirmatively establish its case for continued detention will cure any

constitutional issues in its decisions to detain Ms. Vizguerra-Ramirez. *Cf. Black*, 103

F.4th at 153 (finding that second *Mathews* factor favored imposing burden of proof on government where "minimal procedures" used in prior detention determinations "led to an unwarranted detention").  The second *Mathews* factor favors Ms. Vizguerra-Ramirez.

Finally, the Court considers the Government's interest, including any fiscal or administrative burdens.  *Mathews*, 424 U.S. at 335.  Respondents do not address this factor—neither of the Parties mentioned the *Mathews* factors in their briefing.  But the Court discerns no significant administrative or fiscal burden associated with placing the burden of proof with the Government.  "[T]he administrative burden of a bond hearing is minimal."  *Arostegui-Maldonado*, 794 F. Supp. 3d at 943 (quotation omitted).  Having determined that due process requires a hearing to be held, any additional costs from shifting the burden of proof to the Government seem negligible.  The Court also concurs with the Second Circuit that placing the burden of proof on the Government promotes the Government's interest in "minimizing the enormous impact of incarceration in cases where it serves no purpose."  *Velasco Lopez*, 978 F.3d at 854.  That impact reaches both the taxpayers whose dollars fund detention and the communities of the detained individuals.  *Id.* at 854–55.

In sum, all three *Mathews* factors—particularly the first two factors—support shifting the burden of proof at Ms. Vizguerra-Ramirez's bond hearing to the Government. The Court acknowledges that due process does not require this result in all cases.  *See, e.g.*, *Martinez v. Ceja*, 760 F. Supp. 3d at 1196–97.  But the Court's consideration of the *Mathews* factors in light of the record before it leads the Court to conclude that such a procedural protection is necessary in this case to afford Ms. Vizguerra-Ramirez her due process rights.  *Cf. Velasco Lopez*, 978 F.3d at 855 ("Habeas corpus . . . is an 'adaptable

remedy,' the 'precise application and scope' of which changes 'depending upon the circumstances.'" (quoting *Boumediene v. Bush*, 553 U.S. 723, 779 (2008)).

The Court further concludes that clear and convincing evidence is the appropriate evidentiary standard, given the weight of persuasive authority since its decision in *Diaz-Ceja v. McAleenan,* No. 19-cv-00824-NYW, 2019 WL 2774211 (D. Colo. Jul. 2, 2019).[5] *See, e.g.*, *German Santos*, 965 F.3d at 213–14; *L.G.*, 744 F. Supp. 3d at 1186; *Cabrera Galdamez v. Mayorkas*, No. 22-cv-09847-LGS, 2023 WL 1777310, at *8 (S.D.N.Y. Feb. 6, 2023).  *But see Hernandez-Lara*, 10 F.4th at 41 (adopting same evidentiary standards as *Diaz-Ceja*); *Barreno v. Baltasar*, No. 25-cv-03017-GPG-TPO, 2025 WL 3190936, at *2 (D. Colo. Nov. 14, 2025) (surveying different approaches to burden allocation in this District, including *Diaz-Ceja*); *Black v. Almodovar*, 156 F.4th 171, 206–09 (2d Cir. 2025) (Chin, J., and Carney, J., supporting denial of rehearing *en banc*) (discussing competing circuit precedent regarding burden allocation in prolonged and non-prolonged detention cases under § 1226(a) and § 1226(c)).

This conclusion is consistent with the clear-and-convincing standard has been adopted by several courts in this District facing comparable prolonged-detention claims

---

[5] In the context of considering whether a noncitizen could be detained based on the determination that his prior drug offense rendered him a *per se* danger to the community, the Court imposed a standard of proof equivalent to the one applicable under the Bail Reform Act.  *Diaz-Ceja*, 2019 WL 2774211, at *11.  Under that standard, "[t]he government must prove risk of flight by a preponderance of the evidence, and it must prove dangerousness to any other person or to the community by clear and convincing evidence."  *Id.* at *11 (quoting *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003)).  The Court explained that it found "no persuasive justification to conclude that the same noncitizen must face different standards for the same actions, depending upon the forum, i.e., an administrative charge for removal versus a criminal charge of illegal reentry."  *Id.*  But the Court is persuaded by the weight of authority since *Diaz-Ceja* to reconsider its prior analysis.

under § 1231(a)(6). *Juarez*, 2024 WL 1012912, at *8; *Ramirez*, 2025 WL 1294919, at *7; *Arostegui-Maldonado*, 794 F. Supp. 3d at 944. Such a standard is also consistent with the Supreme Court's jurisprudence in civil detention cases. *Arostegui-Maldonado*, 794 F. Supp. 3d at 944 ("[T]he Supreme Court has long held that the clear and convincing evidence standard applies to civil detention where an individual's liberty interest is at stake." (collecting cases)); *Black*, 103 F.4th at 157–58 ("Where an individual's liberty is at stake, the Supreme Court has consistently used this evidentiary standard for continued detention." (collecting cases)). Upon consideration of the record and applicable case law, the Court concludes that a clear-and-convincing standard, with the burden placed on the Government, is appropriate in this case.

Accordingly, at Ms. Vizguerra-Ramirez's bond hearing, the Government must prove by clear and convincing evidence that she is either a flight risk or a danger to the community in order to justify continued detention. The Second Amended Petition is respectfully **GRANTED** as to Ms. Vizguerra-Ramirez's Prolonged Detention Claim.

### B. First Amendment Claim

Having granted Ms. Vizguerra-Ramirez relief on her Prolonged Detention Claim, the Court will not address the merits of her First Amendment Claim at this time. As the Court has intimated, Ms. Vizguerra-Ramirez's allegations raise serious First Amendment concerns, but the factual record at present is not sufficiently developed to rule on the merits. Assuming without deciding that this entitles Ms. Vizguerra-Ramirez to limited discovery regarding Respondents' decisions to arrest and detain her, practical considerations suggest that the Court need not make such a ruling at this time. The Court has granted Ms. Vizguerra-Ramirez a constitutionally adequate bond hearing within

seven days of the date of this Order.  It is highly unlikely, if not impossible, that the Parties could complete discovery within that timeframe.  And once the immigration judge has held a hearing and determined whether Ms. Vizguerra-Ramirez is entitled to bond, it is unclear to the Court what portion, if any, of the First Amendment Claim would remain.

The First Amendment Claim is accordingly **TAKEN UNDER ADVISEMENT**. Within fourteen days of Ms. Vizguerra-Ramirez's bond hearing, the Parties shall **MEET and CONFER** and **FILE** a Joint Status Report addressing (1) the outcome of the bond hearing; (2) what, if any, of the First Amendment Claim remains for the Court to decide; and (3) what impact, if any, this Order and the outcome of the bond hearing have on the merits of the First Amendment Claim and the issues raised in conjunction with the Motion for Expedited Discovery, [Doc. 37].

### III.    Pending Motions

The Court next considers Ms. Vizguerra-Ramirez's pending motions.  First, the Motion to Clarify asks the Court to declare that its Order under the All Writs Act, 28 U.S.C. § 1651(a)—which prevented Respondents from removing Petitioner from this District or the United States, *see* [Doc. 11]—also bars Respondents from proceeding with her removal process, *see* [Doc. 31].  The Court respectfully declines to rewrite its Order in this manner.  As the Court explained, an exercise of the Court's authority under the All Writs Act was necessary to preserve the status quo, because the Court could not "assure itself of jurisdiction to consider this habeas petition if Ms. Vizguerra-Ramirez is removed from the United States during the pendency of this action."  [Doc. 11 at 4].  Ms. Vizguerra-Ramirez does not suggest that permitting Respondents to conduct withholding-only proceedings short of removal would threaten this Court's jurisdiction.  To the contrary, it

appears that removal proceedings have continued during the pendency of this action without detriment to the Court's ability to resolve Ms. Vizguerra-Ramirez's substantive claims.  Put simply, the rationale underlying the Court's All Writs Act Order does not support expanding it beyond the Order's current, limited scope.  Accordingly, the Motion to Clarify, [Doc. 31], is respectfully **DENIED**.

Next, the Court declines to resolve the Motion for Expedited Discovery, [Doc. 37], for substantially the same reasons that the Court declined to rule on the merits of the First Amendment Claim.  Because the bond hearing may impact Ms. Vizguerra-Ramirez's First Amendment Claim, the Court defers addressing her request for discovery on the First Amendment Claim at this juncture.  Accordingly, the Motion for Expedited Discovery is **TAKEN UNDER ADVISEMENT**.

Finally, the Court's decision on the merits of the Prolonged Detention Claim moots the Motion for Release.  [Doc. 45].  Even if preliminary relief was appropriate, a bond hearing considering whether Ms. Vizguerra-Ramirez is a flight risk or danger to the community would be appropriate prior to her release.  *See Ozturk II*, 783 F. Supp. 3d at 813 (considering, after a bail hearing, whether habeas petitioner presented a flight risk or danger to the community before ordering petitioner's release pursuant to the court's inherent habeas authority); *Arostegui-Maldonado*, 794 F. Supp. 3d at 938 (granting preliminary injunction compelling respondents to conduct a bail hearing based on habeas petitioner's due process challenge to his unreasonably prolonged detention); *cf. Mahdawi*, 781 F. Supp. 3d at 232 (addressing "conventional bail issues of risk of flight and danger to society" before granting preliminary release under inherent habeas authority).  In other words, the Court's grant of final relief on the Prolonged Detention Claim has afforded Ms.

Vizguerra-Ramirez all the relief she would have received had the Court granted the
Motion for Release's request for preliminary relief. Accordingly, the Motion for Release
is respectfully **DENIED as moot**.

## CONCLUSION

Accordingly, it is **ORDERED** that:

(1)     The Order to Show Cause [Doc. 8] is **DISCHARGED**;

(2)     The Amended and Verified Petition for Writ of Habeas Corpus is **DISMISSED
in part without prejudice**, **GRANTED in part**, and **TAKEN UNDER
ADVISEMENT in part**.

(3)     Counts 1 and 2 of the Second Amended Petition, the Reinstatement Order
Claims, are **DISMISSED without prejudice**;

(4)     Count 3, the First Amendment Claim, is **DISMISSED without prejudice** in
part to the extent Ms. Vizguerra-Ramirez challenges the decision to enforce
the July 2013 Reinstatement Order or seeks relief preventing her removal;

(5)     Count 3, the First Amendment Claim, is **TAKEN UNDER ADVISEMENT** to
the extent it challenges Respondents' decisions to arrest and detain
Petitioner;

(6)     Count 4, the Prolonged Detention Claim, is **GRANTED**;

(7)     No later than December 24, 2025, Respondents shall bring Petitioner before
an impartial immigration judge for a constitutionally adequate bond hearing,
in which the Government bears the burden of establishing by clear and
convincing evidence that Petitioner presents a flight risk or danger to the
community, such that continued detention is justified. When deciding

whether continued detention is justified, the immigration judge shall consider potential alternative conditions of release and Petitioner's ability to pay;

(8)     Petitioner's Verified Motion to Clarify Scope of Temporary Restraining Order [Doc. 31] is **DENIED**;

(9)     The Motion for Expedited Discovery [Doc. 37] is **TAKEN UNDER ADVISEMENT**;

(10)    Within fourteen days of the bond hearing, the Parties shall **MEET and CONFER** and **FILE** a Joint Status Report addressing (1) the outcome of the bond hearing; (2) what portion, if any, of the First Amendment Claim remains for the Court to decide; and (3) what impact, if any, this Order and the outcome of the bond hearing have on the merits of the First Amendment Claim and the issues raised in conjunction with the Motion for Expedited Discovery, [Doc. 37]; and

(11)    Petitioner's Motion for Release on Bond or, in the Alternative, a Preliminary Injunction Ordering Release Pending a Final Judgment [Doc. 45] is **DENIED as moot**.

DATED:  December 17, 2025                    BY THE COURT:

                                             Nina Y. Wang
                                             United States District Judge